PAUL HASTINGS LLP
TODD M. SCHWARTZ (SB# 288895)
toddschwartz@paulhastings.com
LAURA M. FRIEDLI (SB# 334850)
laurafriedli@paulhastings.com
1117 S. California Avenue
Palo Alto, CA 94304-1106
Telephone: (650) 320-1800
Facsimile: (650) 320-1900

Attorneys for Movant IT Environmental Liquidating
Trust

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| IN RE: | CASE NO. |
|---|---|
| IT Environmental Liquidating Trust,<br><br>        Movant. | **IT ENVIRONMENTAL LIQUIDATING TRUST'S NOTICE OF MOTION AND MOTION TO APPOINT INTERIM SUCCESSOR  LIQUIDATING TRUSTEE PURSUANT TO TRUST AGREEMENT APPROVED BY BANKRUPTCY COURT; MEMORANDUM IN SUPPORT OF MOTION**<br><br>Hearing Date:<br>Time:<br>Courtroom:<br>Judge: |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION TO APPOINT INTERIM SUCCESSOR
    LIQUIDATING TRUSTEE .......................................................................... 1

STATEMENT OF THE ISSUES TO BE DECIDED ...................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................... 1

I.      INTRODUCTION ................................................................................ 2

II.    JURISDICTION AND VENUE ......................................................... 2

III.   BACKGROUND FACTS .................................................................... 3

IV.   REQUEST FOR RELIEF .................................................................... 4

     A.    The Court Should Appoint Richard Swanson as Interim Successor Trustee
           Pursuant to the Trust Agreement ............................................... 4

     B.    The Court Should Establish Trustee Appointment Procedures.............................. 5

V.    CONCLUSION .................................................................................... 7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION AND MOTION TO APPOINT INTERIM SUCCESSOR LIQUIDATING TRUSTEE

TO INTERESTED PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on _____ at _____, or as soon thereafter as the matter may be heard, in the United States District Court, Northern District of California, _____ Courthouse, located at

_____ before the Honorable

_____, Movant IT Environmental Liquidating Trust will, and hereby does, move the Court for an order granting Movant's Motion to Appoint Successor Liquidating Trustee (the "Motion").

This Motion is based on the Notice of Motion and Motion, the attached Memorandum of Points and Authorities, related documents filed in connection with this motion, the accompanying Declaration of Peter Bailey, and such other written or oral argument as may be presented to the Court.

## STATEMENT OF THE ISSUES TO BE DECIDED

1.      Whether the Court should fill the vacant trustee ("Trustee") position of the IT Environmental Liquidating Trust in accordance with Section 5.7 of that certain IT Environmental Liquidating Trust Agreement, dated as of April 30, 2004 (the "Trust Agreement");

2.      Whether, consistent with Section 5.7 of the Trust Agreement, the Court should adopt procedures for the appointment of any future Trustee in the event future vacancies in the trustee position of the IT Environmental Liquidating Trust arise.

## MEMORANDUM OF POINTS AND AUTHORITIES

The IT Environmental Liquidating Trust (the "Trust") files this Motion to Appoint Successor Liquidating Trustee Pursuant to Trust Agreement Approved By Bankruptcy Court (the

IT ENVIRONMENTAL LIQUIDATING
TRUST'S MOT. TO APPOINT INTERIM
SUCCESSOR LIQUIDATING TRUSTEE;
MPA

1   "Motion"). [1]  In support thereof, the Trust states as follows:[2]

2   ## I.   INTRODUCTION

3         The Trust is organized under the laws of the State of California.  The Trust is governed by

4   the Trust Agreement, dated as of April 30, 2004, entered into by and among the IT Corporation, IT

5   Lake Herman Road LLC, and IT Vine Hill LLC (collectively, the "Prior Debtors") and Brian

6   Fournier, solely in his capacity as Trustee thereunder (the "Original Trustee").   The Trust is

7   overseen by the California Department of Toxic Substances Control ("DTSC").  Unfortunately, the

8   Trust's former Trustee, Mr. Kishnani, recently and suddenly passed away, leaving a vacancy in the

9   Trustee position which is interfering with the Trust's ability to protect California's environment.

10  The Trust seeks to fill the Trustee position ("Successor Trustee") under these emergency

11  circumstances in accordance with the terms of the Trust Agreement.

12        Because the Trust was established and is administered pursuant to the laws of California, is

13  supervised and administered by the DTSC, and is subject to the jurisdiction of the Northern District

14  of California, the Trust has filed this Motion before this Court, with the support of DTSC, to (i)

15  seek approval of an interim Successor Trustee (Richard Swanson) while DTSC considers a

16  permanent replacement for the position and (ii) establish procedures for the appointment of a

17  permanent Successor Trustee (and any successors thereto) to minimize the burden on the Court

18  going forward.

19  ## II.   JURISDICTION AND VENUE

20        Pursuant to 28 U.S.C. §1334(b), this Court has jurisdiction over a civil proceeding "related

21  to [a] case[] under title 11".  This is a miscellaneous proceeding to appoint a post-confirmation

22  trustee of a liquidating trust established pursuant to a chapter 11 plan approved by the Bankruptcy

23

24  [1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to
    them in First Amended Joint Chapter 11 Plan for the IT Group, Inc. and its Affiliated Debtors
25  Proposed by the Debtors and the Official Committee of Unsecured Creditors (the "Plan").  The
    Plan is attached hereto as **Exhibit A**.  The Trust Agreement is attached hereto as **Exhibit B**.  The
26  Confirmation Order is attached hereto as **Exhibit C**.
    [2] Certain facts and circumstances supporting the relief requested herein, including DTSC's
27  support of the appointment of Richard Swanson as interim Successor Trustee of the Trust, are set
28  forth in the Accompanying Declaration of Peter Bailey.

IT ENVIRONMENTAL LIQUIDATING
TRUST'S MOT. TO APPOINT INTERIM
SUCCESSOR LIQUIDATING TRUSTEE;
MPA

1   Court (as defined below).  Therefore, this Court has jurisdiction over the proceeding.

2   Article III, Section 3.4 of the Trust Agreement (**Exhibit B**) expressly provides that this

3   Court has jurisdiction to "administer[]" the Trust:

> The IT Environmental Liquidating Trust will be established and administered pursuant to the laws of California and subject to the jurisdiction of the U.S. District Court for the Northern District of California.

6   Appointing a post-confirmation trustee is a matter of administration of the Trust.

7   Venue is proper in this district pursuant to 28 U.S.C. § 1391.

8   ## III.   BACKGROUND FACTS

9   On January 16, 2002, the Prior Debtors filed a voluntary petition for relief under chapter 11

10   of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of

11   Delaware (the "Bankruptcy Court"), which cases were jointly administered under In re The IT

12   Group, Inc., et al., Case No. 02-10118-MFW.

13   On February 9, 2004, the Prior Debtors and the Official Committee of Unsecured Creditors

14   proposed the Plan.  And, on April 5, 2004, the Bankruptcy Court approved the Plan pursuant to the

15   Order Confirming the First Amended Joint Chapter 11 Plan For the IT Group, Inc. and its Affiliated

16   Debtors Proposed By the Debtors and Official Committee of Unsecured Creditors [Docket No.

17   4935] (the "Confirmation Order") (**Exhibit C**).  An integral part of the confirmed Plan included

18   the formation of the Trust pursuant to the Trust Agreement.  *See* Plan (**Exhibit A**, at p. 24)

19   ("Pursuant to section 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019, entry of the

20   Confirmation Order shall constitute approval of that certain IT Environmental Liquidating Trust

21   Agreement").

22   The Prior Debtors established the Trust for the purpose of, among other things, operating

23   and providing for the closure and post-closure management of four landfills in Northern California

24   known as Montezuma Hills Facility, Benson Ridge Facility, Vine Hill Complex, and Panoche

25   Facility (the "Landfills"), and liquidating and distributing the proceeds from the assets of the Trust.

26   The Trust Agreement was reached with DTSC in connection with that certain consent order

27   between IT Corporation and the State of California in California v. International Technology Corp.,

28   No. 509105 (Super.  Ct., June 27, 1989), as amended by stipulation, September 30, 1999, pursuant

1  to which the Prior Debtors consented to certain terms under the California Hazardous Waste

2  Control Act, California Health and Safety Code Section 25100, *et seq*.  That consent order required,

3  among other things, the closure and post-closure care of the Landfills as well as financial assurance

4  with respect to these obligations.

5       DTSC was designated the regulatory agency overseeing the post-closure care of the landfills

6  by the Trustee in the name of the Trust.

7       Pursuant to the Plan, Confirmation Order, and Trust Agreement, Brian Fournier was

8  appointed as the Original Trustee of the Trust.  In December 2004, Mr. Kishnani replaced Mr.

9  Fournier as Trustee of the Trust by first Amendment to the Trust Agreement, dated as of December

10 6, 2004 (*see* last two pages of **Exhibit B**), and assumed all of the duties and responsibilities of

11 Liquidating Trustee under the Trust Agreement and the Plan.

12      The chapter 11 Case in front of the Bankruptcy Court then closed in 2009.

13      On December 15, 2020, Sunil S. Kishnani passed away.  Unfortunately, because of Mr.

14 Kishnani's recent, sudden passing, the Trust must now seek to fill the Trustee vacancy.

15 **IV.    REQUEST FOR RELIEF**

16      **A.    The Court Should Appoint Richard Swanson as Interim Successor Trustee**
           **Pursuant to the Trust Agreement.**
17
        Pursuant to the Trust Agreement and the Confirmation Order approving the Trust
18
   Agreement, the Court is required to fill any vacancy in the Trustee position.  Specifically, Article
19
   V, Section 5.7 of the Trust Agreement (**Exhibit B**) provides that:
20
        In the event the Trustee position becomes vacant, the Trustee vacancy shall be filled by the
21      Court [defined as the District Court for the Northern District of California] based upon
        recommendations submitted by the DTSC.
22
        Recognizing the emergency circumstances presented by the vacancy in the Trustee position,
23
   former California Attorney General, Xavier Becerra, on behalf of DTSC, reviewed the
24
   qualifications of Richard Swanson and recommends Mr. Swanson for the position of interim
25
   Successor Trustee while DTSC considers a permanent replacement Trustee.[3]  *See* December 28,
26

27 ───────────────
   [3] On March 19, 2021, Attorney General Becerra assumed the office of United States Secretary of
28 Health and Human Services in the administration of President Joseph Biden.

IT ENVIRONMENTAL LIQUIDATING
TRUST'S MOT. TO APPOINT INTERIM
SUCCESSOR LIQUIDATING TRUSTEE;
MPA

1  2020 Letter from Andrew Wiener, Deputy Att'y Gen., for Xavier Becerra, Att'y Gen., Cal. Dep't
2  of Justice, to Peter Weiner, Attorney for the IT Envtl.  Liquidating Trust (**Exhibit D**).

3  Accordingly, consistent with the recommendations of DTSC and the State of California, the
4  Trust requests the Court enter an order pursuant to the Trust Agreement (**Exhibit B**), Article V,
5  Section 5.7, including but not limited to, appointing Mr. Richard Swanson as the interim successor
6  liquidating Trustee effective *nunc pro tunc* to December 16, 2020.

7  **B.    The Court Should Establish Trustee Appointment Procedures.**

8  To minimize the future burden on the Court, and to effectuate an orderly and efficient
9  transition of the administration of the Trust, the Trust requests the Court establish the following
10 Trustee appointment procedures to apply in the event future vacancies in the Trustee position arise,
11 consistent with Section 5.7 of the Trust Agreement:

12  **a.**   In the event the Trustee position becomes vacant, DTSC will recommend (i)
13       a Successor Trustee and (ii) any modification to the compensation to be
14       received by the Successor Trustee from the compensation received by the
15       predecessor Trustee.

16  **b.**   Upon DTSC recommending a Successor Trustee and any modification to the
17       compensation to be received by such Successor Trustee, DTSC will notify
18       counsel to the Trust and the predecessor Trustee (if applicable) of such
19       recommendation(s).

20  **c.**   If the predecessor Trustee (if applicable) also recommends any modification
21       to the compensation to be received by the Successor Trustee from the
22       compensation received by the predecessor Trustee, the predecessor Trustee
23       will notify counsel to the Trust and DTSC of his or her recommendation
24       within 10 days of receiving notice from DTSC of its recommendation(s).

25  **d.**   Counsel to the Trust will then file a notice with the Court (the "Successor
26       Trustee Notice") informing the Court of (i) DTSC's recommendation for
27       Successor Trustee and (ii) any recommendation to modify the compensation

28

1      to be received by the Successor Trustee for performance of his or her duties.

2      Counsel to the Trust will deliver such Successor Trustee Notice to the United

3      States Trustee.

4      **e.**      If no objection is filed to the Successor Trustee Notice with the Court, and

5      there is agreement on the compensation to be received by the Successor

6      Trustee, within twenty (20) days of such filing, the Successor Trustee will

7      be deemed so appointed; provided, however, that any objection to the

8      modification of or disagreement on the compensation to be received by the

9      Successor Trustee will not prevent or delay the designation or appointment

10     of the Successor Trustee, and will be resolved pursuant to subparagraph (f).

11     **f.**      If any objection is filed to the Successor Trustee Notice with the Court,

12     objecting to either the identity of the Successor Trustee and/or any proposed

13     modification to the compensation to be received by the Successor Trustee,

14     the interested parties will confer and attempt to agree on the identity of

15     and/or the compensation of (as applicable) the Successor Trustee.  If the

16     parties agree on the identity of and/or the compensation of the Successor

17     Trustee, the parties will submit a stipulation to the Court, in the manner

18     prescribed by the applicable rules of the Court, indicating the agreed-upon

19     Successor Trustee and/or compensation for the Successor Trustee.  If the

20     parties cannot agree on the identity of and/or the compensation for the

21     Successor Trustee, the parties will submit, in their discretion, motions

22     supporting their respective recommendations to the Court, in the manner

23     prescribed by the applicable rules of the Court.  The Court will, pursuant to

24     its authority under Sections 5.7 and 5.5(c) of the Trust Agreement and in

25     such manner as the Court shall deem appropriate, appoint the Successor

26     Trustee and/or impose any modification to the compensation to be received

27     by the Successor Trustee for the performance of his or her duties.

28     **g.**      Any Successor Trustee appointed according to the procedures set forth in (e)

1   or (f), above, will execute an instrument accepting such appointment and

2   will file such acceptance with the Trust's records.   Thereupon, such

3   Successor Trustee will, without any further act, become vested with all the

4   estates, properties, rights, powers, trusts and duties of his or her predecessor

5   in the Trust with like effect as if originally named in the Trust Agreement;

6   provided, however, that a removed or resigning Trustee shall, nevertheless,

7   when requested in writing by the Successor Trustee, execute and deliver an

8   instrument or instruments conveying and transferring to such Successor

9   Trustee under the Trust all the estates, properties, rights, powers, and trusts

10   of such predecessor Trustee.

11   **h.**   If the Successor Trustee appointed according to the procedures set forth in

12   (e) or (f), above, does not accept his or her appointment within 10 days

13   following the Court's order of his or her appointment, DTSC will have the

14   right to designate an alternative Successor Trustee and the notice and

15   appointment provisions of (b) – (h) will apply.

16   **V.**   **CONCLUSION**

17   Wherefore, the Trust requests the Court enter an order (i) appointing Mr. Richard Swanson

18   as the interim successor liquidating Trustee of the Trust effective *nunc pro tunc* to December 16,

19   2020; (ii) approving Trustee appointment procedures; and (iii) granting the Trust any other relief

20   to which it may be entitled, at law or in equity.

21   DATED:  May 6, 2021                           PAUL HASTINGS LLP

22

23                                              By: _____*/s/ Todd M. Schwartz*_____
                                                   TODD M. SCHWARTZ
24
                                               Attorneys for Movant
25                                              IT ENVIRONMENTAL LIQUIDATING
                                               TRUST
26

27

28

CASE NO.                          - 7 -

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re | ) | Chapter 11 |
|  | ) |  |
| THE IT GROUP, INC., | ) | Case No. 02-10118 (MFW) |
| *et al.*, | ) |  |
|  | ) | (Jointly Administered) |
| Debtors. | ) |  |
|  | ) |  |

**FIRST AMENDED JOINT CHAPTER 11 PLAN
FOR THE IT GROUP, INC. AND ITS AFFILIATED DEBTORS
PROPOSED BY THE DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

Dated:  February 9, 2004

SKADDEN, ARPS, SLATE
MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, DE 19899-0636
(302) 651-3000

ATTORNEYS FOR THE DEBTORS

WHITE & CASE LLP
Wachovia Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, FL 33131
(305) 371-2700

THE BAYARD FIRM
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE  19899
(302) 655-5000

ATTORNEYS FOR THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS

Table of Contents

Page

ARTICLE I   DEFINITIONS AND INTERPRETATION ...........................................................1
   1.1    Definitions...........................................................................................................1
   1.2    Interpretation.....................................................................................................10
   1.3    Application of Definitions and Rules of Construction Contained in the Bankruptcy Code ...... 10
   1.4    Other Terms.......................................................................................................10
   1.5    Appendices and Plan Documents.....................................................................10

ARTICLE II   CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS .......................11
   2.1    Claims and Equity Interests Classified............................................................11
   2.2    Administrative Claims and Tax Claims.............................................................11
   2.3    Claims and Equity Interests..............................................................................11
   2.4    Consolidated Plan.............................................................................................11
   2.5    Separate Classification of Secured Claims......................................................11

ARTICLE III.   IDENTIFICATION OF IMPAIRED CLASSES OF CLAIMS AND EQUITY INTERESTS ...........12
   3.1    Unimpaired Classes of Claims and Equity Interests.......................................12
   3.2    Impaired Classes of Claims and Equity Interests............................................12
   3.3    Impairment Controversies.................................................................................12

ARTICLE IV   PROVISIONS FOR TREATMENT OF CLAIMS AND EQUITY INTERESTS UNDER THE PLAN...........12
   4.1    Treatment of Claims and Equity Interests.......................................................12
   4.2    Litigation Trust Alternative...............................................................................14

ARTICLE V   PROVISIONS FOR TREATMENT OF UNCLASSIFIED CLAIMS UNDER THE PLAN ...........14
   5.1    Treatment of Administrative Claims.................................................................14
   5.2    Treatment of Tax Claims..................................................................................15

ARTICLE VI.   ACCEPTANCE OR REJECTION OF THE PLAN; EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS OR EQUITY INTERESTS...........15
   6.1    Classes Entitled to Vote...................................................................................15
   6.2    Class Acceptance Requirement.......................................................................15
   6.3    Confirmation Without Acceptance by All Impaired Classes.............................16

ARTICLE VII.   MEANS FOR IMPLEMENTATION OF THE PLAN........................................16
   7.1    Substantive Consolidation of Debtors.............................................................16
   7.2    IT Group Subsidiary Guarantees.....................................................................16
   7.3    Merger and Dissolution of IT Group Corporate Entities..................................16
   7.4    The Plan Settlement.........................................................................................16
   7.5    Shaw Stock.......................................................................................................17
   7.6    Formation of Reorganized IT Group.................................................................17
   7.7    Oversight Committee.........................................................................................17
   7.8    Plan Administrator.............................................................................................19
   7.9    Chief Litigation Officer......................................................................................20
   7.10   Trusts................................................................................................................21
   7.11   Vesting of Assets of Debtors............................................................................27
   7.12   Reconstitution of Board of Directors................................................................27
   7.13   The New Charter and the New By-Laws...........................................................27
   7.14   Cancellation of Instruments and Agreements..................................................27
   7.15   Expenses Incurred and Claims of the Indenture Trustee.................................27
   7.16   Causes of Action..............................................................................................28
   7.17   Approval of the Plan Settlement.......................................................................28
   7.18   Employee Matters.............................................................................................28
   7.19   Special Provisions Regarding Insured Claims.................................................28

Table of Contents
(continued)

Page

7.20    Appointment of the Disbursing Agent ...............................................................29
7.21    Sources of Cash for Plan Distributions..............................................................29
7.22    Sources of Cash for Implementation of Plan......................................................29
7.23    Investment of Funds Held by the Disbursing Agent; Tax Reporting by the Disbursing
        Agent ..............................................................................................................29
7.24    Distributions under the Plan.............................................................................29
7.25    Timing of Distributions under the Plan..............................................................29
7.26    Address for Delivery of Distributions under the Plan..........................................30
7.27    Time Bar to Cash Payments.............................................................................30
7.28    Manner of Payment under the Plan...................................................................30
7.29    Expenses Incurred on or after the Effective Date and Claims of the Disbursing Agent. ....30
7.30    Fractional Distributions...................................................................................30
7.31    Corporate Action ...........................................................................................30
7.32    Effectuating Documents and Further Transactions .............................................31

ARTICLE VIII.  PROCEDURES FOR RESOLVING AND TREATING CONTESTED CLAIMS ...........31
8.1     Objection Deadline ........................................................................................31
8.2     Prosecution of Contested Claims......................................................................31
8.3     Claims Settlement Guidelines..........................................................................31
8.4     No Distributions Pending Allowance.................................................................31
8.5     Distributions After Allowance..........................................................................32
8.6     Estimation of Claims......................................................................................32

ARTICLE IX.  CONDITIONS PRECEDENT TO CONFIRMATION OF THE PLAN AND THE OCCURRENCE
OF THE EFFECTIVE DATE ...........................................................................................32
9.1     Conditions Precedent to Confirmation ..............................................................32
9.2     Conditions Precedent to the Occurrence of the Effective Date.............................33
9.3     Waiver of Conditions......................................................................................33
9.4     Effect of Failure of Conditions to Effective Date ...............................................33

ARTICLE X.  THE DISBURSING AGENT ..........................................................................33
10.1    Powers and Duties..........................................................................................33
10.2    Distributions..................................................................................................33
10.3    Exculpation...................................................................................................33

ARTICLE XI.  TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES...........34
11.1    Assumption of Executory Contracts and Unexpired Leases..................................34
11.2    Rejection of Executory Contracts and Unexpired Leases.....................................34
11.3    Claims Arising from Rejection or Termination...................................................35

ARTICLE XII.  RETENTION OF JURISDICTION...................................................................35

ARTICLE XIII.  MISCELLANEOUS PROVISIONS.................................................................36
13.1    Payment of Statutory Fees...............................................................................36
13.2    Discharge of the Debtors.................................................................................36
13.3    Third Party Agreements; Subordination.............................................................37
13.4    Dissolution of Committee................................................................................37
13.5    Exculpation...................................................................................................37
13.6    Title to Assets; Discharge of Liabilities.............................................................37
13.7    Surrender and Cancellation of Instruments.........................................................38
13.8    Notices.........................................................................................................38
13.9    Headings.......................................................................................................39
13.10   Governing Law..............................................................................................40
13.11   Expedited Determination.................................................................................40

Table of Contents
(continued)

| | | Page |
|---|---|---|
| 13.12 | Exemption from Transfer Taxes | 40 |
| 13.13 | Notice of Entry of Confirmation Order and Relevant Dates | 40 |
| 13.14 | No Interest or Attorneys' Fees | 40 |
| 13.15 | Modification of the Plan | 40 |
| 13.16 | Revocation of Plan | 40 |
| 13.17 | Setoff Rights | 41 |
| 13.18 | Compliance with Tax Requirements | 41 |
| 13.19 | Injunctions | 41 |
| 13.20 | Term of Injunctions or Stays | 41 |
| 13.21 | Injunction Against Interference With Chapter 11 Plan | 41 |
| 13.22 | Officers and Directors | 42 |
| 13.23 | Binding Effect | 42 |
| 13.24 | Severability | 43 |

The IT Group, Inc. and its affiliated debtors and debtors-in-possession in the above-captioned jointly administered chapter 11 cases and the Official Committee of Unsecured Creditors hereby collectively and jointly propose the following first amended joint chapter 11 plan:

## ARTICLE I.
## DEFINITIONS AND INTERPRETATION

### 1.1    Definitions

The capitalized terms used herein shall have the respective meanings set forth below:

(a)      "Administrative Bar Date Order" means the Final Order dated November 24, 2003 fixing January 15, 2004 as the last day to file certain administrative expense claims against the Debtors that arose, accrued, or otherwise became due and payable on and between January 16, 2002 and November 15, 2003 in the Chapter 11 Cases.

(b)      "Administrative Claim" means (i) a Claim incurred by a Debtor (or its Estate) on or after the Petition Date and before the Effective Date for a cost or expense of administration in the Chapter 11 Cases entitled to priority under sections 503(b) and 507(a)(1) of the Bankruptcy Code, including, without limitation, Cure Claims, Fee Claims and Statutory Fees, if any, (ii) reasonable pre-Committee fees and expenses of White & Case LLP up to $53,000 and The Bayard Firm up to $11,000 as counsel to the ad hoc committee of holders of the Old 11¼% Notes in connection with these Chapter 11 Cases, (iii) reasonable fees and expenses of Raymond Pompe and Charles Brewer up to $60,000 in the aggregate as consultants to the Committee, and (iv) reasonable fees and expenses of counsel to the Agent incurred through the Effective Date.

(c)      "Administrative Reserve" means $1,500,000 of the Cash on hand in the Estates as of the Effective Date to fund all reasonable costs and expenses incurred after the Effective Date associated with implementation and administration of the Plan, including, without limitation, prosecution of Causes of Action of the Debtors and, if applicable, the administrative costs of the Litigation Trust.

(d)      "Administrative Surcharge" means the surcharge, if any, of the Litigation Recoveries to the extent necessary to fund implementation and administration of the Plan after the Effective Date (including, if applicable, the Litigation Trust) in excess of the Administrative Reserve in accordance with Section 7.22 of the Plan.

(e)      "Affiliate" means, with respect to any Person, all Persons that would fall within the definition assigned to such term in section 101(2) of the Bankruptcy Code, if such Person were a debtor in a case under the Bankruptcy Code.

(f)      "Agent" means Citicorp USA, Inc. in its capacity as administrative agent for the Prepetition Lenders under the Prepetition Credit Facility.

(g)      "Allowed" when used

(i)      with respect to any Claim, except for a Claim that is an Administrative Claim, means such Claim (A) to the extent it is not a Contested Claim; (B) to the extent it is allowed pursuant to any stipulation or agreement that has been approved by Final Order; (C) to the extent it is a Contested Claim, proof of which was filed timely with the Bankruptcy Court, and (I) as to which the Objection Deadline passed and no objection has been filed, unless the Bankruptcy Court determines that such Claim is to be determined in a forum other than the Bankruptcy Court, in which case such Claim shall not become Allowed until determined by Final Order of such other forum and allowed by Final Order of the Bankruptcy Court; or (II) as to which an objection was filed by the Objection Deadline, to the extent allowed by a Final Order; or (D) which otherwise becomes an Allowed Claim as provided in the Plan, provided, however, that a Claim which is not listed in the Schedules and which is not the subject of a proof of claim filed timely with the Bankruptcy Court shall not be an Allowed Claim except as otherwise expressly ordered by the Bankruptcy Court; and

(ii)    with respect to an Administrative Claim, means an Administrative Claim that has become "Allowed" pursuant to the procedures set forth in Section 5.1(c) of the Plan.

(h)    "Assets" means all of the Debtors' right, title and interest of any nature in property, wherever located, as specified in section 541 of the Bankruptcy Code

(i)    "Available Proceeds" means, at any time, the amount of Cash on hand in the Estates, Reorganized IT Group and, if applicable, the Litigation Trust, on and after the Effective Date, including, without limitation, any recovery from the Sevenson request for equitable adjustment to the U.S. Army Corps of Engineers, excluding (i) the Administrative Reserve (but only to the extent used to fund all reasonable costs and expenses incurred after the Effective Date associated with implementation and administration of the Plan), (ii) the Administrative Surcharge, if any, (iii) the IT Environmental Liquidating Trust Funding, (iv) the Environmental Liquidating Trust Assets, (v) Litigation Recoveries, (vi) the monies maintained in a segregated interest-bearing account on behalf of Rochelle Bookspan (approximately $500,000) pursuant to the Final Order of the Bankruptcy Court approving the Shaw Sale, but only so long as an order of the Bankruptcy Court or other court of competent jurisdiction requires that the monies in such account be segregated for the benefit of Ms. Bookspan, it being understood that thereafter such monies shall constitute Available Proceeds, and (vii) an amount sufficient to pay in Cash in full all Allowed Non-Lender Secured Claims, Allowed Administrative Claims, Allowed Tax Claims and Allowed Priority Claims.

(j)    "Avoidance Actions" means all Causes of Action of the Debtors and/or their Estates that arise under chapter 5 of the Bankruptcy Code.

(k)    "Avoidance Action Recoveries" means, at any time, the amount of Cash or other consideration obtained by or paid to the Estates, Reorganized IT Group and, if applicable, the Litigation Trust, associated with any judgment, settlement or other disposition of Avoidance Actions, less (i) reimbursement to the Estates from the first proceeds of the Avoidance Action Recoveries of the filing fees associated with such Avoidance Actions, which monies shall constitute and be distributed as Available Proceeds, and (ii) the Administrative Surcharge, if any.

(l)    "Bankruptcy Code" means the Bankruptcy Reform Act of 1978, as amended and codified at title 11 of the United States Code and as applicable to the Chapter 11 Cases.

(m)    "Bankruptcy Court" means the Bankruptcy Court unit of the United States District Court for the District of Delaware, or such other court having jurisdiction over the Chapter 11 Cases.

(n)    "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as prescribed by the United States Supreme Court pursuant to section 2075 of title 28 of the United States Code and as applicable to the Chapter 11 Cases.

(o)    "Bar Date Order" means the Final Order dated May 24, 2002 fixing July 15, 2002 as the last day to file proofs of claim against the Debtors in the Chapter 11 Cases.

(p)    "Business Day" means any day on which commercial banks are open for business in New York, New York.

(q)    "Cash" means legal tender of the United States of America or readily marketable direct obligations of, or obligations guaranteed by, the United States of America

(r)    "Cash Collateral Orders" means, collectively, the orders of the Bankruptcy Court in the Chapter 11 Cases authorizing and approving the Debtors' use of cash collateral under the Prepetition Credit Facility.

(s)    "Causes of Action" means all claims, rights, actions, causes of action, including Avoidance Actions, liabilities, obligations, suits, debts, remedies, dues, sums of money, accounts, reckonings,

bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages or judgments, whether known or unknown and whether asserted or unasserted

(t)     "Chapter 11 Cases" means the cases under chapter 11 of the Bankruptcy Code pending before the Bankruptcy Court with respect to each of the Debtors.

(u)     "Chief Litigation Officer" means AlixPartners LLC or such other Person identified at or prior to the Confirmation Hearing and selected by the Committee (in consultation with the Agent).

(v)     "Claim" means (i) any right to payment from a Debtor, whether or not such right is known or unknown, reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; (ii) any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from a Debtor, whether or not such right to an equitable remedy is known or unknown, reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured; or (iii) any right under section 502(h) of the Bankruptcy Code.

(w)     "Committee" means the Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases by the Office of the United States Trustee in accordance with section 1102(a) of the Bankruptcy Code.

(x)     "Committee Designees" means two individuals selected by the Committee to serve as members of the Oversight Committee from and after the Effective Date.

(y)     "Committee Lawsuit" means the adversary proceeding pending before the Bankruptcy Court in the Chapter 11 Cases, which was commenced by the Committee against certain of the Prepetition Lenders and styled Official Committee of Unsecured Creditors v. Citicorp USA, Inc., Adv. No. 02-04761 (MFW), as it may be amended from time to time.

(z)     "Confirmation Date" means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order.

(aa)     "Confirmation Hearing" means the hearing held by the Bankruptcy Court, as it may be continued from time to time, on confirmation of the Plan.

(bb)     "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan.

(cc)     "Consent Order" means that certain consent order between IT Corporation and the State of California in California v. International Technology Corp., No. 509105 (Super. Ct., June 27, 1989), as amended by stipulation, Sept. 30, 1999, pursuant to which the Debtors consent to certain terms under the California Hazardous Waste Control Act, which require, inter alia, closure and post-closure care of the Landfills as well as financial assurance with respect to those obligations.

(dd)     "Contested Claim" means a Claim (i) to the extent it is listed in the Schedules as disputed, contingent, or unliquidated, in whole or in part; (ii) that is listed in the Schedules as undisputed, liquidated, and not contingent and as to which a proof of claim has been filed with the Bankruptcy Court, to the extent the proof of claim amount exceeds the scheduled amount; (iii) that is not listed in the Schedules, but as to which a proof of claim has been filed with the Bankruptcy Court; or (iv) as to which an objection has been filed on or before the Objection Deadline, provided, that a Claim that is Allowed by Final Order or pursuant to the Plan on or before the Effective Date shall not be a Contested Claim.

(ee)     "Contested Unsecured Claim" means an Unsecured Claim that is a Contested Claim.

(ff)     "Contested Unsecured Claims Reserve" means any Distribution retained on account of a Contested Unsecured Claim.

3

(gg)      "Cure Claims" means all amounts required to be paid by any Debtor pursuant to sections 365(b)(1)(A) and (B) of the Bankruptcy Code as a consequence of the assumption pursuant to Article XI of the Plan of any executory contract or unexpired lease of any Debtor, excluding any amounts to be paid by Shaw in accordance with the Shaw Sale.

(hh)      "Debtors" means, collectively, the IT Group and each of its affiliates listed on Exhibit E to the Disclosure Statement, each in its respective capacity as a debtor and a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code in the Chapter 11 Cases.

(ii)      "Disallowed" when used with respect to a Claim, means a Claim, or such portion of a Claim, that has been disallowed by a Final Order.

(jj)      "Disbursing Agent" means Reorganized IT Group, the Litigation Trust Trustee or such other Person identified at or prior to the Confirmation Hearing and selected by the Committee and the Agent, in which capacity, it shall (i) make the Distributions contemplated under the Plan, the Confirmation Order, or any other relevant Final Order; (ii) perform any other act or task that is or may be delegated to the Disbursing Agent under the Plan, and (iii) perform any other act or task necessary or appropriate to implement and administer the Plan on behalf of the Estates.

(kk)      "Disclosure Statement" means the disclosure statement with respect to the Plan, as approved by the Bankruptcy Court as containing adequate information in accordance with section 1125 of the Bankruptcy Code, all exhibits and annexes thereto and any amendments or modifications thereof.

(ll)      "Distribution" means the payment or distribution under the Plan of property or interests in property to any holder of an Allowed Claim.  Unless otherwise agreed by the holder of an Allowed Claim, any payment in Cash to be made by the Disbursing Agent shall be made, at the election of the Disbursing Agent, by check drawn on a domestic bank or by wire transfer from a domestic bank.

(mm)     "Distribution Date" means, with respect to any Claim, (i) the Effective Date, if such Claim is then an Allowed Claim, (ii) the first Business Day occurring three (3) full months after the immediately preceding Distribution Date after the date such Claim becomes Allowed, if not Allowed on the Effective Date and (iii) such other dates that the Oversight Committee determines in its reasonable discretion that Distribution to the holders of Allowed Claims should be made in accordance with the Plan.

(nn)      "DTSC" means the California Department of Toxic Substances Control.

(oo)      "Effective Date" means the date selected by the Plan Proponents (in consultation with the Agent) which is no later than thirty (30) days after all of the conditions specified in Section 9.2 of the Plan have been satisfied or waived.

(pp)      "Environmental Unsecured Claim" means an Unsecured Claim against any Debtor arising under, related to or in connection with alleged contamination under the federal or state environmental laws or regulations.

(qq)      "Equity Interest" means any ownership or equity interest in any of the Debtors, including, without limitation, interests evidenced by common or preferred stock, warrants, options, limited liability company membership interests or other rights to purchase any ownership or equity interest in any of the Debtors

(rr)      "Estate" means the estate of any Debtor created by section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Cases.

(ss)      "Estate Causes of Action" means Causes of Action of the Debtors and/or their Estates (other than the Avoidance Actions).

(tt)   "Estate Cause of Action Recoveries" means, at any time, the amount of Cash or other consideration obtained by or paid to the Estates, Reorganized IT Group and, if applicable, the Litigation Trust, associated with any judgment, settlement or other disposition of Estate Causes of Action, less the Administrative Surcharge, if any.

(uu)   "Estimated Claims Order" means any Final Order of the Bankruptcy Court estimating any Claim or the aggregate amount of all Claims in any class created under the Plan to aid in the confirmation of the Plan, or the calculation of Distributions under the Plan.

(vv)   "Fee Application" means an application for allowance and payment of a Fee Claim.

(ww)   "Fee Claim" means a Claim of a Professional Person under sections 330 or 503 of the Bankruptcy Code for final allowance of compensation for services rendered and reimbursement of expenses incurred in the Chapter 11 Cases from the Petition Date to the Effective Date.

(xx)   "Final Decree" means the final decree of the Bankruptcy Court entered in the Chapter 11 Cases pursuant to Bankruptcy Rule 3022.

(yy)   "Final Order" means (i) an order or judgment of the Bankruptcy Court or any other court or adjudicative body having jurisdiction over a proceeding or matter as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending; or (ii) in the event that an appeal, writ of certiorari, reargument, or rehearing thereof has been sought, such order of the Bankruptcy Court or any other court or adjudicative body shall have been affirmed by the highest court to which such order was appealed, or certiorari has been denied, or from which reargument or rehearing was sought, and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired; provided, that no order shall fail to be a Final Order solely because of the possibility that a motion pursuant to Rule 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 9024 may be filed with respect to such order.

(zz)   "General Unsecured Claim" means an Unsecured Claim other than a Litigation Unsecured Claim, a Securities Litigation Claim and a Subordinated Claim.

(aaa)   "Indenture Trustee" means the Bank of New York, as indenture trustee under the Old Notes.

(bbb)   "Indemnified CLO Parties" means those parties identified in Section 7.9 of the Plan.

(ccc)   "Indemnified ELT Parties" means those parties identified in Section 7.10(II) of the Plan.

(ddd)   "Indemnified OC Parties" means those parties identified in Section 7.7 of the Plan.

(eee)   "Indemnified PA Parties" means those parties identified in Section 7.8 of the Plan.

(fff)   "Insurance Company" means any insurance company that provides any insurance, indemnification, reimbursement, contribution or other payment or similar coverage to any of the Debtors, Reorganized IT Group or, if applicable, the Litigation Trust, pursuant to an Insurance Policy.

(ggg)   "Insurance Policy" means the relevant policy of insurance issued by the applicable Insurance Company under which the Debtors, Reorganized IT Group, or, if applicable, the Litigation Trust, are insureds or beneficiaries of the coverage of any of the Debtors.

(hhh)   "Insured Claim" means any Claim against a Debtor for which the Debtor is entitled to indemnification, reimbursement, contribution or other payment under a policy of insurance wherein a Debtor is an insured or beneficiary of the coverage of any of the Debtors.

5

(iii)    "Internal Revenue Code" means the Internal Revenue Code of 1986, as amended, and any applicable rulings, regulations (including temporary and proposed regulations) promulgated thereunder, judicial decisions, and notices, announcements, and other releases of the United States Treasury Department or the IRS.

(jjj)    "IRS" means the United States Internal Revenue Service.

(kkk)    "IT Environmental Liquidating Trust" means the trust to be established on the Effective Date pursuant to the Plan and the IT Environmental Liquidating Trust Agreement.

(lll)    "IT Environmental Liquidating Trust Agreement" means the trust agreement to be entered into pursuant to the Plan to be filed as a Plan Document, under which the powers, duties and responsibilities of the IT Environmental Liquidating Trust shall be set forth.

(mmm)    "IT Environmental Liquidating Trust Assets" means the Assets of the Debtors which shall be transferred to the IT Environmental Liquidating Trust in accordance with the IT Environmental Liquidating Trust Agreement and Section 7.10(II) of the Plan.

(nnn)    "IT Environmental Liquidating Trust Funding" means $1,000,000 of the Cash on hand in the Estates as of the Effective Date to be transferred to the IT Environmental Liquidating Trust in accordance with the IT Environmental Liquidating Trust Agreement and Section 7.10(II) of the Plan.

(ooo)    "IT Environmental Liquidating Trustee" means Brian Fournier or such other Person identified at or prior to the Confirmation Hearing and selected by the Committee and the Debtors, provided that the DTSC does not object.

(ppp)    "IT Group" means The IT Group, Inc., a Delaware corporation, as a debtor and debtor-in-possession in jointly administered Case No. 02-10118 (MFW).

(qqq)    "Landfills" means those certain four landfills in Northern California known as Montezuma Hills, Benson Ridge, Vine Hill Complex, and Panoche owned and maintained by the Debtors, IT Corporation, IT Lake Herman Road LLC and IT Vine Hill LLC, which are the subject of the Consent Order.

(rrr)    "Lender Claim" means a Claim of the Agent and the Prepetition Lenders under the Prepetition Credit Facility and Cash Collateral Orders.

(sss)    "Lender Designees" means two individuals selected by the Agent and/or the Prepetition Lenders to serve as members of the Oversight Committee from and after the Effective Date.

(ttt)    "Litigation Recoveries" means, collectively, the Avoidance Action Recoveries and the Estate Cause of Action Recoveries.

(uuu)    "Litigation Trust" means the litigation trust described in Section 7.10(I) of the Plan, to be formed at the election of the Agent (on behalf of the Prepetition Lenders) and the Committee.

(vvv)    "Litigation Trust Agreement" means the agreement governing the Litigation Trust, dated as of the Effective Date, to be filed as a Plan Document.

(www)    "Litigation Trust Alternative" shall have the meaning ascribed to such term in Section 4.2 of the Plan.

(xxx)    "Litigation Trust Assets" means the Avoidance Actions, Estate Causes of Action, an amount of cash reasonably sufficient to administer the Litigation Trust and such other rights and/or assets as the Agent (on behalf of the Prepetition Lenders) and the Committee designate (including, without limitation, the Administrative Reserve, subject to the obligation of the Litigation Trust to utilize such reserve to satisfy the claims and expenses for which such reserve was established, and any assets the sale, disposition or collection of which,

after the Effective Date, would give rise to Available Proceeds), and the earnings and proceeds therefrom. Litigation Trust Assets shall not include any IT Environmental Liquidating Trust Assets.

(yyy)   "Litigation Trust Trustee" means the Plan Administrator and the Chief Litigation Officer, as co-trustees, each having substantially the same responsibilities vis-à-vis the Litigation Trust as they have, or would have had, vis-à-vis Reorganized IT Group. The designation of the Litigation Trust Trustee shall be effective on the Effective Date without the need for a further order of the Bankruptcy Court.

(zzz)   "Litigation Unsecured Claim" means (i) an Environmental Unsecured Claim; (ii) a Tort Unsecured Claim; and (iii) any other Unsecured Claim, except a Securities Litigation Claim and a Subordinated Claim, against any Debtor that was asserted in any court, tribunal or proceeding prior to the Petition Date.

(aaaa)   "LLCs" means IT Vine Hill LLC and the IT Lake Herman Road LLC, which together own the real property containing two of the Landfills.

(bbbb)   "New By-Laws" means the by-laws of Reorganized IT Group, as amended and restated in accordance with Section 7.13 of the Plan. The New By-Laws shall be in substantially the form filed with the Bankruptcy Court as a Plan Document.

(cccc)   "New Charter" means the certificate of incorporation of Reorganized IT Group, as amended and restated in accordance with Section 7.13 of the Plan. The New Charter shall be in substantially the form filed with the Bankruptcy Court as a Plan Document.

(dddd)   "New Common Stock" means the share of common stock of Reorganized IT Group to be authorized for issuance pursuant to the Plan, which share (upon issuance) shall evidence a 100% common ownership interest in Reorganized IT Group.

(eeee)   "Non-Lender Secured Claim" means, excluding Lender Claims, (i) a Claim secured by a Lien on any Assets, which lien is valid, perfected, and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, and which is duly established in the Chapter 11 Cases, but only to the extent of the value of the holder's interest in the collateral that secures payment of the Claim; (ii) a Claim that is subject to a valid right of recoupment or setoff under section 553 of the Bankruptcy Code, but only to the extent of the Allowed amount subject to recoupment or setoff as provided in section 506(a) of the Bankruptcy Code; and (iii) a Claim allowed under the Plan as a Non-Lender Secured Claim.

(ffff)   "Northern District of California" means the United States District Court for the Northern District of California.

(gggg)   "Objection Deadline" means the deadline for filing objections to Claims as set forth in Section 8.1 of the Plan.

(hhhh)   "Old 11 ¼% Notes" means, collectively, the 11 ¼% Senior Subordinated Notes of the IT Group due 2009 in the aggregate principal amount of $225,000,000.

(iiii)   "Old 8% Notes" means, collectively, the 8% Subordinated Notes of the OHM Corporation due 2005 in the aggregate principal amount of $31,622,000.

(jjjj)   "Old Notes" means, collectively, the Old 11 ¼% Notes and the Old 8% Notes.

(kkkk)   "Oversight Committee" means the committee consisting of four members (which number may not be increased), two selected by the Committee and two selected by the Agent on behalf of the Prepetition Lenders, which shall oversee the administration and implementation of the Plan and the liquidation of the Debtors' Assets in accordance with the Plan.

7

(llll)    "Oversight Committee Compensation" means the compensation disclosed at or prior to the Confirmation Hearing and agreed to by the Committee and the Agent to be paid to Oversight Committee members in accordance with Section 7.7 of the Plan.

(mmmm)   "Person" means an individual, corporation, partnership, limited liability company, joint venture, trust, estate, unincorporated association, unincorporated organization, governmental entity, or political subdivision thereof, or any other entity that would fall within the definition assigned to such term in section 101(41) of the Bankruptcy Code.

(nnnn)   "Petition Date" means the date on which the Chapter 11 Cases were commenced, January 16, 2002.

(oooo)   "Plan" means this chapter 11 plan, either in its present form or as it may be amended, supplemented, or otherwise modified from time to time, and the exhibits and schedules to the foregoing, as the same may be in effect at the time such reference becomes operative.

(pppp)   "Plan ADR" means the alternative dispute resolution procedures to be filed with the Bankruptcy Court as a Plan Document, pursuant to which all Litigation Unsecured Claims shall be liquidated, unless the holder of a Litigation Unsecured Claim has obtained or seeks and obtains relief from the automatic stay or from the ADR Injunction (as defined in the Plan ADR) to prosecute its claim in a non-bankruptcy forum and does not consent to participate in the Plan ADR.

(qqqq)   "Plan Administrator" means AlixPartners LLC or such other Person identified at or prior to the Confirmation Hearing and selected by the Committee and the Agent.

(rrrr)   "Plan Documents" means the documents that aid in effectuating the Plan as specifically identified as such herein and filed with the Bankruptcy Court as specified in Section 1.5 of the Plan.

(ssss)   "Plan Proponents" means, collectively, the Debtors and the Committee.

(tttt)   "Plan Settlement" means the compromise and settlement between the Agent, the Prepetition Lenders, the Debtors, the Subsidiaries that are not Debtors, and the Committee (and its respective members) as set forth in Section 7.4 of the Plan.

(uuuu)   "Post Closure Policies" means the Debtors' interest in AIG Post Closure Policy 4762403 and AIG Post Closure Excess Policy 4760892, and any other insurance policies belonging to the Debtors at any time which provide coverage for post-closure costs at the Landfills.

(vvvv)   "Post-Confirmation Interest" means simple interest at the rate of 1.0% per annum or such other rate as the Bankruptcy Court may determine at the Confirmation Hearing is appropriate, such interest to accrue from the Distribution Date with respect to any Allowed Tax Claim.

(wwww)"Prepetition Credit Facility" means that certain Second Amended and Restated Credit Agreement dated as of March 7, 2000 between the Prepetition Lenders with Citicorp USA, Inc., as administrative agent and Fleet National Bank, N.A. as documentation agent and the institutions listed therein as co-agents, and certain of the Debtors, together with all documents, instruments, and agreements executed or entered into in connection therewith, and any amendments thereto.

(xxxx)   "Prepetition Lenders" means those lenders who are parties to the Prepetition Credit Facility.

(yyyy)   "Priority Claim" means any Claim to the extent such Claim is entitled to priority in right of payment under section 507(a) of the Bankruptcy Code, other than the Lender Claims, Non-Lender Secured Claims, Administrative Claims, and Tax Claims.

(zzzz)   "Professional Person" means a Person retained or to be compensated for services rendered or costs incurred on or after the Petition Date and on or prior to the Effective Date pursuant to sections 327, 328, 330, 503(b) or 1103 of the Bankruptcy Code in the Chapter 11 Cases.

(aaaaa)   "Pro Rata Share" means the proportion that the amount an Allowed Claim bears to the aggregate amount of all Claims in a particular class, including Contested Claims, but not including Disallowed Claims, (i) as calculated by the Disbursing Agent on or before any Distribution Date; or (ii) as determined by the Bankruptcy Court in an Estimated Claims Order, if such an order is sought and obtained.

(bbbbb)   "Reorganized IT Group" means, collectively, the Debtors as reorganized from and after the Effective Date pursuant to Article VII of the Plan.

(ccccc)   "Schedules" means the schedules of assets and liabilities and the statements of financial affairs filed by the Debtors with the Bankruptcy Court, as required by section 521 of the Bankruptcy Code and the Official Bankruptcy Forms of the Bankruptcy Rules, as such schedules and statements may be amended by the Debtors from time to time in accordance with Bankruptcy Rule 1009.

(ddddd)   "SEC" means the United States Securities and Exchange Commission.

(eeeee)   "Securities Litigation" means the following actions: (i) Civil Action No. 02-1927 pending in the United States District Court for the Western District of Pennsylvania, styled Thomas L. Payne, et al., v. Anthony J. Deluca, et al.; (ii) Civil Action No. 03-0288 pending in the United States District Court for the Western District of Pennsylvania, styled Howard G. Clair, et al., v. Anthony J. DeLuca, et al.; and (iii) Civil Action No. 02-0886 pending in the District Court for the Western District of Pennsylvania, styled Staro Asset Management LLC v. Anthony J. DeLuca, et al.

(fffff)   "Securities Litigation Claims" means any claim or Cause of Action against the Debtors, their predecessors or successors arising from rescission of a purchase or sale of the Old Notes or Equity Interests of any Debtor, or for damages arising from the purchase or sale of the Old Notes or Equity Interests of any Debtor, or for reimbursement or contribution allowed under section 502 of the Bankruptcy Code on account of such a claim.

(ggggg)   "Shaw" means The Shaw Group, Inc., or its designee.

(hhhhh)   "Shaw Sale" means the sale of substantially all of the Assets of the Debtors to Shaw approved by order of the Bankruptcy Court dated April 25, 2002.

(iiiii)   "Shaw Stock" means the common stock of Shaw received by the Debtors pursuant to the Shaw Sale.

(jjjjj)   "Soose Loans" means, collectively, the loans made pursuant to certain loan agreements between IT Group and Harry Soose, Jr., dated July 1999 and May 2000.

(kkkkk)   "Statutory Fees" means all fees payable by the Debtors pursuant to section 1930 of title 28 of the United States Code, that accrued prior to, on or after the Effective Date.

(lllll)   "Subordinated Claims" means any Claim subordinated pursuant to a Final Order under section 510(c) of the Bankruptcy Code.

(mmmmm)   "Subsidiary" means any entity of which IT Group owns directly or indirectly all of the outstanding capital stock or limited liability company membership interests.

(nnnnn)   "Tax Claim" means a Claim against any of the Debtors that is of a kind specified in section 507(a)(8) of the Bankruptcy Code.

(ooooo) "Tort Unsecured Claim" means an Unsecured Claim (other than an Environmental Unsecured Claim) against any Debtor for personal injury or property damage allegedly arising from the tortious actions or inactions of any of the Debtors, their agents or any other person.

(ppppp) "Unsecured Claim" means any Claim other than a Lender Claim, a Non-Lender Secured Claim, an Administrative Claim, a Priority Claim or a Tax Claim.

(qqqqq) "Voting Procedures Order" means the Final Order of the Bankruptcy Court approving procedures relating to the solicitation and tabulation of votes with respect to the Plan.

## 1.2    Interpretation

Unless otherwise specified, all section, article and exhibit references in the Plan are to the respective section in, article of, or exhibit to, the Plan, as the same may be amended, waived, or modified from time to time. Words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender. The Disclosure Statement may be referred to for purposes of interpretation to the extent any term or provision of the Plan is determined by the Bankruptcy Court to be ambiguous.

## 1.3    Application of Definitions and Rules of Construction Contained in the Bankruptcy Code

Words and terms defined in section 101 of the Bankruptcy Code shall have the same meaning when used in the Plan, unless a different definition is given in the Plan. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Plan.

## 1.4    Other Terms

The words "herein," "hereof," "hereto," "hereunder" and others of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan. A term used herein that is not defined herein shall have the meaning ascribed to that term, if any, in the Bankruptcy Code.

## 1.5    Appendices and Plan Documents

All appendices to the Plan and the Plan Documents are incorporated into the Plan by this reference and are a part of the Plan as if set forth in full herein. All Plan Documents shall be in a form reasonably acceptable to the Plan Proponents and the Agent. The Plan Document (in substantially final form) shall be filed with the Clerk of the Bankruptcy Court not less than ten (10) days prior to the commencement of the Confirmation Hearing. Holders of Claims and Equity Interests may obtain a copy of the Plan Documents, once filed, by a written request sent to the following address:

White & Case LLP
200 South Biscayne Boulevard
Miami, Florida 33131
Attention: Mark B. Fuhr
Telephone: (305) 371-2700
Facsimile: (305) 358-5744

**ARTICLE II.**
**CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS**

2.1    **Claims and Equity Interests Classified**

        For purposes of organization, voting and all confirmation matters, except as otherwise provided herein, all Claims (except for Administrative Claims and Tax Claims) and all Equity Interests shall be classified as set forth in this Article II of the Plan.

2.2    **Administrative Claims and Tax Claims**

        As provided in section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Tax Claims are not classified for purposes of voting or receiving distributions under the Plan. All such Claims shall be treated separately as unclassified Claims on the terms set forth in Article V of the Plan.

2.3    **Claims and Equity Interests**

        The Plan classifies the Claims against and Equity Interests in each of the Debtors as follows:

    (a)    Class 1:    Priority Claims

    (b)    Class 2:    Non-Lender Secured Claims

    (c)    Class 3:    Lender Claims

    (d)    Class 4A:    General Unsecured Claims

    (e)    Class 4B:    Litigation Unsecured Claims

    (f)    Class 4C:    Securities Litigation Claims

    (g)    Class 4D:    Subordinated Claims

    (h)    Class 5:    Equity Interests

2.4    **Consolidated Plan**

        Although the Plan has been filed as a joint Plan for all of the Debtors for purposes of administrative convenience and efficiency, the Plan provides for the substantive consolidation of the Debtors for all purposes under the Plan. Voting on the Plan, confirmation of the Plan, and Distributions under the Plan shall be considered and accomplished on a consolidated basis.

2.5    **Separate Classification of Secured Claims**

        Although Non-Lender Secured Claims against each Debtor have been placed in one class for purposes of convenience, each Non-Lender Secured Claim shall be treated as though in a separate class for purposes of voting and receiving Distributions under the Plan.

## ARTICLE III.
## IDENTIFICATION OF IMPAIRED
## CLASSES OF CLAIMS AND EQUITY INTERESTS

**3.1**     **Unimpaired Classes of Claims and Equity Interests**

Class 1 (Priority Claims) against each of the Debtors is not impaired under the Plan.

**3.2**     **Impaired Classes of Claims and Equity Interests**

With the exception of Class 1 (Priority Claims) against each of the Debtors, all classes of Claims against and Equity Interests in each of the Debtors are impaired under the Plan.

**3.3**     **Impairment Controversies**

If a controversy arises as to whether any Claim or Equity Interest, or any class of Claims or Equity Interests, is impaired under the Plan, the Bankruptcy Court shall, after notice and a hearing, determine such controversy.

## ARTICLE IV.
## PROVISIONS FOR TREATMENT OF CLAIMS
## AND EQUITY INTERESTS UNDER THE PLAN

**4.1**     **Treatment of Claims and Equity Interests**

The classes of Claims against and Equity Interests in each of the Debtors shall be treated under the Plan as follows:

(a)     Class 1 – Priority Claims.  Each holder of an Allowed Priority Claim shall be unimpaired under the Plan and such Allowed Priority Claims shall either be paid in full in Cash on the Effective Date or, pursuant to section 1124 of the Bankruptcy Code, all of the legal, equitable and contractual rights of each holder of an Allowed Priority Claim in respect of such Claim shall be fully reinstated and retained, except as provided in section 1124(2)(A)-(C) of the Bankruptcy Code, and the holders of such Allowed Priority Claims shall be paid in full in accordance with such reinstated rights, provided that payment may be made by the Litigation Trust rather than Reorganized IT Group, to the extent the Litigation Trust succeeds to the Debtors' Assets in lieu of Reorganized IT Group.

(b)     Class 2 – Non-Lender Secured Claims.  Each holder of an Allowed Non-Lender Secured Claim shall be impaired under the Plan and, pursuant to section 1129(b) of the Bankruptcy Code, shall, at the election of the Plan Proponents, Reorganized IT Group or the Litigation Trust Trustee (as applicable) in consultation with the Agent, receive one of the following treatment options: (i) each holder of an Allowed Non-Lender Secured Claim shall retain its liens securing its Allowed Non-Lender Secured Claim and receive on account of its Allowed Non-Lender Secured Claim deferred cash payments having a present value on the Effective Date equal to the amount of its Allowed Non-Lender Secured Claim, (ii) each holder of an Allowed Non-Lender Secured Claim shall realize the "indubitable equivalent" of its Allowed Non-Lender Secured Claim, (iii) the property securing the Allowed Non-Lender Secured Claim shall be sold free and clear of liens with such liens to attach to the proceeds of the sale and the treatment of such liens on proceeds as provided in clause (i) or (ii) of this subparagraph or (iv) if such Allowed Non-Lender Secured Claim is subject to a valid right of recoupment or setoff, such Claim shall be setoff to the extent of the amount subject to setoff in accordance with sections 506(a) and 553 of the Bankruptcy Code.

(c)     Class 3 – Lender Claims.  Subject to Section 4.2 of the Plan and in accordance with the Plan Settlement, the Lender Claims shall be Allowed in full under the Plan and each holder of an Allowed Lender Claim shall receive on the Effective Date and on any applicable Distribution Date thereafter, in full and complete satisfaction of such Claim, its Pro Rata Share of (i) 87.5% of the Available Proceeds, (ii) 90% of the Shaw Stock,

(iii) 20% of Avoidance Action Recoveries, and (iv) 75% of the first $10,000,000 of Estate Cause of Action Recoveries and 50% of Estate Cause of Action Recoveries thereafter. In the event that holders of Allowed Lender Claims receive distributions from Reorganized IT Group after the Effective Date, the cumulative distributions from IT Group and Reorganized IT Group under this provision to a holder of an Allowed Lender Claim shall not exceed the amount of such holder's Allowed Lender Claim.

(d)    Class 4A – General Unsecured Claims. Subject to Section 4.2 of the Plan and in accordance with the Plan Settlement, each holder of an Allowed General Unsecured Claim shall receive on the applicable Distribution Date on account of its Allowed General Unsecured Claim, its Pro Rata Share of (i) 12.5% of the Available Proceeds, (ii) the net proceeds from the sale or other disposition of 10% of the Shaw Stock in accordance with the Plan, (iii) 80% of Avoidance Action Recoveries, and (iv) 25% of the first $10,000,000 of Estate Cause of Action Recoveries and 50% of Estate Cause of Action Recoveries thereafter. In the event that holders of Allowed General Unsecured Claims receive distributions from Reorganized IT Group after the Effective Date, the cumulative distributions from IT Group and Reorganized IT Group under this provision to a holder of an Allowed General Unsecured Claim shall not exceed the amount of such holder's Allowed General Unsecured Claim.

(e)    Class 4B – Litigation Unsecured Claims. Each Litigation Unsecured Claim shall be liquidated pursuant to the Plan ADR. To the extent any such Claim becomes an Allowed Litigation Unsecured Claim as provided in the Plan ADR, the holder of such Claim shall receive on any applicable Distribution Date on account of its Allowed Litigation Unsecured Claim, its Pro Rata Share of the Distributions to holders of Allowed General Unsecured Claims as provided in Section 4.1(d) of the Plan. To the extent any Allowed Litigation Unsecured Claim is an Insured Claim, the amount of its Allowed Litigation Unsecured Claim shall be reduced by the amount of insurance proceeds, if any, to pay such Claim, and the Pro Rata Share with respect to such Allowed Litigation Unsecured Claim shall be determined based upon such reduced amount. In the event that holders of Allowed Litigation Unsecured Claims receive distributions from Reorganized IT Group after the Effective Date, the cumulative distributions from IT Group and Reorganized IT Group under this provision to a holder of an Allowed Litigation Unsecured Claim shall not exceed the amount of such holder's Allowed Litigation Unsecured Claim.

(f)    Class 4C – Securities Litigation Claims. In accordance with section 510(b) of the Bankruptcy Code, an Allowed Securities Litigation Claim shall be subordinated to all senior classes. In the event that holders of Allowed Lender Claims, Allowed General Unsecured Claims and Allowed Litigation Unsecured Claims receive distributions under the Plan from Reorganized IT Group after the Effective Date and the cumulative distributions received by all such holders from IT Group and Reorganized IT Group equal the aggregate amount of the Allowed Claims of all such holders and all of such Allowed Claims have been paid in full, then each holder of an Allowed Securities Litigation Claim shall receive its Pro Rata Share of the distributions, if any, by Reorganized IT Group under the Plan in excess of such aggregate amount; provided, however, that under no circumstances shall the distributions under this provision to the holder of an Allowed Securities Litigation Claim exceed the amount of such holder's Allowed Securities Litigation Claim. Other than the potential to receive the foregoing distribution, each holder of an Allowed Securities Litigation Claim shall not receive or retain any Distribution or consideration on account of such Allowed Securities Litigation Claim.

(g)    Class 4D – Subordinated Claims. In the event that holders of Allowed Lender Claims, Allowed General Unsecured Claims, Allowed Litigation Unsecured Claims and Allowed Securities Litigation Claims receive distributions under the Plan from Reorganized IT Group after the Effective Date and the cumulative distributions received by all such holders from IT Group and Reorganized IT Group equal the aggregate amount of the Allowed Claims of all such holders and all of such Allowed Claims have been paid in full, then each holder of an Allowed Subordinated Claim shall receive its Pro Rata Share of the distributions, if any, by Reorganized IT Group under the Plan in excess of such aggregate amount; provided, however, that under no circumstances shall the distributions under this provision to the holder of an Allowed Subordinated Claim exceed the amount of such holder's Allowed Subordinated Claim. Other than the potential to receive the foregoing distribution, each holder of an Allowed Subordinated Claim shall not receive or retain any Distribution or consideration on account of such Allowed Subordinated Claim.

(h)    Class 5 – Equity Interests. On the Effective Date, all Equity Interests in IT Group shall be canceled, annulled and extinguished and one share of New Common Stock shall be issued to the Plan Administrator, who shall hold such share for the benefit of the holders of such former Equity Interests consistent

with their former economic entitlements; provided, however, that no such share of New Common Stock shall be issued if IT Group is dissolved effective as of the Effective Date. Other than such beneficial interest (which shall be non-transferable), each holder of an Equity Interest in IT Group shall neither receive nor retain any property or interest in property under the Plan on account of such Equity Interest. All Equity Interests in all of the other Debtors shall be canceled, annulled and extinguished when such Debtors are dissolved or merged out of existence in accordance with Section 7.3 of the Plan, and no distribution of any property shall be made with respect to such Equity Interests. On or promptly after the Effective Date, Reorganized IT Group shall file with the SEC a Form 15 for the purpose of terminating the registration of any of its publicly traded securities. In the event Reorganized IT Group is dissolved after the Effective Date in accordance with Section 7.3 of the Plan, the New Common Stock outstanding after the Effective Date shall be canceled on the date Reorganized IT Group is so dissolved.

**4.2    Litigation Trust Alternative**

At the election of the Agent (on behalf of the Prepetition Lenders) and the Committee, which election shall be made on or prior to the Effective Date, the Debtors shall transfer the Litigation Trust Assets (which may include, without limitation, the Avoidance Actions, the Avoidance Action Recoveries, the Estate Causes of Action, the Estate Cause of Action Recoveries, and any assets the sale, disposition or collection of which, after the Effective Date, would give rise to Available Proceeds) to the Litigation Trust for the benefit of the holders of Allowed Lender Claims, Allowed General Unsecured Claims, and Allowed Litigation Unsecured Claims in accordance with Section 7.10(l) (the "Litigation Trust Alternative"). In such event, in lieu of having a continuing right under the Plan against Reorganized IT Group to receive a portion of any proceeds from the assets transferred to the Litigation Trust, the holders of Allowed Lender Claims, Allowed General Unsecured Claims, and Allowed Litigation Unsecured Claims shall receive beneficial interests in the Litigation Trust entitling them to share in the proceeds of such assets on the same relative basis as provided in Sections 4.1(c), 4.1(d) and 4.1(e) of the Plan.

**ARTICLE V.**
**PROVISIONS FOR TREATMENT**
**OF UNCLASSIFIED CLAIMS UNDER THE PLAN**

**5.1    Treatment of Administrative Claims**

All Administrative Claims shall be treated as follows:

(a)    *Time for Filing Administrative Claims.* Except as otherwise provided in the Administrative Bar Date Order, the holder of an Administrative Claim, including a Claim under section 503(b) of the Bankruptcy Code, but excluding (i) the Lender Claims, (ii) a Fee Claim, (iii) a liability incurred and payable in the ordinary course of business by a Debtor (and not past due), or (iv) an Administrative Claim that has been Allowed on or before the Effective Date, must file with the Bankruptcy Court and serve on the Debtors and the Office of the United States Trustee, notice of such Administrative Claim within thirty (30) days after service of notice of entry of the Confirmation Order. Such notice must include at a minimum (A) the name of the holder of the Claim, (B) the amount of the Claim, and (C) the basis of the Claim. **Failure to file and serve such notice timely and properly shall result in the Administrative Claim being forever barred and discharged.**

(b)    *Time for Filing Fee Claims.* Each Professional Person shall be required to file with the Bankruptcy Court, and serve on all parties required to receive notice, a final Fee Application within sixty (60) days after the Effective Date. As soon as practicable, but in no event later than thirty (30) days after the filing of a final Fee Application, objections to final Fee Applications shall be filed with the Bankruptcy Court and served upon the Professional Person who filed the final Fee Application. **The failure to file timely and serve such final Fee Application shall result in the Fee Claim being forever barred and discharged.**

(c)    *Allowance of Administrative Claims.* An Administrative Claim with respect to which notice has been properly filed and served pursuant to Section 5.1(a) of the Plan shall become an Allowed Administrative Claim if no objection is filed within ninety (90) days after the deadline for filing and serving the notice of such Administrative Claim specified in Section 5.1(a) of the Plan, or such later date as may be approved by the Bankruptcy Court on motion of a party in interest, without notice or a hearing. If an objection is filed within such ninety-day period (or any extension thereof), the Administrative Claim shall become an Allowed

Administrative Claim only to the extent allowed by Final Order. An Administrative Claim with respect to which a Fee Application has been properly filed pursuant to Section 5.1(b) of the Plan shall become an Allowed Administrative Claim only to the extent allowed by Final Order.

(d)    Payment of Allowed Administrative Claims.  On the applicable Distribution Date, each holder of an Allowed Administrative Claim shall receive (i) the amount of such holder's Allowed Claim in one Cash payment, or (ii) such other treatment as may be agreed upon in writing by Reorganized IT Group or, if applicable, the Litigation Trust Trustee, and such holder; provided, that an Administrative Claim representing a liability incurred in the ordinary course of business of the Debtors may be paid at Reorganized IT Group's or, if applicable, the Litigation Trust Trustee's, election in the ordinary course of business.

## 5.2    Treatment of Tax Claims

At the election of the Debtors or, on or after the Effective Date, Reorganized IT Group or, if applicable, the Litigation Trust Trustee, each holder of an Allowed Tax Claim shall receive in full satisfaction of such holder's Allowed Tax Claim, (a) the amount of such holder's Allowed Tax Claim, with Post-Confirmation Interest thereon, in equal annual Cash payments on each anniversary of the Effective Date, until the sixth (6th) anniversary of the date of assessment of such Tax Claim (provided that the Disbursing Agent may prepay the balance of any such Allowed Tax Claim at any time without penalty); (b) a lesser amount in one Cash payment as may be agreed upon in writing by such holder and Reorganized IT Group or, if applicable, the Litigation Trust Trustee; or (c) such other treatment as may be agreed upon in writing by such holder and Reorganized IT Group or, if applicable, the Litigation Trust Trustee.  The Confirmation Order shall enjoin any holder of a Tax Claim from commencing or continuing any action or proceeding against any responsible person or officer or director of the Debtors that otherwise would be liable to such holder for payment of a Tax Claim so long as no default has occurred with respect to such Tax Claim under this Section 5.2 of the Plan.

The Tax Collector of Palm Beach County has asserted an alleged Tax Claim of approximately $7,900.02.  To the extent such Claim becomes an Allowed Tax Claim under the Plan, such Allowed Tax Claim shall be paid in full in Cash on the later of the Effective Date or entry of a Final Order allowing such Tax Claim.  The State of Washington, Department of Revenue has also asserted an alleged Tax Claim.  To the extent such Claim becomes an Allowed Tax Claim under the Plan, such Allowed Tax Claim shall be paid in full in Cash on the later of the Effective Date or entry of a Final Order allowing such Tax Claim.

## ARTICLE VI.
## ACCEPTANCE OR REJECTION OF THE PLAN;
## EFFECT OF REJECTION BY ONE OR MORE
## CLASSES OF CLAIMS OR EQUITY INTERESTS

## 6.1    Classes Entitled to Vote

Class 2 (Non-Lender Secured Claims), Class 3 (Lender Claims), Class 4A (General Unsecured Claims), and Class 4B (Litigation Unsecured Claims) are impaired under the Plan, and the holders of such Claims shall be entitled to vote to accept or reject the Plan.  Class 1 (Priority Claims) is unimpaired under the Plan, and the holders of such Claims are conclusively presumed to have accepted the Plan.  Class 4C (Securities Litigation Claims), Class 4D (Subordinated Claims) and Class 5 (Equity Interests) are impaired under the Plan, and the holders of such Claims and Equity Interests shall not receive a Distribution or retain any property under the Plan and are deemed not to have accepted the Plan.

## 6.2    Class Acceptance Requirement

Absent an order of the Court, only holders of Claims that are of record and as to which an objection is not pending as set forth in the Voting Procedures Order shall be entitled to accept or reject the Plan.  A class of Claims shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims in such class that have voted on the Plan.

6.3     Confirmation Without Acceptance by All Impaired Classes

The Plan shall constitute a request that the Bankruptcy Court confirm the Plan over the rejection of any Class in accordance with section 1129(b) of the Bankruptcy Code.

ARTICLE VII.
MEANS FOR IMPLEMENTATION OF THE PLAN

7.1     Substantive Consolidation of Debtors

Except as otherwise provided in the Plan, on and subject to the occurrence of the Effective Date, all Assets and liabilities of the Debtors shall be substantively consolidated.  On the Effective Date (i) all intercompany claims by and among the Debtors shall be eliminated; (ii) all Assets and liabilities of the Debtors other than IT Group shall be merged or treated as though they were merged into and with the Assets and liabilities of IT Group, (iii) all guarantees of the Debtors of the obligations of any other Debtor and any joint or several liability of any of the Debtors shall be deemed to be one obligation of the consolidated Debtors; (iv) all Equity Interests owned by any of the Debtors in any other Debtor shall be treated as though they were eliminated; and (v) each and every Claim filed or to be filed in the Chapter 11 Cases against any of the Debtors shall be deemed filed against the consolidated Debtors, and shall be deemed one Claim against and obligation of the consolidated Debtors.

7.2     IT Group Subsidiary Guarantees

All claims based upon guarantees of collection, payment or performance of any obligation of the Debtors made by any Subsidiary which is not a Debtor and all claims against any such Subsidiary for which any of the Debtors are jointly and severally liable, in each case which arise prior to the Effective Date, shall be discharged, released, extinguished and of no further force and effect

7.3     Merger and Dissolution of IT Group Corporate Entities

On or as of the Effective Date or as soon as reasonably practicable thereafter, any or all of the Debtors (other than IT Group) and Subsidiaries of the Debtors may, at the sole option of the Plan Proponents (with the consent of the Agent), be (a) merged into one or more of the Debtors or (b) dissolved; provided, however, that if the Litigation Trust succeeds to all of the Debtors' Assets in lieu of Reorganized IT Group, all of the Debtors (other than IT Group) shall merge into IT Group on or as soon as practicable after the Effective Date and IT Group shall be immediately dissolved  Upon the occurrence of any such merger, all assets of the merged entities shall be transferred to and become the assets of the surviving entity, and all liabilities of the merged entities, except to the extent discharged, released or extinguished pursuant to the Plan and the Confirmation Order, shall be assumed by and shall become the liabilities of the surviving entity, with such liabilities of the surviving entity to be treated as provided in the Plan.  All mergers and dissolutions shall be effective as of the Effective Date[1] pursuant to the Confirmation Order without any further action by the stockholders or directors of any of the Debtors, unless applicable law requires otherwise.  Following the Effective Date and upon the occurrence of such mergers and dissolutions, Reorganized IT Group or the Litigation Trust Trustee (if applicable) shall move for a final decree to close the chapter 11 case relating to each merged and/or dissolved entity.  Reorganized IT Group shall be dissolved when it has made the Distributions, if any, required to be made by it under the Plan.

7.4     The Plan Settlement

Pursuant to section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019 and subject to the occurrence of the Effective Date, entry of the Confirmation Order shall constitute approval of a compromise and settlement of all Causes of Action as of the Effective Date by and between the Agent and the Prepetition Lenders, on

---

[1]     Because the Debtor entity Wehran New York, Inc. ("Wehran"), may be subject to purchase by an interested party after the Effective Date, any merger or dissolution of Wehran shall occur, if at all, sixty (60) days after the Effective Date provided that consummation of any sale of Wehran is not pending as of such date.

the one hand, and the Debtors, the Subsidiaries that are not Debtors, and the Committee (and all of its members), on the other hand, pursuant to which, and upon the occurrence of the Effective Date, (a) the Lender Claims shall be deemed Allowed in full as provided in Section 4.1(c) of the Plan, (b) the Committee Lawsuit shall be dismissed with prejudice, (c) any and all claims and Causes of Action of the Debtors (and their Estates), the Subsidiaries that are not Debtors, and the Committee (and all of its members) against the Agent and/or the Prepetition Lenders as of the Effective Date shall be forever waived, discharged, released and enjoined, (d) the holders of Allowed Lender Claims shall receive the treatment accorded such Claims pursuant to the Plan in complete satisfaction thereof, including, without limitation, any subordination or other provisions in respect of the Old Notes, the holders thereof or the Indenture Trustee, and (e) any right to a Distribution on account of any deficiency Claim, Unsecured Claim or Administrative Claim (other than any claims under the Plan or for the reimbursement of all reasonable fees and expenses of the Agent incurred through the date on which the Committee is dissolved in accordance with Section 13.4 of the Plan, which claims shall remain in effect and shall be treated and paid as Administrative Claims in accordance with the Plan without the need to file any Administrative Claim pursuant to the Administrative Bar Date or otherwise comply with Section 5.1 of the Plan) by the holders of the Lender Claims shall be forever waived, discharged, released and enjoined, which Claims shall be deemed satisfied in full by the treatment accorded the Lender Claims in Section 4.1(c) of the Plan. Subject to the occurrence of the Effective Date, entry of the Confirmation Order shall constitute approval of the Plan Settlement and authorize the parties to take all actions that are necessary or appropriate to implement and give effect to the Plan Settlement.

7.5   **Shaw Stock**

Upon the occurrence of the Effective Date in accordance with the Plan Settlement, title to 10% of the Shaw Stock shall vest in Reorganized IT Group or, if applicable, the Litigation Trust, free and clear of all Claims, Equity Interests, liens, security interests, encumbrances, and other interests, except as expressly provided in the Plan, which stock may be sold or otherwise disposed of (as directed by the Plan Administrator with the consent of the Committee Designees) for the benefit of holders of Allowed General Unsecured Claims to effectuate Distributions to such holders in accordance with Section 4.1(d) of the Plan. Upon the occurrence of the Effective Date in accordance with the Plan Settlement, 90% of the Shaw Stock shall be distributed to the Agent on behalf of the holders of Allowed Lender Claims in accordance with Section 4.1(c) of the Plan, free and clear of all Claims, Equity Interests, liens, security interests, encumbrances, and other interests, except as otherwise expressly provided in the Plan.

7.6   **Formation of Reorganized IT Group**

On or before the Effective Date and conditioned on the occurrence of the Effective Date, the following actions shall be taken with respect to Reorganized IT Group (unless the Litigation Trust Alternative is implemented and the Litigation Trust succeeds to all of the Debtors' Assets in lieu of Reorganized IT Group):

(a)   the New Charter and the New By-Laws shall be duly adopted; and

(b)   the issuance of the New Common Stock shall be authorized.

Except as otherwise provided in the Plan, the post-Effective Date management of Reorganized IT Group shall be the general responsibility of the Plan Administrator, subject to the direction and supervision by the Oversight Committee as provided in the Plan.

7.7   **Oversight Committee**

On the Effective Date, the Oversight Committee shall be formed, which committee shall consist of four (4) members, two selected by the Committee and two selected by the Agent on behalf of the Prepetition Lenders. The Oversight Committee shall oversee the administration and implementation of the Plan and the liquidation and distribution of the Debtors' Assets in accordance with the Plan. Oversight Committee decisions shall be made with the approval of at least three (3) members. The Oversight Committee shall have the following rights, obligations and duties:

(a)       Approve the Plan Administrator's selection of, as well as the terms governing the engagement of, professionals to be engaged by the Plan Administrator on behalf of Reorganized IT Group or, if applicable, the Litigation Trust, who may have been previously engaged by the Debtors, the Committee and/or the Agent, and establish retainer terms, conditions and budgets;

(b)       Decide whether, when, and in what amounts Distributions should be made, and direct Reorganized IT Group or, if applicable, the Litigation Trust (subject to the provisions of the Litigation Trust Agreement), to make a Distribution;

(c)       Oversee the Plan Administrator's administration and implementation of the Plan and the liquidation of the Assets in accordance with the Plan;

(d)       Oversee, review and guide the Plan Administrator on performance of its duties and its activities proposed and underway, as often as is necessary and appropriate to implement the Plan;

(e)       Appear in Bankruptcy Court;

(f)       Seek an order terminating an Oversight Committee member and approving a replacement selected in a manner consistent with the original selection of such Oversight Committee Member in the event the other members of the Oversight Committee determine there is cause to do so;

(g)       Articulate the Oversight Committee's position in the event the Plan Administrator, the Disbursing Agent or the Chief Litigation Officer brings a dispute with the Oversight Committee to the Bankruptcy Court for resolution, or the Oversight Committee concludes it should bring a dispute with the Plan Administrator, Disbursing Agent or the Chief Litigation Officer to the Bankruptcy Court for resolution; and

(h)       Direct the pursuit and settlement of Estate Causes of Action.

Each Oversight Committee member shall be paid in accordance with the Oversight Committee Compensation, as disclosed at or prior to the Confirmation Hearing and agreed to by the Committee and the Agent. Any disputes between and among the Oversight Committee, its members, Reorganized IT Group or, if applicable, the Litigation Trust, the Plan Administrator, and/or the Chief Litigation Officer shall be resolved by the Bankruptcy Court, and the Plan Administrator shall bring any such dispute to the Bankruptcy Court for resolution if so requested in writing by any of such parties.

Subject to any applicable law, the members of the Oversight Committee shall not be liable for any act done or omitted by any member in such capacity, while acting in good faith and in the exercise of business judgment. Members of the Oversight Committee shall not be liable in any event except for gross negligence or willful misconduct in the performance of their duties hereunder.

Except as otherwise set forth in this Plan and to the extent permitted by applicable law, the members of the Oversight Committee, in the performance of their duties hereunder (the "Indemnified OC Parties"), shall be defended, held harmless and indemnified from time to time by Reorganized IT Group or, to the extent such duties relate to the Litigation Trust, the Litigation Trust (and not any other Person) against any and all losses, claims, costs, expenses and liabilities to which such Indemnified OC Parties may be subject by reason of such Indemnified OC Party's execution of duties pursuant to the discretion, power and authority conferred on such Indemnified OC Party by the Plan or the Confirmation Order, provided, however, that the indemnification obligations arising pursuant to this Section shall not indemnify the Indemnified OC Parties for any actions taken by such Indemnified OC Parties which constitute fraud, gross negligence or intentional breach of the Plan, or the Confirmation Order. Satisfaction of any obligation of Reorganized IT Group or, if applicable, the Litigation Trust, arising pursuant to the terms of this Section shall be payable only from the assets of Reorganized IT Group or, if applicable, the Litigation Trust, including, if available, any insurance maintained by Reorganized IT Group or, if applicable, the Litigation Trust. The indemnification provisions contained herein shall remain available to and be binding upon any future members of the Oversight Committee or the estate of any decedent and shall survive dissolution of Reorganized IT Group.

7.8    **Plan Administrator**

Upon the occurrence of the Effective Date, the management, control, and operation of Reorganized IT Group shall be the general responsibility of the Plan Administrator, subject to the supervision and direction of the Oversight Committee as provided herein.

Notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, from and after the Effective Date all Avoidance Actions may be compromised and settled by the Plan Administrator according to the following procedures:

(a)    Subject to subsection (b) of Section 7.8 of the Plan, the following settlements or compromises of Estate Causes of Action do not require the review or approval of the Bankruptcy Court:

(i)    The settlement or compromise of an Estate Cause of Action where the amount of recovery sought in any demand or adversary proceeding is $250,000 or less; and

(ii)    The settlement or compromise of an Estate Cause of Action where the difference between the amount of the recovery sought in any demand or adversary proceeding and the amount of the proposed settlement is $250,000 or less; and

(b)    The following settlements or compromises shall be submitted to the Bankruptcy Court for approval:

(i)    Any settlement or compromise not described in subsection 7.8(a) of the Plan; and

(ii)    Any settlement or compromise of an Estate Cause of Action that involves an "insider," as defined in section 101(31) of the Bankruptcy Code.

With the consent of the Oversight Committee, the Plan Administrator may prosecute or decline to prosecute any Estate Causes of Action, in the exercise of the Plan Administrator's business judgment, subject to the provisions of the Plan. With the consent of the Oversight Committee, the Plan Administrator may settle, release, sell, assign, or otherwise transfer or compromise any Estate Causes of Action, in the exercise of the Plan Administrator's business judgment, subject to the provisions of the Plan, including subsection (a) of this Section 7.8.

With the consent of the Oversight Committee, the Plan Administrator may retain the services of attorneys, accountants, consultants, and other agents, in the business judgment of the Plan Administrator, to assist and advise the Plan Administrator in the performance of its duties hereunder.

The Plan Administrator may bring any dispute concerning the performance of its duties for resolution by the Bankruptcy Court and its reasonable fees and expenses (including attorneys' fees) in connection therewith shall be paid by Reorganized IT Group or, to the extent such dispute involves its duties as co-trustee of the Litigation Trust, the Litigation Trust. The compensation for the Plan Administrator shall be agreed to by the Committee and the Agent and disclosed at or prior to the Confirmation Hearing, and is subject to approval by the Bankruptcy Court.

Subject to any applicable law, the Plan Administrator shall not be liable for any act done or omitted by the Plan Administrator in the performance of its duties hereunder, while acting in good faith and in the exercise of business judgment. The Plan Administrator shall not be liable in any event except for gross negligence or willful misconduct in the performance of its duties hereunder.

Except as otherwise set forth in this Plan and to the extent permitted by applicable law, the Plan Administrator and any attorneys, accountants, consultants, and other agents retained by the Plan Administrator, in the performance of its duties hereunder (the "Indemnified PA Parties"), shall be defended, held harmless and indemnified from time to time by Reorganized IT Group or, to the extent performed in furtherance of the Plan

Administrator's duties as co-trustee of the Litigation Trust, the Litigation Trust (and not any other Person) against any and all losses, claims, costs, expenses and liabilities to which such Indemnified PA Parties may be subject by reason of such Indemnified PA Party's execution of duties pursuant to the discretion, power and authority conferred on such Indemnified PA Party by the Plan or the Confirmation Order; provided, however, that the indemnification obligations arising pursuant to this Section shall not indemnify the Indemnified PA Parties for any actions taken by such Indemnified PA Parties which constitute fraud, gross negligence or intentional breach of the Plan, or the Confirmation Order. Satisfaction of any obligation of Reorganized IT Group or, if applicable, the Litigation Trust, arising pursuant to the terms of this Section shall be payable only from the assets of Reorganized IT Group or, if applicable, the Litigation Trust, including, if available, any insurance maintained by Reorganized IT Group or, if applicable, the Litigation Trust. The indemnification provisions contained herein shall remain available to and be binding upon any future Plan Administrator or the estate of any decedent and shall survive dissolution of Reorganized IT Group.

## 7.9     Chief Litigation Officer

As of the Effective Date, the Chief Litigation Officer shall be appointed to prosecute the Avoidance Actions. With the consent of the Committee Designees, the Chief Litigation Officer may prosecute or decline to prosecute the Avoidance Actions, in the exercise of the Chief Litigation Officer's business judgment, subject to the provisions of the Plan. With the consent of the Committee Designees, the Chief Litigation Officer may settle, release, sell, assign, or otherwise transfer or compromise the Avoidance Actions, in the exercise of the Chief Litigation Officer's business judgment, subject to the provisions of the Plan, including subsection (a) of this Section 7.9

Notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, from and after the Effective Date all Avoidance Actions may be compromised and settled by the Chief Litigation Officer according to the following procedures:

(a)     Subject to subsection (b) of Section 7.9 of the Plan, the following settlements or compromises of Avoidance Actions do not require the review or approval of the Bankruptcy Court.

(i)     The settlement or compromise of an Avoidance Action where the amount of recovery sought in any demand or adversary proceeding is $250,000 or less; and

(ii)     The settlement or compromise of an Avoidance Action where the difference between the amount of the recovery sought in any demand or adversary proceeding and the amount of the proposed settlement is $250,000 or less; and

(b)     The following settlements or compromises shall be submitted to the Bankruptcy Court for approval:

(i)     Any settlement or compromise not described in subsection 7.9(a) of the Plan; and

(ii)     Any settlement or compromise of an Avoidance Action that involves an "insider," as defined in section 101(31) of the Bankruptcy Code.

With the consent of the Committee Designees, and in consultation with the Agent, the Chief Litigation Officer may retain the services of attorneys, accountants, consultants, and other agents, in the business judgment of the Chief Litigation Officer, to assist and advise the Chief Litigation Officer in the performance of its duties hereunder.

The Chief Litigation Officer may bring any dispute concerning the performance of its duties for resolution by the Bankruptcy Court and its reasonable fees and expenses (including attorneys' fees) in connection therewith shall be paid by Reorganized IT Group or, to the extent such dispute involves its duties as co-trustee of the Litigation Trust, the Litigation Trust. The compensation for the Chief Litigation Officer shall be agreed to by the

Committee (in consultation with the Agent) and disclosed at or prior to the Confirmation Hearing, and is subject to approval by the Bankruptcy Court.

Subject to any applicable law, the Chief Litigation Officer shall not be liable for any act done or omitted by the Chief Litigation Officer in the performance of its duties hereunder, while acting in good faith and in the exercise of business judgment. The Chief Litigation Officer shall not be liable in any event except for gross negligence or willful misconduct in the performance of its duties hereunder.

Except as otherwise set forth in this Plan and to the extent permitted by applicable law, the Chief Litigation Officer and any attorneys, accountants, consultants, and other agents retained by the Chief Litigation Officer, in the performance of its duties hereunder (the "Indemnified CLO Parties"), shall be defended, held harmless and indemnified from time to time by Reorganized IT Group or, to the extent performed in furtherance of the Chief Litigation Officer's duties as co-trustee of the Litigation Trust, the Litigation Trust (and not any other Person) against any and all losses, claims, costs, expenses and liabilities to which such Indemnified CLO Parties may be subject by reason of such Indemnified CLO Party's execution of duties pursuant to the discretion, power and authority conferred on such Indemnified CLO Party by the Plan or the Confirmation Order; provided, however, that the indemnification obligations arising pursuant to this Section shall not indemnify the Indemnified CLO Parties for any actions taken by such Indemnified CLO Parties which constitute fraud, gross negligence or intentional breach of the Plan, or the Confirmation Order. Satisfaction of any obligation of Reorganized IT Group or, if applicable, the Litigation Trust, arising pursuant to the terms of this Section shall be payable only from the assets of Reorganized IT Group or, if applicable, the Litigation Trust, including, if available, any insurance maintained by Reorganized IT Group or, if applicable, the Litigation Trust. The indemnification provisions contained herein shall remain available to and be binding upon any future Chief Litigation Officer or the estate of any decedent and shall survive dissolution of Reorganized IT Group.

7.10    **Trusts**

(I)    **The Litigation Trust**

(a)    Execution of Litigation Trust Agreement. In the event the Agent (on behalf of the Prepetition Lenders) and the Committee elect to pursue the Litigation Trust Alternative, the Litigation Trust Agreement, in a form reasonably acceptable to the Agent (on behalf of the Prepetition Lenders) and the Committee, shall be executed on or before the Effective Date, and all other necessary steps shall be taken to establish the Litigation Trust and the beneficial interests therein, which shall be for the benefit of the holders of Allowed Lender Claims, Allowed General Unsecured Claims and Allowed Litigation Unsecured Claims. This Section 7.10(I) sets forth certain of the rights, duties, and obligations of the Litigation Trust Trustee, in the event such an election is made. In the event that no such election is made, the remainder of this Section 7.10(I) shall be of no further force or effect. In the event of any conflict between the terms of this Section and the terms of the Litigation Trust Agreement, the terms of the Litigation Trust Agreement shall govern.

(b)    Purpose of Litigation Trust. The Litigation Trust shall be established for the sole purpose of liquidating and distributing its assets, in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business.

(c)    Litigation Trust Assets. The Litigation Trust shall consist of the Litigation Trust Assets. Any Cash or other property received from third parties from the prosecution, settlement, or compromise of the Avoidance Actions and/or the Estate Causes of Action shall constitute Litigation Trust Assets for purposes of distributions under the Litigation Trust. On the Effective Date, the Debtors shall transfer all of the Litigation Trust Assets to the Litigation Trust free and clear of all liens, claims, and encumbrances, except to the extent otherwise provided herein or in the Litigation Trust Agreement.

(d)    Governance of Litigation Trust. The Litigation Trust shall be governed and administered by the Litigation Trust Trustee, subject to the supervision of the Oversight Committee (or, in the case of the prosecution, settlement or other disposition of Avoidance Actions, the supervision of the Committee Designees), in each case, as provided under the Plan and the Litigation Trust Agreement. Notwithstanding anything to the contrary herein, the Oversight Committee (and the Committee Designees, as applicable) shall act in furtherance of, and

consistent with, the purpose of the Litigation Trust and shall act in the best interests of the beneficiaries of the Litigation Trust.

       (e)    <u>Role of the Litigation Trust Trustee</u>.

          (i)    In furtherance of and consistent with the purpose of the Litigation Trust and the Plan, the Litigation Trust Trustee shall (A) have the power and authority to hold, manage, sell, and distribute the Litigation Trust Assets to the holders of Allowed Lender Claims, Allowed General Unsecured Claims and Allowed Litigation Unsecured Claims, (B) hold the Litigation Trust Assets for the benefit of the holders of Allowed Lender Claims, Allowed General Unsecured Claims and Allowed Litigation Unsecured Claims, (C) have the power and authority to hold, manage, sell, and distribute Cash or non-Cash Litigation Trust Assets obtained through the exercise of its power and authority, (D) have the power and authority to prosecute and resolve, in the names of the Debtors and/or the name of the Litigation Trust Trustee, the Avoidance Actions and the Estate Causes of Action, (E) have the power and authority to perform such other functions as are provided in the Plan, and (F) have the power and authority to administer the closure of the Chapter 11 Cases. The Litigation Trust Trustee shall be responsible for all decisions and duties with respect to the Litigation Trust and the Litigation Trust Assets. In all circumstances, the Litigation Trust Trustee shall act in the best interests of all beneficiaries of the Litigation Trust and in furtherance of the purpose of the Litigation Trust.

          (ii)    If and to the extent the Litigation Trust Agreement so provides, the Litigation Trust Trustee shall (A) be authorized to exercise all powers regarding the Debtors' tax matters, including filing tax returns, to the same extent as if the Litigation Trust Trustee were the debtor-in-possession, (B) complete and file the Debtors' federal, state, and local tax returns, (C) request an expedited determination of any unpaid tax liability of the Debtors under section 505(b) of the Bankruptcy Code for all tax periods of the Debtors ending after the Commencement Date through the liquidation of the Debtors as determined under applicable tax laws, to the extent not previously requested, and (D) represent the interest and account of the Debtors before any taxing authority in all matters, including, but not limited to, any action, suit, proceeding, or audit.

       (f)    <u>Cash</u>. The Litigation Trust Trustee may invest Cash (including any earnings thereon or proceeds therefrom) as permitted by section 345 of the Bankruptcy Code; <u>provided, however,</u> that such investments are investments permitted to be made by a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable IRS guidelines, rulings, or other controlling authorities.

       (g)    <u>Compensation of the Litigation Trust Trustee</u>. The Litigation Trust Trustee shall be entitled to reasonable compensation in an amount consistent with that of similar functionaries in similar types of bankruptcy proceedings.

       (h)    <u>Distribution of Litigation Trust Assets</u>. The Litigation Trust Trustee shall distribute at least annually and in accordance with the Litigation Trust Agreement, beginning on the Effective Date or as soon thereafter as is practicable, the Litigation Trust Assets on hand (including any Cash received from the Debtors on the Effective Date, and treating as Cash for purposes of this Section 7.10(I)(h) any permitted investments under Section 7.10(I)(f) of the Plan), except such amounts (i) as are reasonably necessary to meet contingent liabilities and to maintain the value of the Litigation Trust Assets during liquidation, (ii) to pay reasonable expenses (including, but not limited to, any taxes imposed on the Litigation Trust or in respect of the Litigation Trust Assets), and (iii) to satisfy other liabilities incurred by the Litigation Trust in accordance with this Plan or the Litigation Trust Agreement.

       (i)    <u>Retention of Professionals by the Litigation Trust Trustee</u>. The Litigation Trust Trustee may retain and reasonably compensate counsel and other professionals to assist in its duties as Litigation Trust Trustee on such terms as the Litigation Trust Trustee deems appropriate without Bankruptcy Court approval. The Litigation Trust Trustee may retain any professional who represented parties in interest in the Chapter 11 Cases.

(j)     Federal Income Tax Treatment of Litigation Trust

(i)     Litigation Trust Assets Treated as Owned by Certain Creditors.  For all federal income tax purposes, all parties (including, without limitation, the Debtors, the Litigation Trust Trustee, the holders of Lender Claims, the holders of General Unsecured Claims and the holders of Litigation Unsecured Claims) shall treat the transfer of the Litigation Trust Assets to the Litigation Trust for the benefit of the holders of Allowed Lender Claims, Allowed General Unsecured Claims and Allowed Litigation Unsecured Claims, whether Allowed on or after the Effective Date, as (A) a transfer of the Litigation Trust Assets directly to the holders of Allowed Lender Claims, Allowed General Unsecured Claims and Allowed Litigation Unsecured Claims in satisfaction of such Claims (and in the case of Contested Unsecured Claims, the Contested Unsecured Claims Reserve) followed by (B) the transfer by such holders to the Litigation Trust of the Litigation Trust Assets in exchange for beneficial interests in the Litigation Trust.  Accordingly, the holders of such Claims shall be treated for federal income tax purposes as the grantors and owners of their respective shares of the Litigation Trust Assets.

(ii)    Tax Reporting.

(A)     The Litigation Trust Trustee shall file returns for the Litigation Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a) and in accordance with this Section 7.10(I).  The Litigation Trust Trustee shall also annually send to each record holder of a beneficial interest a separate statement setting forth the holder's share of items of income, gain, loss, deduction, or credit and shall instruct all such holders to report such items on their federal income tax returns or to forward the appropriate information to the beneficial holders with instructions to report such items on their federal income tax returns.  The Litigation Trust Trustee shall also file (or cause to be filed) any other statements, returns, or disclosures relating to the Litigation Trust that are required by any governmental unit.

(B)     Allocations of Litigation Trust taxable income shall be determined by reference to the manner in which an amount of cash equal to such taxable income would be distributed (without regard to any restrictions on distributions described herein) if, immediately prior to such deemed distribution, the Litigation Trust had distributed all of its other assets (valued at their tax book value) to the holders of the Litigation Trust interests (including the Contested Unsecured Claims Reserve), taking into account all prior and concurrent distributions from the Litigation Trust.  Similarly, taxable loss of the Litigation Trust shall be allocated by reference to the manner in which an economic loss would be borne immediately after a liquidating distribution of the remaining Litigation Trust Assets.  The tax book value of the Litigation Trust Assets for this purpose shall equal their fair market value on the Effective Date, adjusted in accordance with tax accounting principles prescribed by the Internal Revenue Code, the regulations and another applicable administrative and judicial authorities and pronouncements.

(C)     As soon as possible after the Effective Date, the Litigation Trust Trustee shall make a good faith valuation of the Litigation Trust Assets.  Such valuation shall be made available from time to time, to the extent relevant, and used consistently by all parties (including, without limitation, the Debtors, the Litigation Trust Trustee, and the holders of Allowed Lender Claims, Allowed General Unsecured Claims and Allowed Litigation Unsecured Claims) for all federal income tax purposes.

(D)     The Litigation Trust Trustee may request an expedited determination of taxes of the Litigation Trust under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Litigation Trust for all taxable periods through the dissolution of the Liquidating Trust.

(k)     Noncertificated Litigation Trust Interests.  The beneficial interests in the Litigation Trust shall not be certificated, except as otherwise provided in the Litigation Trust Agreement.

(l)     Dissolution.  The Litigation Trust Trustee and the Litigation Trust shall be discharged or dissolved, as the case may be, at such time as (i) all Litigation Trust Assets have been liquidated, and (ii) all distributions required to be made by the Litigation Trust Trustee under the Plan have been made, but in no event shall the Litigation Trust be dissolved later than five (5) years from the Effective Date unless the Bankruptcy Court, upon motion within the six (6) month period prior to the fifth (5th) anniversary (and, in the case of any extension, within six (6) months prior to the end of such extension), determines that a fixed period extension (not to exceed

23

three (3) years, together with any prior extensions, without a favorable letter ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the Litigation Trust as a liquidating trust for federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the Litigation Trust Assets or the dissolution of the Debtors.

      (m)    <u>Securities Exempt</u>.  The issuance of the beneficial interests in the Litigation Trust satisfies the requirements of section 1145 of the Bankruptcy Code and, therefore, such issuance is exempt from registration under the Securities Act of 1933, as amended, and any state or local law requiring registration.

    **(II)**    **IT Environmental Liquidating Trust**

      Pursuant to section 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019, entry of the Confirmation Order shall constitute approval of that certain IT Environmental Liquidating Trust Agreement reached with the DTSC in connection with the Consent Order and the Landfills, pursuant to which, on or after the occurrence of the Effective Date, the Debtors shall (a) establish the IT Environmental Liquidating Trust for the purpose of operating and providing for the closure and post closure management of the Landfills and liquidating, and distributing the proceeds from the IT Environmental Liquidating Trust Assets; (b) transfer the IT Environmental Liquidating Trust Funding to the IT Environmental Liquidating Trust, and (c) transfer the IT Environmental Liquidating Trust Assets to settle the IT Environmental Liquidating Trust which IT Environmental Liquidating Trust Assets shall consist of the following Assets:

      (a)    The Post Closure Insurance Policy Assets:  (i) the Post Closure Insurance Policies; (ii) the proceeds from claims paid by the Post Closure Insurance Policies, and (iii) any interest earned on the proceeds from claims paid by the Post Closure Insurance Policies, all subject to DTSC's rights under the policies;

      (b)    The Properties:  (i) the real property containing the Vine Hill and Panoche sites which are each owned by the LLCs, and (ii) the real property containing the Benson Ridge and Montezuma Hills Landfills which are owned by IT Corporation;

      (c)    The Landfill Assets:  (i) all of Debtors' membership interests in the LLCs, (ii) all real property, personal property, equipment, bank accounts, and employees associated with operations of the Landfills; (iii) all other funds obtained by the Debtors from other parties in settlement or resolution of contribution or cost recovery claims of the Debtors with respect to the Landfills; (iv) all insurance polices held by the LLCs or the IT Environmental Liquidating Trust, all insurance policies held by the Debtors that are associated with the operations of the Landfills, and all proceeds and interest therefrom other than the Post Closure Insurance Policies; (v) all licenses, permits (subject to the Permit Transfer provision set forth in this Section 7.10(II)) and contracts relating to the Landfills; and (vi) revenues from the operations of the Landfills or development thereon; and

      (d)    The Landfill Liabilities:  (i) all accounts payable arising prior to and after the Effective Date associated with the operations of the Landfills; and (ii) all cure obligations associated with the executory contracts and unexpired leases that are assumed by the Debtors and assigned to the IT Environmental Liquidating Trust in accordance with Section 11.1 of the Plan.

      Nothing in the Plan or the IT Environmental Liquidating Trust Agreement creates any interest in, or claim against, the Post Closure Insurance Policies beyond the Debtors' interest in the policies as set forth in the Post Closure Insurance Policies themselves.

      On or before the Effective Date and subject to the occurrence of the Effective Date, the LLCs and, where appropriate, the Debtors shall (i) execute the IT Environmental Liquidating Trust Agreement, (ii) take all other steps necessary or appropriate to establish the IT Environmental Liquidating Trust, and (iii) to the extent necessary, transfer, deliver and assign to the IT Environmental Liquidating Trust all IT Environmental Liquidating Trust Assets.  At the termination of the IT Environmental Liquidating Trust, the IT Environmental Liquidating Trustee is authorized and directed to designate one or more charitable organizations which are qualified under Section 501(c)(3) of the Internal Revenue Code, and unrelated to the IT Environmental Liquidating Trustee, as the remainder beneficiaries of the IT Environmental Liquidating Trust.  During the term of the IT Environmental

Liquidating Trust, the IT Environmental Liquidating Trust will be a reporting entity for federal income tax purposes under Subpart A of Subchapter J of the Internal Revenue Code

Permit Transfer: Ownership of the Permits shall be transferred to the IT Environmental Liquidating Trust (or, if appropriate, to the LLCs) upon DTSC approval of Class 1 Permit Modifications to recognize the transfer of ownership, or if no such approval is required, upon the establishment of the IT Environmental Liquidating Trust.

The IT Environmental Liquidating Trust shall be established and administered pursuant to the law of California and subject to the jurisdiction of the Northern District of California. Nothing in the Plan or IT Environmental Liquidating Trust Agreement, or in negotiations leading to the formation of these instruments, shall be construed as a waiver by the State of California, DTSC, or by any other California state agency, departments, board, or commission ("State of California") of Eleventh Amendment immunity, or as consent to be sued or otherwise compelled to appear in any Federal Court, including the Northern District of California and the Bankruptcy Court.

Nothing in this Plan is intended to be nor shall it be construed as a deprivation or waiver by the State of California of any rights and duties as a regulator under the laws of California or the United States, including, without limitation, the Permits, nor affect the State of California's interest, if any, in the Post Closure Insurance Policies.

The Consent Order and the Permits shall be assigned to and accepted by the IT Environmental Liquidating Trust and as such shall survive confirmation of the Plan and continue in full force and effect, subject to, if necessary, Class 1 Permit Modifications to recognize the transfer of the Permits

On or before the Effective Date and subject to the occurrence of the Effective Date, all books and records of the Debtors requested by the IT Environmental Liquidating Trustee pertaining to the Landfills and the Post Closure Insurance Policies (the "Landfill Books and Records"), shall be transferred to the IT Environmental Liquidating Trust; provided, however, that to the extent the Debtors, Reorganized IT Group and/or the Litigation Liquidating Trust Trustee request a copy of the Landfill Books and Records to defend and resolve Claims, the IT Environmental Liquidating Trustee shall provide a copy at the Debtors' expense for reasonable copy charges. Reorganized IT Group and its agents and representatives, including former counsel for the Debtors, shall take all steps, and execute all documents, necessary to cause the transfer of all of the Landfill Books and Records of the Debtors in accordance with this Plan.

Any attorney client privilege, work product privilege or other privilege or immunity attaching to the Landfill Books and Records or communications (whether written or oral) (the "Communications") transferred to the IT Environmental Liquidating Trust shall not be deemed waived and shall automatically vest in the IT Environmental Liquidating Trustee and his representatives. After all Distributions and after implementation of the Plan and the establishment of the IT Environmental Liquidating Trust, no Person other than the IT Environmental Liquidating Trustee shall have the right to assert or waive any such privilege of the Debtors regarding the Landfill Books and Records and/or the Communications.

The IT Environmental Liquidating Trustee shall administer the IT Environmental Liquidating Trust in accordance with the terms and conditions of the IT Environmental Liquidating Trust Agreement, the Plan, and the Confirmation Order, and shall have those duties and powers set forth in the IT Environmental Liquidating Trust Agreement. The IT Environmental Liquidating Trustee may retain the services of attorneys, accountants, consultants and other agents, in the business judgment of the IT Environmental Liquidating Trustee, to assist and advise the IT Environmental Liquidating Trustee in the performance of its duties hereunder. In addition to reimbursement of reasonable, actual and necessary expenses incurred, the IT Environmental Liquidating Trustee shall be entitled to reasonable compensation and benefits that shall be payable by the IT Environmental Liquidating Trust in the ordinary course of business and not subject the approval by the Northern District of California, as set forth in the IT Environmental Liquidating Trust Agreement.

All costs and expenses related to the IT Environmental Liquidating Trust shall be paid from the IT Environmental Liquidating Trust Assets. Under no circumstances shall Reorganized IT Group or the Litigation

Trust have any responsibility or liability for such costs and expenses and under no circumstances shall such costs and expenses be paid from the Administrative Reserve or from the Administrative Surcharge.

In addition to all powers enumerated in the IT Environmental Liquidating Trust Agreement, from and after the transfer of the IT Environmental Liquidating Trust Assets into the IT Environmental Liquidating Trust, the IT Environmental Liquidating Trust shall succeed to all of the rights of the Debtors necessary to protect, conserve, preserve, and liquidate all IT Environmental Liquidating Trust Assets, including but not limited to the enforcement of the Debtors' rights under agreements approved by prior orders of the Northern District of California and rights under prior orders of the Northern District of California. In that capacity, the IT Environmental Liquidating Trust shall have the exclusive power to prosecute, defend, compromise, settle and otherwise deal with all IT Environmental Liquidating Trust Assets subject to the terms and conditions of the IT Environmental Liquidating Trust Agreement, the Plan and the Confirmation Order; provided, however, that the IT Environmental Liquidating Trustee shall file semi-annual status reports with the Northern District of California, with copies to counsel for the DTSC, and the United States Trustee. Such reports shall include actual expenditures from the previous twelve (12) month period and projected expenditures for the future twelve (12) month period.

Neither the IT Environmental Liquidating Trustee, nor any director, officer or employer of the IT Environmental Liquidating Trust or the LLCs shall be personally liable, in connection with the IT Environmental Liquidating Trust, to any Creditor or Beneficiary of the IT Environmental Liquidating Trust, or any other Person, except in the case of fraud, gross negligence or willful conduct. Neither the IT Environmental Liquidating Trustee nor any director, officer or employee of the IT Environmental Liquidating Trust shall be considered an "operator" of the Landfills. Persons who assert claims against the IT Environmental Liquidating Trust, shall look only to the IT Environmental Liquidating Trust Assets to satisfy any liability incurred by the IT Environmental Liquidating Trust, the IT Environmental Liquidating Trustee, or any director, officer or employee of the IT Environmental Liquidating Trust to carry out the terms of the Plan, the Confirmation Order and the IT Environmental Liquidating Trust Agreement. The IT Environmental Liquidating Trustee is entitled to rely upon and shall have no liability in relying upon the advice of professionals retained by the IT Environmental Liquidating Trust. This Section 7.10(II) is not to be construed as a waiver by the DTSC of any and all laws applicable to the activities of the IT Environmental Liquidating Trust, or of its rights, if any, under the Post Closure Insurance Policies.

Except as otherwise set forth in this Plan or in the IT Environmental Liquidating Trust Agreement, the IT Environmental Liquidating Trustee and any director, officer or employee of the IT Environmental Liquidating Trust (collectively, the "Indemnified ELT Parties") shall be defended, held harmless and indemnified from time to time by the IT Environmental Liquidating Trust (and not any other Person) against any and all losses, claims, costs, expenses and liabilities to which such Indemnified ELT Parties maybe subject by reason of such Indemnified ELT Party's execution of duties pursuant to the discretion, power and authority conferred on such Person by the IT Environmental Liquidating Trust Agreement, the Plan or the Confirmation Order; provided, however, that the indemnification obligations arising pursuant to this Section shall not indemnify the Indemnified ELT Parties for any actions taken by such Persons which constitute fraud, gross negligence or intentional breach of the Plan, Confirmation Order, or the IT Environmental Liquidating Trust Agreement. Satisfaction of any obligation of the IT Environmental Liquidating Trust arising pursuant to the terms of this Section shall be payable only from the IT Environmental Liquidating Trust Assets, including, if available, any insurance maintained by the IT Environmental Liquidating Trust. The indemnification provisions of the IT Environmental Liquidating Trust Agreement shall remain available to and be binding upon any future IT Environmental Liquidating Trustee or the estate of any decedent and shall survive termination of the IT Environmental Liquidating Trust.

The LLCs and the IT Environmental Liquidating Trust shall provide DTSC and its authorized officers, employees, representatives, as well as contractors, agents and consultants performing response actions under State of California oversight, right of access to the Landfills as required by the Permits. Notwithstanding any provision of this Plan, the State of California retains all of its access authorities and rights, including enforcement rights related thereto, under the Solid Waste Disposal Act, 42 U.S.C. § 6901 et. seq., and any other applicable State of California statute or regulation, including any amendments thereto. The LLCs and the IT Environmental Liquidating Trust do not waive, but retain all rights, claims, and causes of action against all non-governmental third parties which may gain access to the Landfills pursuant to the Plan or otherwise.

Prior to Termination, as defined in the IT Environmental Liquidating Trust Agreement, of the IT Environmental Liquidating Trust, the IT Environmental Liquidating Trustee shall provide a final accounting as required by the Northern District of California.

Any conflicts between this Plan and the IT Environmental Liquidating Trust Agreement shall be resolved by reference to the terms of the IT Environmental Liquidating Trust Agreement.

### 7.11    Vesting of Assets of Debtors

Upon the occurrence of the Effective Date and except as otherwise provided in the Plan, title to all of the Assets of the Debtors shall vest in Reorganized IT Group, the respective reorganized Debtor, or the Litigation Trust (if applicable), free and clear of all Claims, Equity Interests, liens, security interests, encumbrances and other interests. Subject to the Plan and direction by the Oversight Committee, Reorganized IT Group, any other reorganized Debtor, or the Litigation Trust (if applicable) may use, acquire and otherwise dispose of its Assets free of any restrictions of the Bankruptcy Code on and after the occurrence of the Effective Date.

### 7.12    Reconstitution of Board of Directors

If applicable, the initial board of directors of Reorganized IT Group shall be composed of the individuals identified at or prior to the Confirmation Hearing. Effective as of the Effective Date, the current board of directors of the IT Group shall be dissolved and, if applicable, the board of directors of Reorganized IT Group shall be selected and determined in accordance with the provisions of the New Charter and the New By-Laws for Reorganized IT Group.

### 7.13    The New Charter and the New By-Laws

If applicable, upon the occurrence of the Effective Date, the charter and by-laws of Reorganized IT Group shall be amended and restated in substantially the form of the New Charter and New By-Laws, to, among other things, (a) prohibit the issuance of nonvoting equity securities as required by section 1123(a)(6) of the Bankruptcy Code, subject to further amendment of the New Charter as permitted by applicable law, and (b) otherwise effectuate the provisions of the Plan.

### 7.14    Cancellation of Instruments and Agreements

Upon the occurrence of the Effective Date, except as otherwise provided herein, all promissory notes, share certificates, instruments, indentures, or agreements evidencing, giving rise to or governing any Claim or Equity Interest shall be deemed canceled and annulled without further act or action under any applicable agreement, law, regulation, order or rule, and the obligations of the Debtors under such promissory notes, share certificates, instruments, indentures or agreements shall be discharged. The Indentures shall survive confirmation of the Plan solely to effectuate Distributions to be made to holders of the Old Notes as provided herein and to enforce the rights, duties and administrative functions of the Indenture Trustee as provided herein and therein with respect to such Distributions. Nothing in the Plan shall be deemed to impair, waive or discharge the Indenture Trustee's charging lien or any other rights or obligations of the Indenture Trustee under the Indentures. Upon final Distribution to the holders of the Old Notes pursuant to the Plan, the Indentures shall be canceled and deemed terminated, and the Indenture Trustee shall be discharged of any further duties, without any further act or action under any applicable agreement, law, regulations, order, or rule and the obligations of the Debtors under such Indentures shall be discharged.

### 7.15    Expenses Incurred and Claims of the Indenture Trustee

The reasonable unpaid fees and expenses of the Indenture Trustee incurred in the performance of the Indenture Trustee's duties under the Indentures through the Effective Date shall be treated as an Allowed Administrative Claim to be paid in accordance with Article V of the Plan. From and after the Effective Date and subject to the approval of the Oversight Committee, Reorganized IT Group or, if applicable, the Litigation Trust,

shall, in the ordinary course of business and without the necessity of approval by the Bankruptcy Court, pay the reasonable fees and expenses of the Indenture Trustee related to implementation and consummation of the Plan.

### 7.16    Causes of Action

Except as otherwise expressly provided in the Plan, all Causes of Action assertable by any of the Debtors or their Estates, successors or assigns, including but not limited to (i) the Causes of Action listed on Exhibit 1 annexed to the Plan, (ii) Avoidance Actions and Estate Causes of Action and (iii) those Causes of Action hereinafter arising or discovered, regardless of when the facts giving rise to such Causes of Action arose or existed, shall be retained by, and vested in, Reorganized IT Group or, if applicable, the Litigation Trust, upon the occurrence of the Effective Date. Exhibit 1 to the Plan is a non-exhaustive list of the Causes of Action to be retained in connection with the Plan and the Plan Proponents reserve the right to amend that list up to the deadline for filing objections to the Plan. Except as otherwise provided in the Plan, the right of the Debtors, Reorganized IT Group or the Litigation Trust to commence and prosecute such Causes of Action (including Avoidance Actions and Estate Causes of Action) shall be preserved notwithstanding consummation of the Plan. Any recovery realized by Reorganized IT Group or the Litigation Trust on account of such Causes of Action shall be the property of Reorganized IT Group or, if applicable, the Litigation Trust, and, except as otherwise provided in the Plan, distributed to holders of Allowed Claims or the holders of the beneficial interests in the Litigation Trust in accordance with the Plan. Failure to list any claim, right of action, suit or proceeding on Exhibit 1 to the Plan shall not constitute a waiver or release by the Committee, the Debtors, their Estates, Reorganized IT Group or the Litigation Trust of any such claim, right of action, suit or proceeding, and all such claims, rights of action suits or proceedings are hereby expressly reserved.

### 7.17    Approval of the Plan Settlement

The Confirmation Order shall approve the Plan Settlement and authorize the parties to take all actions that are necessary or appropriate to implement and give effect to the Plan Settlement, subject to the occurrence of the Effective Date.

### 7.18    Employee Matters

(a)    Upon the occurrence of the Effective Date, the Debtors shall remit any payments outstanding as of the Effective Date that are due and payable pursuant to the terms of that certain Severance/Retention Program approved by the Bankruptcy Court by order dated August 29, 2002.

(b)    Upon the occurrence of the Effective Date, the Soose Loans and accrued interest thereon shall be deemed to be forgiven. Within three (3) business days of the Effective Date, the Debtors shall remit all federal, state and local withholding taxes and all related interest associated with the loan forgiveness and the corresponding salary gross-up so that Harry J. Soose, Jr., incurs no personal out-of-pocket expenses.

### 7.19    Special Provisions Regarding Insured Claims

Distributions under the Plan to each holder of an Allowed Insured Claim against any Debtor shall be in accordance with the treatment provided under the Plan for the Class in which such Allowed Insured Claim is classified; provided, however, that any Distribution under the Plan on account of an Allowed Insured Claim shall, for purposes of calculating the Allowed amount of such Claim, deduct the amount of any insurance proceeds actually received by such holder in respect of such Allowed Insured Claim. Nothing in this Section 7.19 shall constitute a waiver of any claim, right or Cause of Action the Debtors or their Estates may hold against any Person, including any Insurance Companies or other insurers. Pursuant to section 524(e) of the Bankruptcy Code, nothing in the Plan shall release or discharge any Insurance Company or other insurer from any obligations to any Person under applicable law or any policy of insurance under which a Debtor is an insured or beneficiary.

7.20   **Appointment of the Disbursing Agent**

Upon the occurrence of the Effective Date, Reorganized IT Group or, if applicable, the Litigation Trust, shall be appointed to serve as the Disbursing Agent with respect to all of the Debtors.

7.21   **Sources of Cash for Plan Distributions**

All Cash necessary for the Disbursing Agent to make payments and Distributions pursuant to the Plan shall be obtained from existing Cash balances and the disposition of the Assets pursuant to the Plan.

7.22   **Sources of Cash for Implementation of Plan**

Pursuant to the Plan Settlement, the Administrative Reserve shall be held in an account maintained by Reorganized IT Group or, if applicable, the Litigation Trust, to fund post-Effective Date administrative and related costs associated with administration of the Chapter 11 Cases and implementation of the Plan including, without limitation, the fees and costs of the Disbursing Agent, Reorganized IT Group, the Litigation Trust, the Plan Administrator, the Chief Litigation Officer and the Oversight Committee pursuant to the Plan. Notwithstanding the foregoing, under no circumstances shall the Administrative Reserve be used to fund any costs or expenses of, or relating to, the IT Environmental Liquidating Trust. To the extent the Administrative Reserve is insufficient to fund administration of the Chapter 11 Cases and implementation of the Plan, an Administrative Surcharge against the Litigation Recoveries may be approved and authorized by (a) the Oversight Committee; or (b) the Bankruptcy Court upon application by the Plan Administrator, the Committee Designees, the Agent, the Lender Designees and/or the Oversight Committee, upon notice to Reorganized IT Group or the Litigation Trust (if applicable), the Plan Administrator, the Chief Litigation Officer, the Oversight Committee, the Agent and any other party in interest as directed by the Bankruptcy Court. Under no circumstances shall the Administrative Surcharge be used to fund any costs or expenses of, or relating to, the IT Environmental Liquidating Trust. In the event any monies remain in the Administrative Reserve (including any monies obtained as a result of any Administrative Surcharge) at the time of the final Distribution to be made pursuant to the Plan, such remaining monies shall constitute Available Proceeds and shall be distributed as provided in Sections 4.1(c) and 4.1(d) of the Plan.

7.23   **Investment of Funds Held by the Disbursing Agent; Tax Reporting by the Disbursing Agent**

Subject to section 7.10(I)(f) of the Plan, the Disbursing Agent may, but shall not be required to, invest any funds held by the Disbursing Agent pending the distribution of such funds pursuant to the Plan in investments that are exempt from federal, state and local taxes.

7.24   **Distributions under the Plan**

The Disbursing Agent shall make all Distributions required under the Plan. Whenever any Distribution to be made under this Plan shall be due on a day other than a Business Day, such Distribution shall instead be made, without interest, on the immediately succeeding Business Day, but shall be deemed to have been made on the date due. A Distribution shall be allocated to the principal amount of a Claim (as determined for federal income tax purposes) first and then, to the extent the Distribution exceeds the principal amount of the Claim, to the portion of the Claim representing accrued but unpaid interest.

7.25   **Timing of Distributions under the Plan**

Except for the initial Distribution to holders of Allowed Lender Claims (which shall be made on the Effective Date), any Distribution to be made pursuant to the Plan other than Section 7.10(I) of the Plan shall be deemed to have been timely made if made within the ten (10) Business Days immediately following the applicable Distribution Date.

7.26    __Address for Delivery of Distributions under the Plan__

        Subject to Bankruptcy Rule 9010, any Distribution or delivery to a holder of an Allowed Claim shall be made at the address of such holder as set forth on the proof of Claim filed by such holder (or at the last known address of such holder if no proof of claim is filed or if the Disbursing Agent, the Debtors, Reorganized IT Group or the Litigation Trust Trustee, as the case may be, have been notified of a change of address); provided, that all Distributions under the Plan to the holders of Allowed General Unsecured Claims based on the Old Notes shall be made to the Indenture Trustee with respect thereto. All Distributions under the Plan to the holders of the Lender Claims shall be made to the Agent for Distribution to such holders. If any holder's Distribution or payment is returned to the Disbursing Agent as undeliverable, no further Distributions or payments to such holder shall be made unless and until the Disbursing Agent is notified of such holder's then current address within three months after such Distribution or payment was returned, at which time any missed Distribution or payment shall be made to such holder without interest.

7.27    __Time Bar to Cash Payments__

        Checks issued in respect of Allowed Claims shall be null and void if not negotiated within one hundred and eighty (180) days after the date of issuance thereof. Requests for reissuance of any check shall be made directly to the Disbursing Agent by the holder of the Allowed Claim with respect to which such check originally was issued. All Claims in respect of void checks as provided herein shall be discharged and forever barred and such unclaimed Distributions or payments shall revert to Reorganized IT Group or the Litigation Trust (if applicable).

7.28    __Manner of Payment under the Plan__

        Unless the Person receiving a Distribution agrees otherwise, any Distribution to be made in Cash under the Plan shall be made, at the election of the Disbursing Agent, by check drawn on a domestic bank or by wire transfer from a domestic bank.

7.29    __Expenses Incurred on or after the Effective Date and__
        __Claims of the Disbursing Agent__

        Professional fees and expenses incurred by the Disbursing Agent from and after the Effective Date in connection with the effectuation of the Plan shall be paid in the ordinary course of business by Reorganized IT Group or the Litigation Trust (if applicable). Any dispute regarding compensation shall be resolved by agreement of the parties or if the parties are unable to agree, as determined by the Bankruptcy Court.

7.30    __Fractional Distributions__

        Notwithstanding anything to the contrary contained herein, no Cash payments of fractions of cents and no fractional distributions of shares of the Shaw Stock shall be made. Fractional cents shall be rounded down to the nearest whole cent. Fractional shares shall be rounded down to the next-lower whole number of shares.

7.31    __Corporate Action__

        On the Effective Date, if applicable, the adoption of the New Charter, the filing by Reorganized IT Group of the New Charter and the adoption of the New By-Laws and the other corporate actions, as contemplated by Article VII of the Plan, shall be authorized and approved in all respects, in each case without further action under applicable law, regulation, order or rule, including, without express or implied limitation, any action by the stockholders or directors of the Debtors. On the Effective Date or as soon thereafter as is practicable, Reorganized IT Group shall file with the Secretary of State of the State of Delaware its New Charter (if applicable). On the Effective Date, any other matters provided under the Plan involving the corporate structure of the Debtors or corporate action by the Debtors shall be deemed to have occurred, and shall be in effect from and after the Effective Date without requiring further action under applicable law, regulation, order or rule, including, without express or implied limitation, any action by the stockholders or directors of the Debtors.

7.32    Effectuating Documents and Further Transactions

Each of the officers of the Debtors and/or Reorganized IT Group or the Litigation Trust Trustee (if applicable) is authorized, in accordance with his or her authority under the resolutions of the boards of directors, to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and provisions of the Plan.

## ARTICLE VIII.
## PROCEDURES FOR RESOLVING
## AND TREATING CONTESTED CLAIMS

8.1    Objection Deadline

As soon as practicable, but in no event later than one hundred and eighty (180) days after the Effective Date (subject to being extended by the Bankruptcy Court upon motion of the Disbursing Agent without notice or a hearing), objections to Claims shall be filed with the Bankruptcy Court and served upon the holders of each of the Claims to which objections are made.

8.2    Prosecution of Contested Claims

The Disbursing Agent may object to the allowance of Claims filed with the Bankruptcy Court with respect to which liability is disputed in whole or in part. All objections that are filed and prosecuted as provided herein shall be litigated to Final Order or compromised and settled in accordance with Section 8.3 of the Plan.

8.3    Claims Settlement Guidelines

Notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, from and after the Effective Date all Claims may be compromised and settled by the Disbursing Agent according to the following procedures:

(a)    Subject to Subsection 8.3(b) of the Plan, the following settlements or compromises do not require the review or approval of the Bankruptcy Court or any other party in interest:

(i)    The settlement or compromise of a Claim pursuant to which such Claim is Allowed in an amount of $250,000 or less; and

(ii)    The settlement or compromise of a Claim where the difference between the amount of the Claim listed on the Debtors' Schedules and the amount of the Claim proposed to be Allowed under the settlement is $250,000 or less; and

(b)    The following settlements or compromises shall be submitted to the Bankruptcy Court for approval:

(i)    Any settlement or compromise not described in subsection 8.3(a) of the Plan; and

(ii)    Any settlement or compromise of a Claim that involves an "insider," as defined in section 101(31) of the Bankruptcy Code.

8.4    No Distributions Pending Allowance

Notwithstanding any other provision of the Plan, no payment or Distribution shall be made with respect to any Claim to the extent it is a Contested Claim, unless and until such Contested Claim becomes an Allowed Claim, subject to the Debtors' setoff rights as provided in Section 13.17 of the Plan. All cash or other

property that would have otherwise have been distributed with respect to a Contested Unsecured Claim shall be transferred to the Contested Unsecured Claims Reserve and maintained by the Disbursing Agent in accordance with the principles of this Article VIII.

Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the issuance of applicable Treasury Regulations, the receipt by the Disbursing Agent of a private letter ruling if the Disbursing Agent so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by the Disbursing Agent), the Disbursing Agent shall (i) treat the Contested Unsecured Claims Reserve as a discrete trust for federal income tax purposes, consisting of separate and independent shares to be established in respect of each Contested Unsecured Claim, in accordance with the trust provisions of the Internal Revenue Code (sections 641 et seq.) and (ii) to the extent permitted by applicable law, report consistently for state and local income tax purposes. In addition, pursuant to the Plan, all parties (including holders of Contested Unsecured Claims) shall report, for tax purposes, consistently with such treatment. The Disbursing Agent may request an expedited determination of taxes of the Contested Unsecured Claims Reserve, under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of the Contested Unsecured Claims Reserve for all taxable periods through the dissolution of the Contested Unsecured Claims Reserve.

## 8.5    Distributions After Allowance

Payments and Distributions to each holder of a Contested Claim, to the extent that such Claim ultimately becomes Allowed, shall be made in accordance with the provision of the Plan governing the class of Claims to which the Allowed Claim belongs. No interest shall be paid on account of a Contested Claim which later becomes an Allowed Claim.

## 8.6    Estimation of Claims

The Disbursing Agent may, at any time, request that the Bankruptcy Court estimate any contingent, unliquidated or Contested Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Disbursing Agent has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any Contested Claim, that estimated amount shall constitute either the allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Disbursing Agent may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim. All of the objection, estimation, settlement, and resolution procedures set forth in the Plan are cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

### ARTICLE IX.
### CONDITIONS PRECEDENT TO
### CONFIRMATION OF THE PLAN AND
### THE OCCURRENCE OF THE EFFECTIVE DATE

## 9.1    Conditions Precedent to Confirmation

The following are conditions precedent to confirmation of the Plan:

(a)    The Clerk of the Bankruptcy Court shall have entered an order or orders, which may be the Confirmation Order, approving the Plan Documents, authorizing the Debtors to execute, enter into and deliver the Plan Documents and to execute, implement and to take all actions otherwise necessary or appropriate to give effect to, the transactions contemplated by the Plan and the Plan Documents.

(b)    The Confirmation Order shall be, in form and substance, acceptable to the Plan Proponents and the Agent.

9.2     **Conditions Precedent to the Occurrence of the Effective Date**

The following are conditions precedent to the occurrence of the Effective Date.

(a)     The Confirmation Order shall have been entered by the Clerk of the Bankruptcy Court, be in full force and effect and not be subject to any stay or injunction.

(b)     All necessary consents, authorizations and approvals shall have been given for the transfers of property and the payments provided for or contemplated by the Plan, including, without limitation, satisfaction or waiver of all conditions to the obligations of the Debtors under the Plan and the Plan Documents.

9.3     **Waiver of Conditions**

The Committee and the Agent may waive any of the conditions set forth in Sections 9.1 and 9.2 of the Plan in writing.

9.4     **Effect of Failure of Conditions to Effective Date**

In the event the conditions specified in Section 9.2 of the Plan have not been satisfied or waived, and upon written notification submitted by the Plan Proponents or the Agent to the Bankruptcy Court, (a) the Confirmation Order shall be vacated; (b) no Distributions under the Plan shall be made; (c) the Debtors and all holders of Claims and Equity Interests shall be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred; and (d) all of the Debtors' obligations with respect to the Claims and Equity Interests shall remain unchanged and nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against the Debtors or any other entity or to prejudice in any manner the rights of the Debtors, the Committee, the Prepetition Lenders or any other entity in any further proceedings involving the Debtors.

**ARTICLE X.**
**THE DISBURSING AGENT**

10.1    **Powers and Duties**

Pursuant to the terms and provisions of the Plan, the Disbursing Agent shall be empowered and directed to (a) take all steps and execute all instruments and documents necessary to make Distributions to holders of Allowed Claims; (b) make distributions contemplated by the Plan; (c) comply with the Plan and the obligations thereunder; (d) employ, retain, or replace professionals to represent it with respect to its responsibilities; (e) object to Claims as specified in Article VIII of the Plan, and prosecute such objections; (f) make such periodic reports as requested by the Oversight Committee with respect to the status of Distributions under the Plan; and (h) exercise such other powers as set forth in the Plan or as requested by the Oversight Committee.

10.2    **Distributions**

Pursuant to the terms and provisions of the Plan, the Disbursing Agent shall on the applicable Distribution Date, make the required Distributions specified under the Plan. Notwithstanding the foregoing, the Disbursing Agent may make Distributions under the Plan to holders of Allowed General Unsecured Claims at such times as the Disbursing Agent (in consultation with the Committee Designees) reasonably determines the making of such Distributions are practicable in light of any Estimated Claims Order or other unresolved issues affecting Distributions to such holders.

10.3    **Exculpation**

Except as otherwise provided in this Section 10.3 and in addition to Section 13.5 of the Plan, the Disbursing Agent, together with its officers, directors, employees, agents and representatives are hereby exculpated by all Persons, holders of Claims and Equity Interests, and all other parties in interest, from any and all Causes of

Action, and other assertions of liability (including breach of fiduciary duty) arising out of the discharge of the powers and duties conferred upon the Disbursing Agent by the Plan, any Final Order of the Bankruptcy Court entered pursuant to or in the furtherance of the Plan, or applicable law, except solely for actions or omissions arising out of the Disbursing Agent's willful misconduct or gross negligence. No holder of a Claim or an Equity Interest, or representative thereof, shall have or pursue any claim or cause of action against the Disbursing Agent or its officers, directors, employees, agents and representatives for making payments or Distributions in accordance with the Plan. Nothing contained in this Section 10.3 shall preclude or impair any holder of an Allowed Claim from bringing an action in the Bankruptcy Court to compel the making of Distributions contemplated by the Plan on account of such Allowed Claim.

## ARTICLE XI.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 11.1    Assumption of Executory Contracts and Unexpired Leases

Pursuant to section 365 of the Bankruptcy Code, Exhibit 2 to the Plan sets forth a list of executory contracts and unexpired leases, together with the amount, if any, required to cure any defaults, to be assumed under the Plan by the Debtors. Subject to the occurrence of the Effective Date, any executory contracts or unexpired leases listed on Exhibit 2 to the Plan, as such may be amended prior to the Confirmation Hearing, shall be deemed to have been assumed by the Debtors on the Effective Date. The Plan shall constitute a motion to assume such executory contracts and unexpired leases. Subject to the occurrence of the Effective Date, the Confirmation Order shall constitute approval of such assumptions pursuant to section 365 of the Bankruptcy Code and findings by the Bankruptcy Court that the amounts listed on Exhibit 2 are sufficient to cure any defaults that may exist, that each assumption is in the best interest of the Debtors, their estates and all parties in interest in the Chapter 11 Cases and that the requirements for assumption of such executory contracts or unexpired leases under section 365 of the Bankruptcy Code have been satisfied. Except as otherwise provided in the following sentence, all cure payments which may be required by section 365(b)(1) of the Bankruptcy Code under any executory contract or unexpired lease which is assumed under the Plan shall be made by the Debtors on the Effective Date or as soon as practicable thereafter. In the event of a dispute, cure payments required by section 365(b)(1) of the Bankruptcy Code shall be paid upon entry of a Final Order resolving such dispute. At this time, no executory contracts or unexpired leases have been identified in Exhibit 2, but the Plan Proponents reserve the right to identify any such contracts or leases prior to the Confirmation Hearing.

Pursuant to section 365 of the Bankruptcy Code, Exhibit 3 to the Plan sets forth a list of executory contracts and unexpired leases, together with the amount, if any, required to cure any defaults, to be assumed under the Plan by the Debtors and assigned to the IT Environmental Liquidating Trust. Any executory contracts or unexpired leases listed on Exhibit 3 to the Plan, as such may be amended prior to the Confirmation Hearing, shall be deemed to have been assumed by the Debtors and assigned to the IT Environmental Liquidating Trust on and subject to the occurrence of the Effective Date. The Debtors are relieved of any liability with respect to the executory contracts and unexpired leases listed on Exhibit 3 to the Plan pursuant to section 365(k) of the Bankruptcy Code. In addition, the IT Environmental Liquidating Trust shall satisfy all of the Debtors' obligations to cure defaults and compensate for damages with respect to any of the executory contracts and unexpired leases listed on Exhibit 3 to the Plan pursuant to section 365(b) of the Bankruptcy Code.

### 11.2    Rejection of Executory Contracts and Unexpired Leases

Any executory contracts or unexpired leases of any of the Debtors that (a) are not listed on Exhibits 2 or 3 to the Plan; (b) have not been approved by the Bankruptcy Court prior to the Confirmation Date for assumption and assignment by any of the Debtors or rejection by any of the Debtors; and (c) are not the subject of pending motions to assume on the Confirmation Date shall be deemed to have been rejected by the Debtors effective as of the Effective Date. Notwithstanding the forgoing, the assumption and assignment of the operating agreement of Space Gateway Support LLC shall be completed pursuant to the Bankruptcy Court's order dated June 20, 2002 (docket number 1733). The Plan shall constitute a motion to reject all such executory contracts and unexpired leases, and the Debtors shall have no liability thereunder except as is specifically provided in the Plan. The Confirmation Order shall constitute approval of such rejections pursuant to section 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such rejected executory contract or unexpired lease is burdensome

and that the rejection thereof is in the best interest of the Debtors, their estates, and all parties in interest in the Chapter 11 Cases.

11.3    **Claims Arising from Rejection or Termination**

Claims created by the rejection of executory contracts or unexpired leases or the expiration or termination of any executory contract or unexpired lease prior to the Confirmation Date must be filed with the Bankruptcy Court and served on the Debtors (a) in the case of an executory contract or unexpired lease rejected by the Debtors prior to the Confirmation Date, in accordance with the later of the Bar Date Order or thirty (30) days after the date of the order of the Bankruptcy Court authorizing and approving such rejection, or (b) in the case of an executory contract or unexpired lease that (i) was terminated or expired by its terms prior to the Confirmation Date, or (ii) is deemed rejected pursuant to Section 11.2 of the Plan, no later than thirty (30) days after the Confirmation Date, or (c) in the case of an executory contract or unexpired lease that is rejected by the Debtors after the Confirmation Date, within thirty (30) days after the date of the order of the Bankruptcy Court authorizing and approving such rejection. Any Claims for which a proof of claim is not filed and served within such time shall be forever barred from assertion and shall not be enforceable against the Debtors, Reorganized IT Group, the Litigation Trust, or their respective estates, assets, properties, or interests in property. Unless otherwise ordered by the Bankruptcy Court, all such Claims that are timely filed as provided herein shall be treated as General Unsecured Claims under the Plan subject to objection as provided in the Plan.

**ARTICLE XII.**
**RETENTION OF JURISDICTION**

Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court shall retain and shall have exclusive jurisdiction over any matter (a) arising under the Bankruptcy Code; (b) arising in or related to the Chapter 11 Cases, the Plan or the Litigation Trust; or (c) that relates to any of the following:

(i)    To hear and determine any and all motions or applications pending on the Confirmation Date or thereafter brought in accordance with Article XI of the Plan for the assumption and/or assignment or rejection of executory contracts or unexpired leases to which any of the Debtors is a party or with respect to which any of the Debtors may be liable, and to hear and determine any and all Claims resulting therefrom or from the expiration or termination of any executory contract or unexpired lease;

(ii)    To determine any and all adversary proceedings, applications, motions and contested or litigated matters that may be pending on the Effective Date or that, pursuant to the Plan, may be instituted after the Effective Date, including, without express or implied limitation, any Avoidance Actions or Estate Causes of Action;

(iii)    To hear and determine any objections to the allowance of Claims, whether filed, asserted, or made before or after the Effective Date, including, without express or implied limitation, to hear and determine any objections to the classification of any Claim and to allow, disallow or estimate any Contested Claim in whole or in part;

(iv)    To issue such orders in aid of execution of the Plan to the extent authorized or contemplated by section 1142 of the Bankruptcy Code;

(v)    To consider any modifications of the Plan, remedy any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(vi)    To hear and determine all applications for allowances of compensation and reimbursement of expenses of Professional Persons under sections 330 and 331 of the Bankruptcy Code and any other fees and expenses authorized to be paid or reimbursed under the Plan or the Bankruptcy Code;

(vii)    To hear and determine all controversies, suits and disputes that may relate to, impact upon, or arise in connection with the Plan, including the exhibits to the Plan, or the Plan Documents or their interpretation, implementation, enforcement or consummation,

(viii)    To hear and determine all controversies, suits, and disputes that may relate to, impact upon, or arise in connection with the Confirmation Order (and all exhibits to the Plan) or its interpretation, implementation, enforcement or consummation;

(ix)    To hear and determine all controversies, suits and disputes that may relate to, impact upon, or arise in connection with the Plan Settlement or its interpretation, implementation, enforcement or consummation;

(x)    To the extent that Bankruptcy Court approval is required, to consider and act on the compromise and settlement of any Claim or cause of action by or against the Debtors' estates;

(xi)    To determine such other matters that may be set forth in the Plan, or the Confirmation Order, or that may arise in connection with the Plan, or the Confirmation Order;

(xii)    To hear and determine matters concerning state, local, and federal taxes, fines, penalties, or additions to taxes for which the Debtors, Reorganized IT Group, the Litigation Trust or the Disbursing Agent may be liable, directly or indirectly, in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

(xiii)    To hear and determine all controversies, suits, and disputes that may relate to, impact upon or arise in connection with any setoff and/or recoupment rights of the Debtors or any Person;

(xiv)    To hear and determine all Causes of Action and all controversies, suits and disputes that may relate to, impact upon or arise in connection with Causes of Action;

(xv)    To enter an order or final decree closing the Chapter 11 Cases;

(xvi)    To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(xvii)    To issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person with consummation, implementation or enforcement of the Plan or the Confirmation Order; and

(xviii)    To hear and determine any other matters related hereto and not inconsistent with chapter 11 of the Bankruptcy Code.

## ARTICLE XIII.
## MISCELLANEOUS PROVISIONS

### 13.1    Payment of Statutory Fees

All Statutory Fees accrued through and including the Effective Date shall be paid by the Debtors on or before the Effective Date, and after the Effective Date, Reorganized IT Group or the Litigation Trust (if applicable) shall pay all required Statutory Fees in the ordinary course of business.

### 13.2    Discharge of the Debtors

The rights afforded in the Plan and the treatment of all Claims and Equity Interests herein shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and Equity Interests of any nature whatsoever, including any interest accrued thereon from and after the Petition Date, against the Debtors and the

debtors-in-possession, or any of their Estates, Assets, properties, or interests in property. Except as otherwise provided herein, on the Effective Date, all Claims against and Equity Interests in the Debtors shall be satisfied, discharged, and released in full. The Debtors shall not be responsible for any obligations of the Debtors, except those expressly assumed by any of the Debtors in the Plan. Except as otherwise provided herein, all Persons shall be precluded and forever barred from asserting against the Debtors, Reorganized IT Group, the Litigation Trust, their respective successors or assigns, or their respective Assets, properties, or interests in property any other or further Claims or Equity Interests based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, whether or not the facts of or legal bases therefor were known or existed prior to the Effective Date.

### 13.3 Third Party Agreements; Subordination

The Distributions to the various classes of Claims hereunder shall be in full satisfaction of the right of any Person to levy, garnish, attach or employ any other legal process with respect to such Distributions by reason of any claimed subordination rights or otherwise. On and subject to the occurrence of the Effective Date, all of such rights and any agreements relating thereto shall be canceled and annulled and of no further force or effect. In accordance with section 510(b) of the Bankruptcy Code, a Claim arising from rescission of a purchase or sale of a security of the Debtors or of an Affiliate of the Debtors, for damages arising from the purchase or sale of such a security, or for reimbursement or contribution allowed under section 502 of the Bankruptcy Code on account of such Claim, shall be subordinated to all Claims that are senior to or equal the Claim or Equity Interest represented by such security, except that if such security is common stock, such Claim has the same priority and treatment as Equity Interests in Class 5.

### 13.4 Dissolution of Committee

The appointment of the Committee shall terminate on the later of (a) the Effective Date, and (b) the date the last order of the Bankruptcy Court allowing or disallowing a Fee Claim becomes a Final Order. Upon such termination, the members of the Committee shall thereupon be released and discharged of and from all further authority, duties, responsibilities, and obligations relating to and arising from and in connection with the Chapter 11 Cases, and the Committee shall be deemed dissolved, unless prior thereto the Bankruptcy Court shall have entered an order extending the existence of the Committee.

### 13.5 Exculpation

None of the Plan Proponents, the Agent, the Prepetition Lenders, the Disbursing Agent or any of their respective members, officers, directors, employees, attorneys, advisors, professionals, consultants or agents shall have or incur any liability to any Person for any act or omission in connection with, related to, or arising out of, the Chapter 11 Cases, including, without limitation, the commencement of the Chapter 11 Cases, the negotiation of the Plan, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for willful misconduct or gross negligence as determined by Final Order of the Bankruptcy Court, and in all respects shall be entitled to rely upon the advice of counsel and all information provided by other exculpated persons herein without any duty to investigate the veracity or accuracy of such information with respect to their duties and responsibilities under, or in connection with, the Plan.

### 13.6 Title to Assets; Discharge of Liabilities

Except as otherwise provided in the Plan, on the Effective Date, title to all Assets shall vest in Reorganized IT Group or Litigation Trust, if applicable, free and clear of all Claims, Equity Interests, liens, security interests, encumbrances and other interests, and the Confirmation Order shall be a judicial determination of discharge of the liabilities of the Debtors, except as provided in the Plan. Except as otherwise provided in the Plan, all holders of Claims and Equity Interests shall be precluded from asserting against the Debtors, Reorganized IT Group, the Litigation Trust, the Assets or any property dealt with under the Plan, any or other further Claim based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date.

**13.7**    **Surrender and Cancellation of Instruments**

On the Effective Date, except as otherwise provided in the Plan, all promissory notes, instruments, securities and agreements evidencing a Claim or Equity Interest shall be canceled.  At the option of the Disbursing Agent, no Distribution hereunder shall be made to or on behalf of any holder of any Claim (other than a Lender Claim), unless and until such promissory note, instrument, security or agreement is surrendered or the unavailability thereof is reasonably established to the satisfaction of the Disbursing Agent and such holder of a Claim or Equity Interest executes and delivers any documents necessary to release all encumbrances arising under any applicable security agreement or nonbankruptcy law and such other documents as the Disbursing Agent may reasonably request.  In accordance with section 1143 of the Bankruptcy Code, any such holder of a Claim (other than a Lender Claim) that fails to surrender or cause to be surrendered such promissory note, instrument, security or agreement or to execute and deliver an affidavit of loss and indemnity reasonably satisfactory to the Disbursing Agent, and, in the event that the Disbursing Agent requests, furnish a bond in form and substance reasonably satisfactory to the Disbursing Agent (including, without limitation, amount), shall be deemed to have forfeited all rights, claims, and interests and shall not participate in any Distribution hereunder (to the extent otherwise entitled).

**13.8**    **Notices**

Any notices, requests, and demands required or permitted to be provided under the Plan, in order to be effective, shall be in writing (including, without express or implied limitation, by facsimile transmission), and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

If to:    The IT Group, Inc., et al. (including, if applicable the Litigation Trust)
Attention:  Plan Administrator
2790 Mosside Boulevard
Monroeville, PA  15146-2792
Telephone:  (412) 858-3345
Telecopier:  (412) 858-3311

*With a copy to*

Skadden, Arps, Slate, Meagher & Flom LLP
Attention:  Gregg M. Galardi, Esq.
One Rodney Square
PO Box 636
Wilmington, DE 19899
Telephone: (302) 651-3000
Telecopier: (302) 651-3001

*and*

White & Case LLP
Attention:  John K. Cunningham, Esq.
200 South Biscayne Boulevard
Suite 4900
Miami, FL 33131
Telephone: (305) 371-2700
Telecopier: (305) 358-5744

*and*

The Bayard Firm
Attention:  Jeffrey M. Schlerf, Esq.
222 Delaware Ave., 9th Floor
Wilmington, DE  19899
Telephone:  (302) 655-5000

Telecopier: (302) 658-6395

*and*

Weil, Gotshal & Manges LLP
Attention: Stephen Karotkin, Esq.
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
Telecopier: (212) 310-8007

If to:    Committee and/or Committee Designees

Attention: Murray Hutchison, Co-Chairperson
P.O. Box 2231
Rancho Santa Fe, CA 92067
Telephone: (858) 756-9777
Telecopier: (858) 756-9245

Attention: Daniel Arbess, Co-Chairperson
110 East 59th Street
34th Floor
New York, NY 10017
Telephone: (212) 829-2540
Telecopier: (212) 829-2599

*With a copy to:*

White & Case LLP
Attention: John K. Cunningham, Esq.
200 South Biscayne Boulevard
Suite 4900
Miami, FL 33131
Telephone: (305) 371-2700
Telecopier: (305) 358-5744

If to:    Agent, Prepetition Lenders and/or Lender Designees
Attention: Marni McManus
Citigroup
250 West Street
8th Floor
New York, NY 10013
Telephone: (212) 816-7461
Telecopier: (212) 816-7736

*With a copy to:*

Weil, Gotshal & Manges LLP
Attention: Stephen Karotkin, Esq.
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
Telecopier: (212) 310-8007

## 13.9    Headings

The headings used in the Plan are inserted for convenience only, and neither constitute a portion of the Plan nor in any manner affect the construction of the provisions of the Plan.

### 13.10   Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules), the laws of the State of New York, without giving effect to the conflicts of laws principles thereof, shall govern the construction of the Plan and any agreements, documents, and instruments executed in connection with the Plan, except as otherwise expressly provided in such instruments, agreements or documents.

### 13.11   Expedited Determination

The Disbursing Agent is hereby authorized to file a request for expedited determination under section 505(b) of the Bankruptcy Code for all tax returns filed with respect to the Debtors through and including the dissolution of the Debtors.

### 13.12   Exemption from Transfer Taxes

Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under the Plan, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

### 13.13   Notice of Entry of Confirmation Order and Relevant Dates

Promptly upon entry of the Confirmation Order, the Committee shall publish on behalf of the Plan Proponents as directed by the Bankruptcy Court and serve on all known parties in interest and holders of Claims and Equity Interests in accordance with Bankruptcy Rule 3020(c)(2), notice of the entry of the Confirmation Order and all relevant deadlines and dates under the Plan, including, but not limited to, the deadline for filing notice of Administrative Claims (Section 5.1 of the Plan), and the deadline for filing rejection damage claims (Section 11.3 of the Plan).

### 13.14   No Interest or Attorneys' Fees

Except as expressly stated in the Plan, or as allowed by the Bankruptcy Court, no interest, penalty or late charge arising after the Petition Date, and no award or reimbursement of attorneys fees or related expenses or disbursements, shall be allowed on, or in connection with, any Claim.

### 13.15   Modification of the Plan

The Plan Proponents may alter, amend, or modify the Plan or any exhibits under section 1127(a) of the Bankruptcy Code at any time prior to the Confirmation Date, provided all Plan Proponents and the Agent have agreed to such alteration, amendment or modification. The Plan Proponents (with the consent of the Agent) may modify the Plan at any time after confirmation and before substantial consummation, provided that the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms the Plan as modified, under section 1129 of the Bankruptcy Code, and the circumstances warrant such modifications. A holder of a Claim that has accepted or rejected the Plan shall be deemed to have accepted or rejected, as the case may be, such Plan as modified, unless, within the time fixed by the Bankruptcy Court, such holder changes its previous acceptance or rejection.

### 13.16   Revocation of Plan

The Plan Proponents (with the consent of the Agent) reserve the right to revoke and withdraw the Plan as to any Debtor prior to the occurrence of the Effective Date. If the Plan Proponents (with the consent of the Agent) revoke or withdraw the Plan as to any Debtor, or if the Effective Date does not occur as to any Debtor, then, as to such Debtor the Plan and all settlements set forth in the Plan shall be deemed null and void and nothing contained herein shall be deemed to constitute a waiver or release of any Claims against or Equity Interests in such

Debtor or to prejudice in any manner the rights of the Debtors or any Person in any other further proceedings involving such Debtor.

## 13.17   Setoff Rights

Except as provided elsewhere herein, in the event that the Debtors have a claim of any nature whatsoever against the holder of a Claim, the Debtors, Reorganized IT Group or, if applicable, the Litigation Trust, may, but are not required to, setoff against the Claim (and any payments or other Distributions to be made in respect of such Claim hereunder) any claims the Debtors may have against the holder. Neither the failure to setoff nor the allowance of any Claim under the Plan shall constitute a waiver or release of any claims that the Debtors have against the holder of a Claim.

## 13.18   Compliance with Tax Requirements

In connection with the Plan, the Debtors, Reorganized IT Group, the Litigation Trust and the Disbursing Agent, as applicable, shall comply with all withholding and reporting requirements imposed by federal, state, local, and foreign taxing authorities, and all Distributions hereunder shall be subject to such withholding and reporting requirements. Notwithstanding the above, each holder of an Allowed Claim that is to receive a Distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any government unit, including income, withholding and other tax obligations, on account of such Distribution. The Disbursing Agent has the right, but not the obligation, to not make a Distribution until such holder has made arrangements satisfactory to the Disbursing Agent for payment of any such tax obligations.

## 13.19   Injunctions

Except as otherwise expressly provided in the Plan, all Persons or entities who have held, hold, or may hold Claims or Equity Interests are permanently enjoined, from and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind on any such Claim or Equity Interest against any of the Debtors, their Estates, Reorganized IT Group, the IT Environmental Liquidating Trust, the IT Environmental Liquidating Trustee, the Litigation Trust or the Assets, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against any of the Debtors, their Estates, Reorganized IT Group, the IT Environmental Liquidating Trust, the IT Environmental Liquidating Trustee, the Litigation Trust or the Assets, (c) creating, perfecting, or enforcing any encumbrance of any kind against any of the Debtors, their Estates, Reorganized IT Group, the IT Environmental Liquidating Trust, the IT Environmental Liquidating Trustee, the Litigation Trust or the Assets, or against the property or interests in property of any of the Debtors, their Estates, Reorganized IT Group or the Litigation Trust, and (d) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from any Debtor or against the property or interests in property of any Debtor, with respect to any such Claims or Equity Interests; provided, however, that the foregoing shall not affect the rights of a party that were obtained pursuant to a Final Order of the Bankruptcy Court granting limited relief from the automatic stay under section 362(d) of the Bankruptcy Code.

## 13.20   Term of Injunctions or Stays

Unless otherwise provided, all injunctions or stays arising under or entered during the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

## 13.21   Injunction Against Interference With Chapter 11 Plan

Upon the entry of the Confirmation Order, all holders of Claims and Equity Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

13.22    **Officers and Directors**

Notwithstanding anything contained in the Plan to the contrary, nothing in the Plan or Confirmation Order (except as expressly set forth in Section 13.5 of the Plan with respect to post-Petition Date conduct or the decision to commence the Chapter 11 Cases) shall, or shall be deemed to, release, waive or relinquish any rights, claims or Causes of Action that the Debtors, their Estates, Reorganized IT Group, the Litigation Trust or any other Person may have against any current or former officer, director or insider of any of the Debtors (other than Harry J. Soose, Jr., except to the extent of available director and officer insurance coverage). All of such rights, claims and Causes of Action are reserved and preserved.

13.23    **Binding Effect**

The Plan shall be binding upon and inure to the benefit of the Debtors, the holders of all Claims and Equity Interests, and their respective successors and assigns. To the extent any provision of the Disclosure Statement may be inconsistent with the terms of the Plan, the terms of the Plan shall be binding and conclusive.

13.24   Severability.

SHOULD THE BANKRUPTCY COURT DETERMINE THAT ANY PROVISION OF THE PLAN IS UNENFORCEABLE EITHER ON ITS FACE OR AS APPLIED TO ANY CLAIM OR EQUITY INTEREST OR TRANSACTION, THE PLAN PROPONENTS MAY MODIFY THE PLAN IN ACCORDANCE WITH SECTION 13.15 TO REMEDY SUCH UNENFORCEABILITY. SUCH A DETERMINATION OF UNENFORCEABILITY SHALL NOT (A) LIMIT OR AFFECT THE ENFORCEABILITY AND OPERATIVE EFFECT OF ANY OTHER PROVISION OF THE PLAN OR (B) REQUIRE THE RESOLICITATION OF ANY ACCEPTANCE OR REJECTION OF THE PLAN.

Dated:   February _____, 2004

Respectfully submitted,

Official Committee of Unsecured Creditors
of The IT Group, Inc.

By:_____
        Daniel Arbess
Title:    Co-Chairperson

By:_____
        Murray Hutchison
Title:    Co-Chairperson

The IT Group, Inc.,
as Debtors and debtors-in-possession

By:_____
        Harry J. Soose, Jr.
Title:    Chief Operating Officer

13.24   <u>Severability.</u>

SHOULD THE BANKRUPTCY COURT DETERMINE THAT ANY PROVISION OF THE PLAN IS
UNENFORCEABLE EITHER ON ITS FACE OR AS APPLIED TO ANY CLAIM OR EQUITY INTEREST
OR TRANSACTION, THE PLAN PROPONENTS MAY MODIFY THE PLAN IN ACCORDANCE WITH
SECTION 13.15 TO REMEDY SUCH UNENFORCEABILITY. SUCH A DETERMINATION OF
UNENFORCEABILITY SHALL NOT (A) LIMIT OR AFFECT THE ENFORCEABILITY AND
OPERATIVE EFFECT OF ANY OTHER PROVISION OF THE PLAN OR (B) REQUIRE THE
RESOLICITATION OF ANY ACCEPTANCE OR REJECTION OF THE PLAN.

Dated:   February _____, 2004

                         Respectfully submitted,

                         Official Committee of Unsecured Creditors
                         of The IT Group, Inc.


                         By: _____
                              Daniel Arbess
                         Title:   Co-Chairperson

                         By: _____
                              Murray Hutchison
                         Title:   Co-Chairperson


                         The IT Group, Inc.,
                         as Debtors and debtors-in-possession


                         By: _____
                              Harry J. Soose, Jr.
                         Title:   Chief Operating Officer

13.24    Severability.

SHOULD THE BANKRUPTCY COURT DETERMINE THAT ANY PROVISION OF THE PLAN IS UNENFORCEABLE EITHER ON ITS FACE OR AS APPLIED TO ANY CLAIM OR EQUITY INTEREST OR TRANSACTION, THE PLAN PROPONENTS MAY MODIFY THE PLAN IN ACCORDANCE WITH SECTION 13.15 TO REMEDY SUCH UNENFORCEABILITY. SUCH A DETERMINATION OF UNENFORCEABILITY SHALL NOT (A) LIMIT OR AFFECT THE ENFORCEABILITY AND OPERATIVE EFFECT OF ANY OTHER PROVISION OF THE PLAN OR (B) REQUIRE THE RESOLICITATION OF ANY ACCEPTANCE OR REJECTION OF THE PLAN.

Dated:   February _____, 2004

Respectfully submitted,

Official Committee of Unsecured Creditors
of The IT Group, Inc.

By: _____
           Daniel Arbess
Title:    Co-Chairperson


By: _____
           Murray Hutchison
Title:    Co-Chairperson


The IT Group, Inc.,
as Debtors and debtors-in-possession


By: _____
           Harry J. Soose, Jr.
Title:    Chief Operating Officer

## PLAN EXHIBIT 1

1.   Any claims, rights and causes of action already initiated by the Debtors (including by way of counterclaim or cross-claim) prior to the Effective Date through which the Debtors seek affirmative relief.

2.   Any claims against any person, company or entity that provided or provides insurance to the Debtors for any failure to provide contractual coverage.

3.   Any and all claims under the Debtors' excess coverage insurance policies.

4.   Any and all claims, including claims for contribution, reimbursement or indemnification under any of the Debtors' directors and officers liability policies.

5.   Any and all claims, including claims for contribution, reimbursement or indemnification, under any other policy of insurance, including the Debtors' general liability insurance policies.

6.   Any claims for acts or omissions of the Debtors' (i) present and former officers, directors, insiders and accountants and (ii) prepetition advisors, agents and other professional persons.

7.   Any claims under 11 U.S.C. §§ 510, 542-45, 547-551 and 553, whether such actions are already initiated, to be initiated or initiated subsequent to the Effective Date.

8.   Any other litigation or Causes of Action, whether legal, equitable or statutory in nature, arising out of, or in connection with the Debtors' businesses, assets or operations or otherwise affecting the Debtors, including, without limitation, possible claims against the following types of parties for the following types of claims:

   a.   Possible claims against vendors, customers or suppliers for warranty, indemnity, back charge/setoff issues, overpayment or duplicate payment issues and collections/accounts receivables matters;

   b.   Failure of any persons or parties to fully perform under contracts with the Debtors before the assumption or rejection of the subject contracts;

   c.   Mechanic's lien claims of the Debtors;

   d.   Possible claims for deposits or other amounts owed by any creditor, lessor, utility, supplier, vendor, factor or other person;

   e.   Possible claims for damages or other relief against any party arising out of employee, management or operational matters;

   f.   Possible claims for damages or other relief against any party arising out of financial reporting;

   g.   Possible claims for damages or other relief against any party arising out of environmental and product liability matters; and

      h.      Possible claims against local, state and federal taxing authorities (including, without limitation, any claims for refunds of overpayments).

9.      Any other Causes of Action.

THE PLAN PROPONENTS RESERVE THE RIGHT TO AMEND THIS EXHIBIT TO INCLUDE ADDITIONAL CLAIMS AND CAUSES OF ACTION.  THIS EXHIBIT IS NOT INTENDED TO BE AN EXHAUSTIVE LIST OF THE CLAIMS, CAUSES OF ACTION, SUITS OR PROCEEDINGS, WHETHER IN LAW OR EQUITY, WHETHER KNOW OR UNKNOWN, THAT THE DEBTORS, THEIR ESTATES, SUCCESSORS OR ASSIGNS MAY HOLD AGAINST ANY PERSON, WHICH ARE RETAINED PURSUANT TO THE PLAN

CLAIMS RELEASED PURSUANT TO THE PLAN SETTLEMENT SHALL NOT BE RETAINED.

2

## PLAN EXHIBIT 2

### Executory Contracts and Unexpired Leases
### to be Assumed by the Debtors

At this time, no executory contracts or unexpired leases have been identified in Exhibit 2, but the Plan Proponents reserve the right to identify any such contracts or leases prior to the Confirmation Hearing.

## PLAN EXHIBIT 3

### Executory Contracts to be Assumed and Assigned to the IT Environmental Liquidating Trust[1]

**A.  IT Corporation**

1.  *California Environmental Protection Agency*
    Department of Toxic Substances Control
    8800 Cal Center Drive
    Sacramento, CA  95826-3200
    *Consent Order No. 509105*
    *Stipulation and Order Amending No. 509105*
    Set compliance schedule/corrective actions for all NCS facilities
    *Consent Agreement and Order No. 299190*
    *Stipulation for Entry of Modifications to Consent Agreement and Order No. 299190*
    Set compliance schedule/corrective actions for all NCS facilities
    *Order Specifying Schedule for Compliance or*
    *Correction Docket No. HWCA 85/86-026*
    Set compliance schedule/corrective actions for all NCS facilities

2.  *Contractors State License Board*
    P.O. Box 26999
    Sacramento, CA  95826
    *Contractors License No. 137422*
    Contractors license for construction work at IT Corporation's facilities
    -Annual renewal fees

3.  *Bank of America*
    70 Solano Square
    Benicia, CA  94510
    *Account #010-51-099-62*
    Petty cash imprest balance $8,000.00

4.  *Employees*

    a)   Eric C. Diethelm
         867 Hanlon Way
         Benicia, CA  94510

    b)   Timothy A. Lebel
         164 Mt. View
         Vallejo, CA  94590

---

[1] Nothing contained herein shall be deemed an admission by the Debtors that any contract, lease or other agreement listed on this Exhibit is, in fact, an executory contract or an unexpired lease.  The Debtors specifically reserve their right to argue that (i) any such contract, lease or other agreement is not an executory contract or an unexpired lease and (ii) any such contract, lease or other agreement is severable.

c)    Miguel Martinez
      307 E. Tennessee Street
      Fairfield, CA  94533

d)    Miguel R. Martinez
      1433 Hawaii Street
      Fairfield, CA  94533

e)    Pedro Martinez
      4180 Cadenasso Lane
      Suisun, CA  94585

f)    Barry B. Morris
      89 Breaker Drive
      Pittsburg, CA  94565

g)    Richard R. Swanson
      925 Mulberry Court
      Antioch, CA  94509

h)    Jose Valle
      2376 Fairfield Ave., No. 29
      Fairfield, CA  94533

**B.    Panoche Site**

1.    ***Bay Area Air Quality Management District***
      939 Ellis Street
      San Francisco, CA  94109
      ***Permit to Operate – Plant 186***
      Permit to operate all sources of air emissions at the facility -Annual renewal fees
      ***Authority to Construct 7487***
      Authority to construct and start-up Soil Vapor Extraction System for DBA-V remediation

2.    ***California Environmental Protection Agency***
      Department of Toxic Substances Control
      8800 Cal Center Drive
      Sacramento, CA  95826-3200
      ***Corrective Action Consent Agreement – Docket No. HWCA 96/97-2005***
      ***Corrective Action Consent Agreement Addendum – Docket No. HWCA 96/97-2005A***
      ***First Amendment to Corrective Action Consent Agreement – Docket No. HWCA 96/97-2005***
      Remediation of Drum Burial Area V
      ***Consent Agreement HWCA 94/95-046***
      ***Attachment A Modification of Consent Agreement HWCA 94/95-046***
      Management of onsite generated groundwater
      ***Consent Order HWCA P2-97/98-010***
      Establishment of a Corrective Action Management Unit (CAMU)
      ***Revised Part A Permit CAD000060012***
      Permit for operation of a Hazardous Waste Treatment and Disposal Facility (TSDF)
      ***Post-Closure Permit CAD000060012***
      Permit for post-closure care, groundwater monitoring and corrective action for groundwater contamination

2

3. **Solano County Department of Environmental Management**
   Environmental Health Division
   270 Chadbourne Rd., Suite 200
   Fairfield, CA 94534
   **Solid Waste Permit 38534**
   Annual permit for closed Class I Landfill – Annual renewal fees
   **Land Use Permit R-708**
   Permit authorizing use of land for Class I Disposal and Recycling of Industrial Waste
   **Land Use Permit U-90-30**
   Permit authorizing establishment of borrow area for surface mining for solidifying ponds
   Also allowed construction/placement of Visitor's Center trailer at the facility.
   **Land Use Permit U-91-42, Marsh Development Permit MD-91-06, Reclamation Plan Permit RP-091-03**
   Permits authorizing closure construction activities in the soil borrow areas
   **Grading Permit G2001-076**
   Permit authorizing grading activities for the DBA-V SACS Trench

4. **State of California Department of Conservation**
   Office of Mine Reclamation
   801 K Street, MS 09-06
   Sacramento, CA 95814-3529
   **Mining Operation Annual Report – CA Mine ID#91-48-0008**
   Mining operation annual report for borrow area at the facility – Annual recording fees

5. **State of California Department of Water Resources**
   Division of Safety of Dams
   P.O. Box 942836
   Sacramento, CA 94236-0001
   **Certificate of Approval – Dam No. 449**
   Inspection and maintenance of Pond 2B dam – Annual dam fee

6. **State of California Department of Industrial Relations**
   Division of Occupational Safety and Health
   Pressure Vessel Unit
   P.O. Box 420603
   San Francisco, CA 94142-0603
   **Permit to Operate Air Pressure Tank – State Serial Nos. A001992-96 & A002136-03**
   Permit to operate air pressure tank – Renewal and fees every five (5) years

7. **State Water Resources Control Board**
   1001 I Street
   Sacramento, CA 95814
   **Construction Storm Water General Permit (CSWGP) WDID 248S302593**
   Permit authorizing management of storm water for construction activities associated with
   the final DBA-V remediation work and borrow reclamation.
   **Industrial Storm Water General Permit (ISWGP) WDID 248S017728**
   Permit authorizing management of storm water for industrial activities associated with
   the closed landfill.

8. **Army Corp of Engineers**
   211 Main Street
   San Francisco, CA 94105-1905
   **Nationwide Permit – File 20077E95**
   Permit to construct sedimentation basin/equipment access crossing downgradient of Pond
   2B

9.     *California Regional Water Quality Control Board*
San Francisco Bay Region
1515 Clay Street, 14th Floor
Oakland, CA 94612
*Waste Discharge Requirements (WDRs) 98-091*
Permit authorizes discharge into and management of impacted groundwater in facility's
water management system – Annual Renewal fees

C.     **Vine Hill Complex**

1.     *Acme Fill Corporation*
737 Arnold Drive
Martinez, CA 94553
*Joint Slurry Wall and Security Fence Agreement*
Agreement for access, inspections, repairs and maintenance of joint slurry wall and
security fence – Term of agreement ten (10) years

2.     *Bay Area Air Quality Management District*
939 Ellis Street
San Francisco, CA 94109
*Permit to Operate – Plant 209*
Permit to operate all sources of air emissions at the facility -Annual renewal fees

3.     *California Environmental Protection Agency*
Department of Toxic Substances Control
8800 Cal Center Drive
Sacramento, CA 95826-3200
*Corrective Action Consent Agreement – Docket No. HWCA 95/96-035*
Set compliance schedule/corrective actions
*Consent Order Specifying Schedule for Compliance – Docket No. HWCA 85/86-027*
Operation and monitoring of landfill
*Revised Part A CAD982521460*
Permit for operation of a Hazardous Waste Treatment and Disposal Facility (TSDF)
*Post-Closure Permit CAD982521460*
Permit for post-closure care, groundwater monitoring and corrective action for
groundwater contamination

4.     *California State Lands Commission*
100 Howe Ave., Suite 100-South
Sacramento, CA 95825-8202
*Right-of-Way Lease P4605.1*
Annual rental fee payment for right-of-way lease for 0.036 acre parcel of land for effluent
pipeline bridge – Annual renewal fees

5.     *Central Contra Costa Sanitary District*
5019 Imhoff Place
Martinez, CA 94553
*License Agreement*
License agreement for IT's 5- and 8-inch pipeline across the District's property east of
Vine Hill Site– Annual renewal fees
*Share Right-of-Way*
Shared right-of-way for annual maintenance at the Maltby Railroad crossing –
Annual renewal fees

4

6. *Contra Costa County Health Services -Hazardous Materials Programs*
4333 Pacheco Blvd.
Martinez, CA  94553
*Annual Business Authorization/Permit No. 71-9604*
Permit for hazardous material business plan and hazardous waste generator –
Annual renewal fees

7. *Sonitrol*
P.O. Box 9189
Fresno, CA  93791
*System Nos. C2111, C4125*
Security service for VHC

8. *State of California Department of Industrial Relations*
Division of Occupational Safety and Health
Pressure Vessel Unit
P.O. Box 420603
San Francisco, CA 94142-0603
*Permit to Operate Air Pressure Tank – State Serial Nos. A002129-03*
Permit to operate air pressure tank – Renewal and fees every five (5) years

9. *State Water Resources Control Board*
1001 I Street
Sacramento, CA  95814
*Industrial Storm Water General Permit (ISWGP) WDID 207S010441*
Permit authorizing management of storm water for industrial activities associated with
the closed Landfill

10. *California Regional Water Quality Control Board*
San Francisco Bay Region
1515 Clay Street, 14th Floor
Oakland, CA  94612
*Waste Discharge Requirements (WDRs) 78-76*
Permit authorizes discharge of hazardous wastes into surface impoundments – Annual
Renewal fees
*Waste Discharge Requirements (WDRs) DRAFT*
Permit will supersede existing WDRs to authorize discharge into and management of
impacted groundwater in the facility's water management system – Annual Renewal fees.

11. *Contra Costa County -Community Development Department*
651 Pine Street
Martinez, CA  94553
*Land Use Permit (issued in 1958)*
Permit authorizing use of land to deposit refuse at the Vine Hill Site
*Land Use Permit 120-71*
Permit authorizing use of land to deposit refuse at the Baker Site.

12. *Martinez Gun Club*
900 Waterbird Way
Martinez, CA  94553
*License Agreement*
License agreement between the Martinez Gun Club (adjacent landowner) and IT
authorizing sampling and maintenance of IT's wells on the Gun Club property

D.   Montezuma Site

1.   *Bay Area Air Quality Management District*
     939 Ellis Street
     San Francisco, CA 94109
     *Permit to Operate – Plant 2484*
     Permit to operate all sources of air emissions at the facility
     Annual renewal and fees

2.   *Mayhood, E. Dexter*
     P O Box 155
     Rio Vista, CA 94571
     *License Agreement – Expires December 23, 2004*
     Agreement to maintain and operate five (5) existing monitoring wells located on Mr.
     Mayhood's property – Annual fees

3.   *McCosker, Daryl O.*
     1064 Via Baja
     Lafayette, CA 94549
     *Ground Lease and Option to Purchase Real Property, Dated 6/19/01*
     Ground lease with option to purchase real property in vicinity of facility

4.   *Solano County Department of Environmental Management*
     Environmental Health Division
     601 Texas Street
     Fairfield, CA 94533
     *Land Use Permit U-78-21*
     Permit to establish and operate a Class II-I Rotary Drilling disposal site and to include
     other Class II-I waste disposal
     *Encroachment Permit E-91-121*
     Permit authorizes installation and long-term use/monitoring of three wells on the east side
     of the facility boundary
     *Solid Waste Permit 34093*
     Permit authorizing management of hazardous materials at the closed landfill – Annual
     renewal fees

5.   *State Water Resources Control Board*
     1001 I Street
     Sacramento, CA 95814
     *Industrial Storm Water General Permit (ISWGP) WDID 248S002418*
     Permit authorizing management of storm water for industrial activities associated with
     the closed landfill – Annual renewal fees

6.   *California Environmental Protection Agency*
     Department of Toxic Substances Control
     8800 Cal Center Drive
     Sacramento, CA 95826-3200
     *Revised Part A Permit CAD079089512*
     Permit revised to reflect facility conditions following completion of closure and change
     in facility's mailing address/contact
     *Post-Closure Permit CAD079089512*
     Permit for post-closure care, groundwater monitoring and corrective action for
     groundwater contamination

7. *California Regional Water Quality Control Board*
San Francisco Bay Region
1515 Clay Street, 14th Floor
Oakland, CA 94612
*Waste Discharge Requirements (WDRs) 98-208*
Permit authorizes discharge of impacted groundwater into surface impoundments and long-term monitoring program for closed landfill – Annual fees

E. **Benson Ridge Site**

1. *Lake County Air Quality Management District*
885 Lakeport Blvd.
Lakeport, CA 95453
*Permit to Operate (P/O) 2003-18*
Permit to operate all sources of air emissions at the facility - Annual renewal fees

2. **State Water Resources Control Board**
1001 I Street
Sacramento, CA 95814
*Industrial Storm Water General Permit (ISWGP)– WDID 5A17S000825*
Permit authorizing management of storm water for industrial activities associated with the closed landfill – Annual renewal fees

3. *California Environmental Protection Agency*
Department of Toxic Substances Control
8800 Cal Center Drive
Sacramento, CA 95826-3200
*Revised Part A Permit CAD000633289*
Permit revised to reflect facility conditions following completion of closure and change in facility's mailing address/contact
*Post-Closure Permit CAD000633289*
Permit for post-closure care, groundwater monitoring and corrective action for groundwater contamination

4. *California Regional Water Quality Control Board*
San Francisco Bay Region
1515 Clay Street, 14th Floor
Oakland, CA 94612
*Waste Discharge Requirements (WDRs) 98-047*
Permit authorizes discharge of impacted groundwater into surface impoundments and long-term monitoring program for closed landfill – Annual fees

5. **Lake County Planning Commission**
255 N. Forbes Street
Lakeport, CA 95453
*Land Use Permit Resolution No. 76-65*
Permit allowing land use for a Class 2-1 Geothermal Waste Disposal Site

# EXHIBIT B

## IT ENVIRONMENTAL LIQUIDATING TRUST AGREEMENT

This Liquidating Trust Agreement (the "Agreement") dated as of April 30, 2004 by and among IT Corporation, IT Lake Herman Road LLC, IT Vine Hill LLC (collectively the "Debtors") and Brian Fournier (not individually but solely in his capacity as trustee hereunder) (the "Trustee") is entered into in connection with the Debtors' First Amended Joint Chapter 11 Plan of Reorganization dated February 9, 2004 (the "Plan") filed in the jointly administered chapter 11 bankruptcy cases entitled In re The IT Group, Inc., Case No. 02-10118 (MFW) pending in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

WHEREAS, on or about April 5, 2004, the Bankruptcy Court entered an order confirming the Plan (the "Confirmation Order");

WHEREAS, pursuant to Section 7.10(II) of the Plan, the IT Environmental Liquidating Trust Assets are to be transferred to the IT Environmental Liquidating Trust; or "Trust";

WHEREAS, pursuant to Section 7.10(II) of the Plan, the IT Environmental Liquidating Trust Funding is to be transferred to the IT Environmental Liquidating Trust; and

WHEREAS, the Trustee has agreed to act as the Trustee under this Agreement and to perform as Trustee upon and subject to the terms and conditions set forth in the Plan and herein;

NOW, THEREFORE, in consideration of the premises and mutual covenants and agreements contained herein, the Debtors and the Trustee agree as follows:

## ARTICLE I
## DEFINITIONS

1.1   Defined Terms. All capitalized terms not otherwise defined herein shall have the meanings given them in the Plan. All capitalized terms not otherwise defined in this Agreement or in the Plan shall have the meanings given them in the Bankruptcy Code or Bankruptcy Rules.

# ARTICLE II
# IT ENVIRONMENTAL LIQUIDATING TRUST ASSETS

2.1    Trust Assets:    The IT Environmental Liquidating Trust shall consist of the following assets and liabilities:

(a)    The Post Closure Insurance Policy Assets:  (i) the Post Closure Insurance Policies; (ii) the proceeds from claims paid by the Post Closure Insurance Policies; and (iii) any interest earned on the proceeds from claims paid by the Post Closure Insurance Policies, all subject to rights of the California Department of Toxic Substances Control ("DTSC") under the policies;

(b)    The Properties:  (i) the real property containing the Vine Hill and Panoche sites which are each owned by the LLCs; and (ii) the real property containing the Benson Ridge and Montezuma Hills Landfills which are owned by IT Corporation;

(c)    The Landfill Assets:  (i) all of Debtors' membership interests in the LLCs; (ii) all real property, personal property, equipment, bank accounts, and employees associated with operations of the Landfills; (iii) all other funds obtained by the Debtors from other parties in settlement or resolution of contribution or cost recovery claims of the Debtors with respect to the Landfills; and (iv) all insurance polices held by the LLCs or the IT Environmental Liquidating Trust, all insurance policies held by the Debtors that are associated with the operations of the Landfills, and all proceeds and interest therefrom other than the Post Closure Insurance Policies; (v) all licenses, permits (subject to the Permit Transfer provision set forth in Section 7.10(II) of the Plan) and contracts relating to the Landfills; and (vi) revenues from the operations of the Landfills or development thereon; provided, however, any amounts owed to the Debtors under the Post Closure Insurance Policies that cover work performed at the Landfills that are uncollected as of the Effective Date (as defined in the Plan) belong to the Debtors; and

(d)    The Landfill Liabilities:  (i) all accounts payable arising prior to and after the Effective Date associated with the operations of the Landfills; provided, however, all accounts payable arising from engineering and construction services requested by the Debtors' environmental manager at the Landfills between May 3, 2002 and the Effective Date and provided by The Shaw Group, Inc. ("Shaw") in accordance with that request shall be payable by the Debtors and not the IT Environmental Liquidating Trust; and (ii) all cure obligations associated with the

2

executory contracts and unexpired leases that are assumed by the Debtors and assigned to the IT Environmental Liquidating Trust in accordance with Section 11.1 of the Plan. Nothing herein shall be deemed an admission by the Debtors of the validity and amount of any claim Shaw may have against the Debtors and the Debtors' rights are hereby reserved.

       2.2    <u>Transfer of Property to Trustee</u>.  The Trustee agrees to accept and hold the IT Environmental Liquidating Trust Assets in trust, subject to the terms of the Plan, the Confirmation Order, and this Agreement.

       2.3    <u>Intention of Parties</u>.

       (a)    The parties agree that (i) during the term of the IT Environmental Liquidating Trust, the IT Environmental Liquidating Trust will be a reporting entity for federal income tax purposes under Subpart A of Subchapter J of the Internal Revenue Code.  The parties also agree that (i) the Debtors have released all of their rights, title and interest in, and all benefits from, the IT Environmental Liquidating Trust Assets and (ii) at the termination of the IT Environmental Liquidating Trust, the Trustee is authorized and directed to designate one or more Qualified Charity (as hereafter defined), and unrelated to the Trustee, as the remainder beneficiaries of the IT Environmental Liquidating Trust.

       (b)    For purposes of this Agreement, an organization shall be a "Qualified Charity" if, (i) at the time when the principal or income of the IT Environmental Liquidating Trust is to be distributed to it, it is an organization described in Section 170(b)(1)(A) of the Internal Revenue Code, as amended; (ii) it has a principal objective of the protection of California and Californians from exposure to hazardous materials; and (ii) the Trustee is not an Interested Person (as hereafter defined) with regard to the organization.

       (c)    The term "Interested Person" shall mean either (i) any person that has served as an officer, director, or employee of the organization at any time during the previous five years, (ii) any person that has been compensated  by the organization at any time during the previous five years for services rendered it, whether as a full- or part-time officer or other employee, independent contractor, or otherwise, or (iii) any brother, sister, ancestor, descendant, spouse, brother-in-law, sister-in-law, son-in-law, daughter-in-law, mother-in-law, or father-in-law of any such person.

3

**ARTICLE III**
**USE OF ASSETS, AUTHORITY, LIMITATIONS, AND DISTRIBUTIONS**

3.1     <u>Purposes and Use of Assets</u>.

(a)     The IT Environmental Liquidating Trust is organized for the purpose of providing for the closure and post closure management of the Landfills and liquidating and distributing the proceeds from the IT Environmental Liquidating Trust Assets.

(b)     The Trustee will use funds derived from or constituting the Post-Closure Insurance Policies  for the sole purpose of providing for the closure and post-closure management of the Landfills in accordance with the requirements of environmental law, the Consent Order, the Permits, and the Post-Closure Insurance Policies  ("Environmental Operations");

(c)     The Trustee will use funds derived from or constituting the Landfill Assets for the purposes of administering the IT Environmental Liquidating Trust and, to the extent funds are available beyond those reasonably necessary to provide for the Environmental Operations, may use funds derived from or constituting the Landfill Assets for the purposes of (i) managing, developing, leasing, or marketing the Landfills for the production of revenue primarily for the purpose of ensuring that the IT Environmental Liquidating Trust has sufficient funds for the Environmental Operations; and (ii) pursuing contribution or cost-recovery efforts or claims against any party that is liable or potentially liable for closure at the Landfills; <u>provided</u>, <u>however</u>, that the Trustee shall not use such funds to pursue contribution or cost-recovery efforts or claims against the Debtors, Reorganized IT Group and  the Litigation Trust, if such an action is subject to the injunction described in Section 3.19 of the Plan.

3.2     <u>Restrictions on Use of Post-Closure Insurance Policies</u>.  The IT Environmental Liquidating Trust shall not use the Post-Closure Insurance Policies for the purposes of managing, developing, leasing or marketing the Landfills for the production of revenue unless specifically allowed under the Post-Closure Insurance Policies, and pursuant to the prescribed procedures for modifying the Post-Closure Insurance Policies.

4

3.3     Separate Accounting.  The Post-Closure Insurance Polices and the Landfill Assets shall be accounted for separately in the books of the IT Environmental Liquidating Trust.

3.4     Supervision of Trust.  The IT Environmental Liquidating Trust will be established and administered pursuant to the laws of California and subject to the jurisdiction of the U.S. District Court for the Northern District of California (the "Court").  Nothing in the Plan or the Agreement, or in negotiations leading to the formation of these instruments, shall be construed as a waiver by the State of California, DTSC, or by any other California state agency, departments, board, or commission ("State of California") of Eleventh-Amendment immunity, or as consent to be sued or otherwise compelled to appear in any Federal Court, including the Court and the United States Bankruptcy Court for the District of Delaware.

3.5     Authority of Trustee.  In connection with the administration of the IT Environmental Liquidating Trust, except as otherwise set forth herein, the Trustee is authorized to perform those acts necessary and desirable to effectuate the terms and provisions of the Plan, the Confirmation Order, this Agreement, and the Permits.  The IT Environmental Liquidating Trust shall succeed to all of the rights of the Debtors necessary to protect, maintain, preserve, conserve, operate, manage and liquidate all IT Environmental Liquidating Trust Assets, including but not limited to the enforcement of the Debtors' rights under agreements approved by prior orders of the Northern District of California and rights under prior orders of the Northern District of California.  In that capacity, the IT Environmental Liquidating Trust shall have the power, on behalf of and for the benefit of the IT Environmental Liquidating Trust, to prosecute, defend, compromise, settle and otherwise deal with all IT Environmental Liquidating Trust Assets subject to the terms and conditions of the Agreement, the Plan and the Confirmation Order. Subject to the limitations set forth in this Agreement or the Plan, and in addition to any powers and authority conferred by law, the Trustee may exercise all powers granted him pursuant to Section 7.10(II) of the Plan and herein.

3.6     Books and Records.  The Trustee shall cause to be maintained the books and records it deems necessary for the operation of the IT Environmental Liquidating Trust relating to the assets and income of the IT Environmental Liquidating Trust and the payment of expenses of the IT Environmental Liquidating Trust in such detail and for such period of time as may be necessary to enable him to make full and proper reports in respect thereof and to comply with applicable provisions of law.

5

3.7     Reports.  The Trustee shall prepare and file with the Court semi-annual status reports as  required under Section  7.10(II) of  the Plan, with copies to the DTSC and the United States Trustee, provided, however, that, at least two years after this Agreement becomes effective, and with the prior written approval of the DTSC, the Trustee may file such status reports annually, instead of semi-annually.  The Trustee also shall prepare and file with the Court and DTSC the final accounting required under Section 7.10(II) of the Plan.  Additionally, the Trustee shall prepare and file reports as required under applicable laws or by the Permits.

3.8     Retention of Rights by California.  Nothing in the Plan or this Agreement is intended to be nor shall be construed as a deprivation or waiver by the State of California of its rights and duties as a regulator under the laws of California or the United States, including, without limitation, the Permits, nor affect the State of California's interest, if any, in the Post-Closure Insurance Policies.

3.9     Distributions.

(a)     Prior to Termination, and not more than once each calendar year, the Trustee is authorized to distribute to or apply for the benefit of one or more Qualified Charities, as it may select from time to time (the "Beneficiaries"), and in such proportions as it determines to be in the best interest of the Beneficiaries or any of them, so much or all of (i) the net income of the IT Environmental Liquidating Trust received during the previous calendar year, and (ii) the net proceeds from any sale of the Landfill Assets received in the previous calendar year, provided, however, that before making any such distribution, the Trustee shall retain an amount of net proceeds or net income that enables it to conduct the Environmental Operations at the Landfills to maintain the value of its assets, and to meet claims and contingent liabilities, including funds necessary to meet closure and post-closure maintenance and operation requirements and administrative expenses of the IT Environmental Liquidating Trust.

(b)     The Trustee shall not make a distribution if the Trustee or DTSC determines that, at the time the distribution would occur, the amount to be retained under subdivision (a) of the paragraph equals or exceeds the net income of the IT Environmental Liquidating Trust and net proceeds from the sale of the Landfill Assets for the previous calendar year.  The Beneficiaries shall have no right to seek any distribution of funds if the Trustee or DTSC has determined that no funds are to be distributed.

6

(c)     The Trustee shall notify DTSC in writing of the total amount of any distribution it intends to make pursuant to this section, at least 60 days prior to the distribution.

3.10     Inspection of Books and Records

(a)     The Trustee shall provide to the DTSC, upon request, copies of all non-privileged documents and information within their possession or control or that of their contractors or agents relating to activities at the Landfills, in accordance with the Permits, including, but not limited to, samplings, analyses, chain of custody records, manifests, trucking logs, receipts, reports, and correspondence. The IT Environmental Liquidating Trust does not waive, but retains all rights, claims, and causes of action against all non-governmental third parties which may gain access to the Landfills pursuant to the Plan or otherwise.

(b)     The IT Environmental Liquidating Trust shall preserve and retain all documents or information in their possession or control, or which come into their possession or control, that relate to the Landfills to the extent required by the Permits, the Consent Order, or applicable law, whichever is longer.  The IT Environmental Liquidating Trust shall notify DTSC at least 90 days prior to the dissolution of the Trust, and upon request by the DTSC, shall make available any such documents or information to DTSC.

(c)     Nothing in Section 3.10(a) is intended to, nor shall, limit the rights, if any, of the State of California to inspect the Trust's books and records under federal or state law, or the Permits.


**ARTICLE IV**
**APPLICATION OF THE IT LIQUIDATING**
**ENVIRONMENTAL TRUST ASSETS**

4.1     The Trustee shall hold, maintain, and apply all IT Environmental Liquidating Trust Assets in accordance with the terms of the Plan and this Agreement, including without limitation, in accordance with the terms of Section 7.10(II) of the Plan and Article III of this Agreement.  The Trustee shall retain at all times an amount of net proceeds or net income, if any,  that enables it to conduct the Environmental Operations at the Landfills, to maintain the value of its Assets, and to meet claims and contingent liabilities, including funds necessary to meet closure and post-closure maintenance and

7

operation requirements and administrative expenses of the IT Environmental Liquidating Trust.

## ARTICLE V
## TRUSTEE

5.1   <u>Generally</u>.   The Trustee shall manage the affairs of the IT Environmental Liquidating Trust and, in that capacity, shall exercise all rights, powers and privileges granted to the IT Environmental Liquidating Trust or the Trustee by the Plan, this Agreement, or otherwise enjoyed by the IT Environmental Liquidating Trust. The Trustee's powers are exercisable solely in a fiduciary capacity consistent with, and in furtherance of, the purposes of the Plan, the Confirmation Order, this Agreement and the Permits.  The Trustee may retain the services of attorneys, accountants, consultants and other agents, in the business judgment of the Trustee, to assist and advise the Trustee in the performance of his duties under the IT Environmental Liquidating Trust.
.

5.2   <u>Duties and Powers of Trustee</u>.   Subject to the limitations of use of the Post-Closure Insurance Policies set forth in Paragraph 3.2 of this Agreement, the Trustee shall have the following duties and powers with respect to operation of the Trust, the Landfills, and the Environmental Liquidating Trust Assets and liabilities:

(a)   To exercise all power and authority that may be or could have been exercised; to commence all proceedings or actions that may be or could have been commenced; and to take all actions that may be or could have been taken by any officer, partner, employer, director, employee, shareholder, agent, or representative of the Debtors, with like effect as if authorized, exercised and taken by unanimous action of the officers, directors and shareholders of the Debtors;

(b)   To open and maintain bank accounts on behalf of or in the name of the IT Environmental Liquidating Trust, or such other name under which the Trustee may choose to do business; to calculate and make Distributions and take other actions consistent with the Plan and the implementation hereof, including the establishment, reevaluation, adjustment and maintenance of appropriate reserves; the designation of funds for specified purposes; the formation or dissolution of subsidiaries; the issuance of equity and interests in debt;  to take any such actions as may be required to comply with or to effectuate the terms, conditions, and obligations set forth in the Permits, the Plan, the Confirmation Order, and this Agreement, all in the name of the IT Environmental Liquidating Trust; and to take any action necessary to preserve the integrity and condition of the IT Environmental Liquidating Trust Assets;

8

(c)     To receive, hold legal title to, collect, use, spend, invest, conserve, protect, sell, transfer, abandon, bring suit upon or otherwise manage the IT Environmental Liquidating Trust Assets, and to enter into contracts on behalf of the IT Environmental Liquidating Trust;

(d)     To object to ongoing Landfill Liabilities and to supervise and administer the resolution, settlement and payment of such Landfill Liabilities and any remaining Distributions to Persons in accordance with the Plan and this Agreement. The Trustee may pursue, litigate, compromise or settle any Claim (disputed or otherwise), free of any restrictions other than those restrictions expressly imposed by the Plan, the Confirmation Order, or this Agreement;

(e)     To exercise such rights of setoff or recoupment, subornation, indemnification or contribution as the Debtors or the Estate may have had against any Person regarding the IT Environmental Trust Assets or liabilities, and/or seek Bankruptcy Court or Court approval of such exercise;

(f)     To voluntarily engage in arbitration or mediation with regard to any dispute or Claim;

(g)     To make decisions regarding the retention or engagement of professionals, employees, consultants, or other persons, by the IT Environmental Liquidating Trust and to pay, from the IT Environmental Liquidating Trust Assets, the reasonable fees and costs incurred by the IT Environmental Liquidating Trust, without application to the Court;

(h)     To (i) seek a determination of tax liability under Section 505 of the Bankruptcy Code; (ii) to file, if necessary, any and all tax and information returns required with respect to the IT Environmental Liquidating Trust; (iii) to make tax elections by and on behalf of the IT Environmental Liquidating Trust; and (iv) to pay taxes, if any, owed by the IT Environmental Liquidating Trust;

(i)     To pay all lawful expenses, debts, costs, and liabilities of the IT Environmental Liquidating Trust, including payments to government agencies related to permitting, compliance, and enforcement matters;

(j)     To take all other actions consistent with the provisions of the Plan that the Trustee deems reasonably necessary or desirable to administer and otherwise implement the terms of the Plan, the Confirmation Order and this Agreement;

(k)     To withhold from the amount of Landfill Assets or income or proceeds generated by the Landfill Assets distributable to any Person under the Plan, such amount as may be sufficient to pay any tax or other charge which the Trustee has determined, in his sole discretion, may be required to be withheld therefrom under the income tax laws of the United States or of any state or political subdivision thereof.  In the exercise of his sole discretion and judgment, the  Trustee may enter into agreements with taxing or other governmental authorities for the payment of such amounts as may be withheld in accordance with the provisions of this subparagraph;

(l)     To invest Cash as deemed appropriate by the Trustee in cash equivalents, and in no event including or deriving from the Post-Closure Insurance Policies; provided, however, that notwithstanding that the IT Environmental Liquidating Trust will be a reporting entity for federal income tax purposes under Subpart A of Subchapter J of the Internal Revenue Code, the scope of any such permissible investments shall be limited to include only those investments, or shall be expanded to include any additional investments, as the case maybe, that a "liquidating trust", within the meaning of Treasury Regulation Section 301.7701-4(d), may be permitted to hold, pursuant to the Treasury Regulations, or any modification in the IRS guidelines, whether set forth in IRS rulings, other IRS pronouncements or otherwise;

(m)     To hold title to any investment in the name of the IT Environmental Liquidating Trustee or in a nominee name;

(n)     To collect or liquidate any IT Environmental Liquidating Trust Assets;

(o)     To enter into an agreement or to execute any document required by or consistent with the Plan, the Confirmation Order, this  Agreement, or the Permits, and to perform all obligations thereunder;

(p)     To abandon IT Environmental Liquidating Trust Assets in any commercially reasonable manner that is consistent with environmental laws and the Permits, including abandonment of the Landfills or donation to a charitable organization of its choice, if it is concluded such IT Environmental Liquidating Trust Assets are of no benefit to the IT Environmental Liquidating Trust; provided, however, that abandonment of the Landfills will be subject to the approval of the DTSC and other regulatory authorities with jurisdiction.  Any abandonment must comply with the provisions of the Permits or Section 554 of the United States Bankruptcy Code (11 USC § 554) and any other or future statutes, permits or regulations of a governmental authority that apply;

(q)     To have the exclusive power on behalf of the IT Environmental Liquidating Trust to file, prosecute and/or settle all litigation claims (including, without limitation, all contribution or cost recovery claims against third parties with respect to the Landfills); to exercise, participate in, or initiate any proceeding before any court of appropriate jurisdiction, to participate voluntarily as a party or otherwise in any administrative, arbitrative or other nonjudicial proceeding; and to seek cost recovery or contribution against any third party with respect to the Landfills through any other means in addition to prosecution or litigation.  The Trustee shall provide thirty days' notice to DTSC before seeking cost recovery or contribution against any third party with respect to the Landfills. The Trustee shall provide thirty days' notice to DTSC before settling such claim or submitting a proposed settlement for judicial approval, or seven days' notice after judicial resolution of a claim that is not settled;

(r)     To hold, in accordance with this Agreement, the Confirmation Order, and the Plan, any unclaimed Distributions or payments to a Beneficiary or other Person;

(s)     To purchase and to carry all insurance policies, and to pay all insurance premiums and costs in accordance with federal or state law, or with the Permits; and to purchase and to carry all insurance policies, and to pay all insurance premiums and costs deemed necessary or advisable by the Trustee in his sole discretion;

(t)     To obtain additional funding and/or to enter into any management agreements that the Trustee deems necessary to effectuate the terms of the Plan, the Confirmation Order, this Agreement, and the Permits;

(u)     To provide for the Environmental Operations;

(v)     To have exclusive power, on behalf of the Trust,  to manage, develop, lease, or market the Landfills in a commercially reasonable manner for the production of revenue;

(w)     To establish annual budgets and work schedules for Environmental Operations;

(x)     To prepare and to file all required plans and reports with DTSC or other regulatory agencies;

(y)     To provide, directly or through one or more contractors,

11

management services, including accounting, public relations, procurement and oversight of third-party vendors such as laboratories, engineers, construction contractors, material suppliers, and legal advisors;

        (z)      To make claims under the insurance policies;

        (aa)      To maintain on-site staff at the Landfills capable of performing site operations;

        (bb)      To do any and all other acts and to employ such persons as the Trustee shall deem proper to effectuate the purposes hereof; and

        (cc)      To value any transferred property for federal income tax purposes.

        5.3      <u>Liability and Indemnification of Trustee</u>. The Trustee, acting in such capacity, shall not be personally liable in connection with any act or omission except for such acts or omissions as shall constitute fraud, gross negligence, wilfull conduct or intentional breach of the Plan, Confirmation Order or this Agreement, and shall be entitled to, if eligible for, the protection of 42 U.S.C. § 9607(n) and similar State statutes, including but not limited to California Health and Safety Code section 25548.3. The Trustee shall be indemnified by the IT Environmental Liquidating Trust from the IT Environmental Liquidating Trust Assets, including any insurance maintained by the IT Environmental Liquidating Trust that is available for such purpose, to the maximum extent permitted by applicable law, from any losses, claims, damages, liabilities or expenses (including without limitation, reasonable attorneys' fees, disbursements, and related expenses) (collectively, "Expenses") which he may incur in connection with any action, suit, proceeding, or investigation (collectively "Action") brought or threatened against him in his capacity as Trustee; <u>provided, however</u>, that the IT Environmental Liquidating Trust need not indemnify (but shall be required to defend unless and until such findings have already been made by a court) the Trustee in respect of any Action relating to matters in which the Trustee has been found to have engaged in acts or omissions constituting fraud, gross negligence, or intentional breach of the Plan, Confirmation Order or the IT Liquidating Trust Agreement. If the Trustee incurs or becomes subject to any Expenses in connection with any such Action, the IT Environmental Liquidating Trust shall advance to the Trustee, or otherwise promptly reimburse the Trustee, for such Expenses; <u>provided, however</u> that the Trustee shall be required to execute an undertaking promising to promptly repay to the IT Environmental Liquidating Trust the amount of any such advanced or reimbursed Expenses paid to him to the extent it shall be ultimately determined by the Court that the proximate cause for

such Expenses was the Trustee's fraud, gross negligence, or intentional breach of the Plan, Confirmation Order or IT Liquidating Trust Agreement.

       5.4    Reliance By Trustee.  The Trustee may rely upon, and shall be protected in acting upon, any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document believed by the Trustee in good faith to be genuine and to have been signed or presented by the proper party or parties. The Trustee may consult with legal counsel to be selected by him, and the Trustee shall not be liable for any action he takes or omits to take in accordance with the advice of such counsel.

       5.5    Expense Reimbursement and Compensation.

       (a)    Subject to the limitations of use of the Post-Closure Insurance Policies  set forth in Paragraph 3.2 of this Agreement, the Trustee shall be entitled to reimburse itself from time to time out of any available cash that is part of the IT Environmental Liquidating Trust  for reasonable costs and expenses (including reasonable attorneys' fees and expenses) and against and from all loss, liability, expense, or damage which the Trustee may sustain in good faith and without willful misconduct, gross negligence, or fraud in the exercise and performance of any of the powers and duties of the Trustee under this Agreement.

       (b)    As consideration for the performance of his duties as Trustee, the Trustee shall be entitled to receive reasonable compensation and benefits, including (i) an annual salary of $120,000, subject to a 3.5% increase January 1 of each year ("Base Salary"), with the first such increase occurring on January 1, 2005 and being prorated according to the number of months the Trustee has served out of the previous 12 months; (ii) a benefits package  similar to that offered by IT Corporation prior to bankruptcy; (iii) four weeks of paid vacation, on an accrual basis; and (iv) maintenance of a $250,000 term life insurance policy and appropriate liability insurance, with all premiums to be paid by the IT Environmental Liquidating Trust. In addition to the Base Salary, the Trustee shall receive as additional compensation on January 1, 2006, and on each anniversary thereafter, 12.5% of the net proceeds generated by the Landfills during the previous year.

       (c)    If  the Trustee position becomes vacant, the Court may modify the consideration for the performance of the Trustee's duties prior to appointing a Successor Environmental Liquidating Trustee under Section 5.7 of this Agreement. The Court shall consider recommendations, if any, submitted by the previous Trustee, or by DTSC,  when determining reasonable compensation.

(d)      In the event cash derived from the Landfill Assets shall be insufficient to compensate and reimburse the Trustee for any amounts to which he is entitled hereunder, the Trustee is hereby authorized, after thirty (30) days' notice to the DTSC, to reduce to cash that portion of the Landfill Assets necessary so as to effect such compensation and reimbursement, in accordance with environmental laws and the Permits.

(e)      The reasonable  fees  and expenses incurred after the Effective Date of any and all third-party contractors and professionals (including, without limitation, legal counsel and other agents or advisors) retained by the Debtors or the Trustee in connection with the implementation of the Plan and the fulfillment of their respective duties under this Agreement shall be (i) deemed an expense of the IT Environmental Liquidating Trust and (ii) promptly paid by the Trustee in accordance with this Agreement and, where applicable, the Permits and the Post-Closure Insurance Policies.

5.6      Bond.  The Trustee shall serve without bond.

5.7      Resignation and Succession of Trustee.  The IT Environmental Liquidating Trustee may resign at any time upon sixty (60) days' written notice, filed with the Court and delivered to (i) counsel for the IT Environmental Liquidating Trust, (ii) the United States Trustee, and (iii) the DTSC. Such resignation may become effective prior to the expiration of such sixty (60) day notice period upon Court appointment of a permanent or interim successor to the Trustee.  The Trustee may be removed by the Court upon application by DTSC based only upon negligence or fraud shown.  In the event the Trustee position becomes vacant, the Trustee vacancy shall be filled by the Court based upon recommendations submitted by the DTSC.  Upon appointment, the Successor IT Environmental Liquidating Trustee, without any further act or notice being required, shall become fully vested with all of the rights, powers, duties, and obligations of the former IT Environmental Liquidating Trustee.

## ARTICLE VI
## TERMINATION OF TRUST

6.1      Termination of the IT Environmental Liquidating Trust.  The IT Liquidating Trust will terminate on the earliest to occur of (i) the 30-year anniversary of the Effective Date; or (ii) notification of the Court by the Trustee's filing of a statement averring that the IT Environmental Liquidating Trust lacks the necessary assets to continue its existence; provided, however, that, the Trustee shall provide the

DTSC at least six (6) months' notice prior to such termination and provided that on or before the date that is three (3) months prior to such termination, the Court, upon its own motion or motion by the Trustee or the DTSC, may extend the term of the IT Environmental Liquidating Trust so that all closure and post-closure activities will be completed in accordance with the requirements of environmental law, the Consent Decree and the Permits. A motion to extend the term of the IT Environmental Liquidating Trust brought by the Trustee shall be served on the DTSC in accordance with Court rules. Notwithstanding the foregoing, (i) multiple extensions can be obtained provided that Court approval is obtained at least three (3) months prior to the expiration of each extended period (including any bridge extensions pending a hearing on the merits), and (ii) the term of this Agreement shall be extended in the manner provided in this Section and with the approval of the Court if the Environmental Operations have not been completed.

## ARTICLE VII
## AMENDMENT AND WAIVER

7.1   <u>Amendment and Waiver</u>.  This Agreement may not be amended, modified, or supplemented, and no provision hereof or rights hereunder may be waived, except in writing and with the written consent of the Trustee and DTSC or upon order of the Court.

## ARTICLE VIII
## MISCELLANEOUS PROVISIONS

8.1   <u>Governing Law</u>.  This Agreement shall be governed by and construed in accordance with the laws of the State of California, without giving effect to rules governing the conflict of laws.

8.2   <u>Retention of Jurisdiction</u>.  Notwithstanding the Effective Date, the Bankruptcy Court shall retain jurisdiction over the IT Environmental Liquidating Trust in accordance with the Plan, and consistent with Section 3.4 of this Agreement. Each party to this Agreement hereby irrevocably consents to the jurisdiction of the Bankruptcy Court in any action to enforce, interpret, or construe any provision of this Agreement.

8.3   <u>Severability</u>.  In the event any provision of this Agreement or the application thereof to any Person or circumstance shall be determined to be invalid or

15

unenforceable to any extent, the remainder of this Agreement, or the application of such provision to Persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Agreement shall be valid and enforced to the fullest extent permitted by law.

       8.4    <u>Third-Party Beneficiaries</u>.  Except for the Beneficiaries or as specifically stated herein, nothing in this Agreement is intended to confer upon any Person that is not a party hereto any rights or remedies hereunder.

       8.5    <u>Further Assurances</u>.  From and after the Effective Date, the parties hereto covenant and agree to execute and deliver all documents and notices and to take all such further actions as may reasonably be required from time to time to carry out the intent and purposes of this Agreement, the Plan and the Confirmation Order, and to consummate the transactions contemplated thereby.

       8.6    <u>Integration Clause</u>.  This Agreement constitutes the complete agreement of the parties hereto with respect to the subject matter hereof and supersedes all prior or contemporaneous negotiations, promises, covenants, agreements, or representations. This Agreement is intended to be, and shall be treated as, an integral part of the Plan.

       8.7    <u>Successors, Assigns, etc</u>.  The terms of this Agreement shall be binding upon, and shall inure to the benefit of, the parties hereto and their respective successors and assigns.

       8.8    <u>Headings</u>.  The section headings contained in this Agreement are solely for convenience, and shall not affect the meaning or interpretation of this Agreement or of any term or provision hereof.

       8.9    <u>Counterparts</u>.  This Agreement may be signed by the parties hereto in counterparts, which, when taken together, shall constitute one and the same document.

IN WITNESS WHEREOF the parties hereto have either executed and acknowledged this Agreement, or caused it to be executed and acknowledged on their behalf by their duly authorized officers, all as of the date first above written.

> IT Corporation
> IT Lake Herman Road LLC
> IT Vine Hill LLC

Dated: _____   By_____

> Authorized Representative


> IT Environmental Liquidating Trust


Dated: _____   By_____
> Brian Fournier
> Trustee

## FIRST AMENDMENT OF THE

## IT ENVIRONMENTAL LIQUIDATING TRUST AGREEMENT

        This first Amendment ("Amendment") dated as of December **6**, 2004 to the IT Environmental Liquidating Trust Agreement originally executed April 30, 2004 (the "Agreement") by and among, Brian Fournier (not individually but solely in his capacity as trustee under the Agreement) (the "Trustee"), Sunil S. Kishnani (not individually but solely in his capacity as a successor trustee under the Agreement) ("Successor Trustee") and the California Department of Toxic Substances Control ("DTSC"), as the California administering agency, is entered into in connection with the Debtors' First Amended Joint Chapter 11 Plan of Reorganization dated February 9, 2004 (the "Plan") filed in the jointly administered chapter 11 bankruptcy cases entitled In re The IT Group, Inc. et. al., Jointly Administered Under Case No. 02-10118 (MFW) pending in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

        WHEREAS, on or about April 5, 2004, the Bankruptcy Court entered an order confirming the Plan (the "Confirmation Order");

        WHEREAS, pursuant to Chapter 7.10(11) of the Plan, the IT Environmental Liquidating Trust Assets are to be transferred to the IT Environmental Liquidating Trust or ("Trust");

        WHEREAS, pursuant to Chapter 7.10(11) of the Plan, the IT Environmental Liquidating Trust Funding is to be transferred to the Trust; and

        WHEREAS, the Trustee has agreed to act as the Trustee under this Agreement and to perform as Trustee upon and subject to the terms and conditions set forth in the Plan and the Agreement;

        WHEREAS, the Trustee seeks to resign pursuant to the terms and conditions of Section 5.7 of the Agreement;

        WHEREAS, the Trustee has caused to be filed in the United States Bankruptcy Court, District of Delaware ("Court") a Motion to Withdraw as Trustee and such Court ordered said withdrawal in an Order dated December **6**, 2004

        WHEREAS, the Court ordered the appointment of Sunil S. Kishnani as the Successor Trustee pursuant to the terms of Section 5.7 of the Agreement, based upon the recommendation from the DTSC, as the administering agency;

        WHEREAS, Sunil S. Kishnani has agreed to accept said appointment and agrees to oversee the Trust under the conditions and terms of the Agreement;

NOW, THEREFORE, in consideration of the premises and mutual covenants and agreements contained in the Agreement, the Trustee, the Successor Trustee and the DTSC agree as follows:

## ARTICLE I
## TRANSFER OF TRUSTEE AUTHORITY

1.1    Upon approval by the Court, the Trustee hereby resigns as trustee under the Agreement.

1.2    Upon approval by the Court, the Successor Trustee hereby agrees to assume the duties and responsibilities of trustee under the Agreement. As the trustee, Successor Trustee hereby agrees to comply with the terms and conditions of the Agreement and the Plan.

1.3    DTSC has recommended that the Successor Trustee serve as trustee under the Agreement and hereby approves this Amendment.

IN WITNESS WHEREOF the parties hereto have either executed and acknowledged this Amendment to the Agreement, or caused it to be executed and acknowledged on their behalf by their duly authorized officers, all as of the date first above written.

Trustee

By _____
Brian Fournier

Dated: DECEMBER 6 2004

Successor Trustee

By _____
Sunil S. Kishnani

Dated: December 6, 2004

California Department of Toxic Substances Control

By _____
Title: _____

Dated: _____

2

# EXHIBIT C

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - x
| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| THE IT GROUP, INC., <u>et al.</u>, | : | Case No. 02-10118 (MFW) |
| | : | |
| Debtors. | : | Jointly Administered |
| | : | |
- - - - - - - - - - - - - - - - - - - - - - - - - x   Related to Docket No. 4812

## ORDER CONFIRMING THE FIRST AMENDED JOINT CHAPTER 11 PLAN FOR THE IT GROUP, INC. AND ITS AFFILIATED DEBTORS PROPOSED BY THE DEBTORS AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS

The IT Group, Inc. ("IT Group"), as debtors and debtors in possession

(collectively, with IT Group, the "Debtors") and the Official Committee of Unsecured Creditors

(the "Committee," and together with the Debtors, the "Plan Proponents") appointed in the

Debtors' above-captioned chapter 11 cases (collectively, the "Chapter 11 Cases") having

proposed and filed their First Amended Joint Chapter 11 Plan for The IT Group, Inc. and its

Affiliated Debtors Proposed By the Debtors and the Official Committee of Unsecured Creditors

dated February 9, 2004 (as modified to the extent set forth herein, the "Plan");[1] and the United

States Bankruptcy Court for the District of Delaware (the "Court") having conducted a hearing to

consider confirmation of the Plan on March 29, 2004 (the "Hearing"); and the Court having

considered the testimony at the Hearing of Harry J. Soose, Jr., the Debtors' Chief Operating

Officer (the "Soose Testimony"), and Meade A. Monger (the "Monger Testimony") of

AlixPartners LLC, the Committee's bankruptcy claims specialists and advisors ("AlixPartners");

and the Court having considered the Revised Affidavit of Kathleen M. Logan Certifying Voting

---

[1]    All capitalized terms not otherwise defined herein shall have the respective meanings
ascribed to such terms in the Plan.

and Tabulation of Ballots Accepting and Rejecting the First Amended Disclosure Statement
Pursuant to Section 1125 of the Bankruptcy Code with respect to the First Amended Joint
Chapter 11 Plan for The IT Group, Inc. and its Affiliated Debtors Proposed by the Debtors and
the Official Committee of Unsecured Creditors dated March 29, 2004 (Docket No. 4886) (the
"Logan Affidavit") by Logan & Company, Inc., the Debtors' solicitation and tabulation agent
(the "Tabulation Agent"); and the Court being familiar with the Plan and other relevant factors
affecting these jointly administered Chapter 11 Cases pending under chapter 11 of title 11 of the
United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"); and the Court having
taken judicial notice of the record of these Chapter 11 Cases with respect to confirmation of the
Plan, including, without limitation, the Plan, the First Amended Disclosure Statement Pursuant to
Section 1125 of the Bankruptcy Code With Respect to the Plan dated February 9, 2004 (the
"Disclosure Statement"), the exhibits to the Plan and the Disclosure Statement, the Plan
Documents filed with the Court, and the order of the Court dated February 11, 2004 (the
"Approval Order") approving the Disclosure Statement, scheduling a hearing to consider
confirmation of the Plan, setting the voting deadline with respect to the Plan, setting the last day
for filing objections to the Plan, prescribing the form and manner of notice thereof, and
approving the form of Ballots and proposed solicitation and tabulation procedures; and the Court
having found that due and proper notice has been given with respect to the Hearing and the
deadlines and procedures set forth in the Approval Order; and after consideration of the various
objections to the Plan (the "Objections") filed by certain of the Debtors' creditors and other
parties in interest (collectively, the "Objecting Parties"); and the appearances of the Objecting
Parties at the Hearing having been duly noted on the record of the Hearing; and based upon the
entire record of the Hearing, the evidence presented by the Plan Proponents in support of

MIAMI 461067 v5 (2K)

2

confirmation of the Plan, and the statements and arguments of counsel made at the Hearing; and

after due deliberation and sufficient cause appearing therefor;

      IT IS HEREBY FOUND, CONCLUDED, ORDERED, ADJUDGED, AND
DECREED, AS FOLLOWS:[2]

## FINDINGS OF FACT:

### I.    JURISDICTION

    A.    The Court has jurisdiction to conduct the Hearing and to confirm the Plan

pursuant to 28 U.S.C. § 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408

and 1409.

    B.    Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b), and

this Court has jurisdiction to enter a final order with respect thereto.

    C.    The Debtors are proper debtors under section 109 of the Bankruptcy Code.

    D.    The Debtors and the Committee are proper proponents of the Plan under section

1121 of the Bankruptcy Code.

### II.    MODIFICATIONS TO THE PLAN

    E.    At or before the Hearing, the Plan Proponents received written Objections to

confirmation of the Plan by the following Objecting Parties: (i) Accardi Plaintiffs and Rochelle

Bookspan, (ii) AMTRAK Corporation, (iii) Arctic Slope, Inc., (iv) ATOFINA Petrochemicals,

Inc., (v) Guillermo Barrientos, Joyce Barrientos and Christina Alfaro, (vi) California Department

of Toxic Substance Control, the Central Valley Regional Water Quality Control Board, the

---

[2]    The Findings of Fact and Conclusions of Law contained herein constitute the findings of
fact and conclusions of law required to be entered by this Court pursuant to Rule 52 of the
Federal Rules of Civil Procedure, as made applicable herein by Rules 7052 and 9014 of the
Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

Central Coast Regional Water Quality Board and the San Francisco Regional Water Quality Control Board, (vii) Consolidated City of Indianapolis, (viii) Conestoga-Rovers & Associates, Inc. ("Conestoga-Rovers"), (ix) Crompton Corporation, (x) Roger L. Halley, Co-Trustee, Judith A. Halley Trust No. 1 uad 7/11/96, (xi) Lockheed Martin Corporation, (xii) State of New Jersey, Department of Environmental Protection, (xiii) Occidental Chemical Corporation, (xiv) Potter Anderson & Corroon LLP, (xv) PPG Industries, Inc. ("PPG"), (xvi) Southeastern Pennsylvania Transportation Authority, (xvii) Southwestern Bell Telephone Company, L.P., (xviii) Staro Asset Management, LLC, (xix) The Comptroller of Public Accounts of the State of Texas ("Texas Comptroller"), (xx) The Shaw Group, Inc. ("Shaw"), (xxi) US Bancorp Equipment Finance, Inc., (xxii) The United States of America, on behalf of the United States Environmental Protection Agency, (xxiii) Roberta A. DeAngelis, Acting United States Trustee for Region 3, and (xxiv) Weston Solutions, Inc., f/k/a Roy F. Weston, Inc. In addition, the Plan Proponents advised the Court at the Hearing that they had received an informal Objection to confirmation of the Plan by the United States Securities and Exchange Commission (the "SEC").

F.     At the Hearing, the Plan Proponents proposed certain technical modifications to the Plan (the "Modifications") as set forth below:

G.     Insert a new paragraph after Section 1.1(d) as follows:

(d)(i)  "ADR Administrator" means the Litigation Trust Trustee.

H.     The definition of "Available Proceeds" in Section 1.1(i) of the Plan is modified by including at the end of such definition the following additional language: "at any time Allowed in accordance with the Plan."

I.     The following definitions in Section 1.1 of the Plan are modified and replaced in their entirety with the following:

MIAMI 461067 v6 (2K)                                4

(x)    "Committee Designee" means Murray H. Hutchison or
such other Person selected by the Committee (or, as otherwise set
forth in the Plan or the by-laws adopted by the Oversight
Committee) to serve as a member of the Oversight Committee
from and after the Effective Date.

(sss)   "Lender Designees" means Cargill Financial Services Corp.
and Citadel Investment Group L.L.C., or such other Persons
selected by the Agent (on behalf of the Prepetition Lenders) to
serve as members of the Oversight Committee from and after the
Effective Date.

(kkkk) "Oversight Committee" means the committee comprised of
three members (which number may not be increased), consisting of
the Committee Designee and the Lender Designees, which shall
oversee the administration and implementation of the Plan and the
liquidation of the Debtors' Assets in accordance with the Plan.

J.      The definition of "Non-Lender Secured Claim" in Section 1.1(eeee)(ii) of the Plan

is hereby modified by deleting the words "recoupment or."

K.      Section 4.1(b)(iv) of the Plan is modified and replaced in its entirety with the

following: "if such Allowed Non-Lender Secured Claim is secured by a valid right of setoff,

such Claim shall be setoff to the extent of the amount subject to such setoff in accordance with

sections 506(a) and 553 of the Bankruptcy Code."

L.      Section 5.1(c) of the Plan is hereby modified by deleting "without notice or a

hearing" at the end of the first sentence of such section.

M.      Section 7.7 of the Plan is modified by (a) replacing the first sentence of Section

7.7 in its entirety with the following: "On the Effective Date, the Oversight Committee shall be

formed, which Committee shall be comprised of three (3) members (which number may not be

increased), consisting of the Committee Designee and the Lender Designees; provided, however,

that the Lender Designees, collectively, shall be treated as one member of the Oversight

Committee for all purposes under the Plan (including, but not limited to, with respect to voting

and the Oversight Committee Compensation)"; and (b) replacing the third sentence in Section 7.7 in its entirety with the following: "Oversight Committee decisions shall be made with the approval of the Committee Designee and the Lender Designees."

N.      Section 7.10(II) of the Plan is modified by (a) removing "with the DTSC" from the first sentence and (b) including at the end of such section the following additional language: "Notwithstanding any provision of this Plan, the United States retains all of its access authorities and rights, including enforcement rights related thereto, with respect to the Landfills. Nothing in this Section 7.10(II) is intended to be nor shall it be construed as a deprivation or waiver by the United States Environmental Protection Agency of any rights or duties as a regulator under the laws of the United States with respect to the Landfills."

O.      Article XII of the Plan is modified by deleting the word "exclusive" in the first paragraph and by including at the end of such article the following additional language: "Nothing in this Article shall preclude any other tribunal with jurisdiction from exercising its jurisdiction in any action brought by a United States environmental governmental unit, a California state environmental governmental unit, and/or a New Jersey state environmental governmental unit. Notwithstanding the Bankruptcy Court's retention of jurisdiction as set forth in this Article, the IT Environmental Liquidating Trust also shall be subject to the jurisdiction of the Northern District of California."

P.      Section 13.2, entitled "Discharge of the Debtors," is deleted in its entirety.

Q.      Section 13.17 of the Plan is modified by deleting the following language: "(and any payments or other Distributions to be made in respect of such Claim hereunder)."

R.      Section 13.19 is modified in its entirety and replaced with the following:
        Except as otherwise expressly provided in the Plan, all Persons or

entities who have held, hold, or may hold Claims or Equity
Interests are permanently enjoined, from and after the Effective
Date, from (a) commencing or continuing in any manner any action
or other proceeding of any kind on any such Claim or Equity
Interest against any of the Debtors, their Estates, Reorganized IT
Group, the IT Environmental Liquidating Trust, the IT
Environmental Liquidating Trustee, the Litigation Trust, the
Litigation Trust Trustee, or the Assets, or against the property or
interests in property of any of the Debtors, their Estates,
Reorganized IT Group, the IT Environmental Liquidating Trust or
the Litigation Trust, (b) the enforcement, attachment, collection or
recovery by any manner or means of any Claims and/or Equity
Interests, or any judgment, award, decree or order with respect to
any Claims and/or Equity Interests, against any of the Debtors,
their Estates, Reorganized IT Group, the IT Environmental
Liquidating Trust, the IT Environmental Liquidating Trustee, the
Litigation Trust, the Litigation Trust Trustee, or the Assets, , or
against the property or interests in property of any of the Debtors,
their Estates, Reorganized IT Group, the IT Environmental
Liquidating Trust or the Litigation Trust, (c) creating, perfecting, or
enforcing any encumbrance of any kind against any of the Debtors,
their Estates, Reorganized IT Group, the IT Environmental
Liquidating Trust, the IT Environmental Liquidating Trustee, the
Litigation Trust, the Litigation Trust Trustee, or the Assets, or
against the property or interests in property of any of the Debtors,
their Estates, Reorganized IT Group, the IT Environmental
Liquidating Trust or the Litigation Trust, and (d) asserting any
right of ~~set off or~~ subrogation of any kind against any obligation
due from any Debtor or against the property or interests in property
of any Debtor, with respect to any such Claims or Equity Interests;
provided however, that the foregoing shall not affect the rights of a
party that were obtained pursuant to a Final Order of the
Bankruptcy Court granting limited relief from the automatic stay
under section 362(d) of the Bankruptcy Code.  Nothing in this
Section 13.19 shall enjoin the exercise of any police or regulatory
power by a United States environmental governmental unit, a
California state environmental governmental unit or a New Jersey
state environmental governmental unit with respect to any
environmental Claim that arises after the Effective Date.

S.     Section 13.22 of the Plan is modified by deleting the last parenthetical at the end

of the first sentence and replacing it with the following: "(other than Causes of Action of the

Debtors against Harry J. Soose, Jr., except to the extent of available director and officer

MJAMI 461067 v6 (2K)                            7

insurance coverage, in any action brought by, or on behalf of, the Debtors, the Committee and/or the Litigation Trust)."

    T.    Notice of the Modifications was due and proper under the circumstances.

    U.    The Modifications do not materially or adversely change the treatment of the holder of any Claim or Equity Interest and comply with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

    V.    The Plan, as modified by the Modifications, is properly before the Court and all votes cast with respect to the Plan shall be binding and shall be deemed to be cast with respect to the Plan, as modified by the Modifications.

    W.    As set forth on the record of the Hearing, each of the Objections has been either (a) withdrawn at or before the Hearing, (b) resolved by the terms of this Order, or (c) otherwise overruled by the Court.

## III.    SOLICITATION AND VOTING

    X.    Pursuant to the Approval Order, (i) March 22, 2004, at 4:00 p.m. (Prevailing Eastern Time) was the deadline by which all Ballots for Classes 2, 3, 4A and 4B under the Plan (the "Ballots") were required to be completed, executed, marked, and received by the Tabulation Agent in order to be counted as timely votes on the Plan (the "Voting Deadline"); (ii) March 22, 2004 at 4:00 p.m. (Prevailing Eastern Time) was the deadline for filing objections to confirmation of the Plan (the "Objection Deadline"); and (iii) the record date for determining creditors entitled to vote on the Plan was January 14, 2004 (the "Voting Record Date").

    Y.    The Plan Proponents complied with the Approval Order by causing to be transmitted by first class United States mail, postage prepaid, on or before February 17, 2004 (the "Solicitation Deadline"), a Solicitation Package consisting of (i) the Voting Procedures; (ii) the

Disclosure Statement (with the Plan attached as an exhibit); (iii) the Confirmation Hearing Notice; and (iv) the approved form of Ballot with voting instructions and pre-addressed postage-paid envelopes to (a) the Office of the United States Trustee; (b) each holder of a Claim in each of Class 2 (Non-Lender Secured Claims), Class 3 (Lender Claims), Class 4A (General Unsecured Claims) and Class 4(B) (Litigation Unsecured Claims) of the Plan that was (y) listed in the Schedules as of the Voting Record Date or (z) represented by a timely filed proof of claim against any of the Debtors that was not the subject of an objection filed and served by the Solicitation Deadline; and (c) each of the other parties on the 2002 Service List.

Z.     As set forth in the Logan Affidavit, the Tabulation Agent has made a final determination of the validity of, and prepared a tabulation respecting, all acceptances and rejections of the Plan by the impaired Classes of Claims entitled to vote on the Plan, including the amount and number of Claims in each of Classes 2, 3, 4A and 4B voting to accept or reject the Plan. Each of Classes 2 (Non-Lender Secured Claims),[3] 3 (Lender Claims), 4A (General Unsecured Claims) and 4B (Litigation Unsecured Claims) has accepted the Plan by at least two-thirds in amount and a majority in number of the Claims in each such Class actually voting as set forth in the Logan Affidavit. Class 1 (Priority Claims) is unimpaired under the Plan and is deemed to have accepted the Plan in accordance section 1126(f) of the Bankruptcy Code. Classes 4C (Securities Litigation Claims), 4D (Subordinated Claims) and 5 (Equity Interests) will not receive or retain any property under the Plan on account of such Claims or Equity Interests

---

[3] Section 2.5 of the Plan provides that each Non-Lender Secured Claim shall be treated as a separate class for voting and distribution purposes under the Plan. As set forth on the record of the Hearing, Conestoga-Rovers in Class 2C and Richard Myszka in Class 2L rejected the Plan.

and are deemed to have rejected the Plan in accordance with section 1126(g) of the Bankruptcy Code.

AA.     The determination of the Tabulation Agent with respect to the voting on the Plan validly and correctly sets forth the tabulation of votes, as required by the Bankruptcy Code, the Bankruptcy Rules and the Approval Order.

BB.     All persons required to receive notice of the Disclosure Statement, the Plan and the Hearing have received proper, timely and adequate notice in accordance with the Approval Order and have had an opportunity to appear and be heard with respect thereto.  Such notice is due and proper notice under the Bankruptcy Code and the Bankruptcy Rules.

CC.     The Plan Proponents have solicited and tabulated votes with respect to the Plan in good faith and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules and the Approval Order.

DD.     The Plan was voted on by all Classes of impaired Claims that were entitled to vote pursuant to the Bankruptcy Code, the Bankruptcy Rules and the Approval Order.

## IV.     THE PLAN SATISFIES SECTION 1129(a)(1) OF THE BANKRUPTCY CODE

EE.     The Plan satisfies all the applicable provisions of the Bankruptcy Code, and, as required by Bankruptcy Rule 3016(a), the Plan is dated and properly identifies the Debtors and the Committee as the Plan Proponents.

### 1.     The Plan Satisfies the Requirements of Section 1122 of the Bankruptcy Code

FF.     In accordance with section 1122(a) of the Bankruptcy Code, Article II of the Plan classifies and places in a Class each Claim against and Equity Interest in the Debtors together with other Claims against or Equity Interests in the Debtors, as applicable, that are substantially

similar to such Claims or Equity Interests.  The Plan, therefore, satisfies section 1122(a) of the

Bankruptcy Code.

### 2.   The Plan Satisfies the Requirements of Section 1123(a)(1) of the Bankruptcy Code

GG.   The Plan adequately and properly classifies all Claims and Equity Interests

required to be classified and, accordingly, satisfies section 1123(a)(1) of the Bankruptcy Code.

### 3.   The Plan Satisfies the Requirements of Section 1123(a)(2) of the Bankruptcy Code

HH.   Pursuant to Section 3.1 of the Plan, Class 1 is identified as unimpaired.

Accordingly, the Plan satisfies section 1123(a)(2) of the Bankruptcy Code.

### 4.   The Plan Satisfies the Requirements of Section 1123(a)(3) of the Bankruptcy Code

II.   Pursuant to Section 3.2 of the Plan, each of Classes 2, 3, 4A, 4B, 4C, 4D and 5 are

identified as impaired.  Section 4.1 of the Plan specifies the treatment of each impaired class of

Claims and Equity Interests.  Accordingly, the Plan satisfies section 1123(a)(3) of the Bankruptcy

Code.

### 5.   The Plan Satisfies the Requirements of Section 1123(a)(4) of the Bankruptcy Code

JJ.   The Plan provides the same treatment for each Claim or Equity Interest in each

class unless the holder of such a Claim or Equity Interest agrees to less favorable treatment.

Accordingly, the Plan satisfies section 1123(a)(4) of the Bankruptcy Code.

### 6.   The Plan Satisfies the Requirements of Section 1123(a)(5) of the Bankruptcy Code

KK.   Article VII of the Plan sets forth the means by which the Plan will be

implemented, including, without limitation, (i) Section 7.1 of the Plan provides for the

substantive consolidation for voting and Distribution purposes under the Plan of the Assets of

and Claims against the Debtors; (ii) Section 7.2 provides for the approval of the release of claims against or guaranteed by non-Debtor Subsidiaries; (iii) Section 7.3 provides for the approval of the merger and dissolution of the IT Group corporate entities upon the transfer of the Debtors' Assets to the Litigation Trust, all as described in such section; (iv) Sections 7.4 and 7.17 provide for the approval of the settlement and compromise of all Causes of Action as of the Effective Date by and between the Agent and the Prepetition Lenders, on the one hand, and the Debtors, non-Debtor Subsidiaries and the Committee (and all of its members), on the other hand, pursuant to the Plan Settlement; (v) Section 7.5 provides for approval of the vesting of title in and distribution of the Shaw Stock upon the occurrence of the Effective Date; (vi) Sections 7.6, 7.7, 7.8, 7.9, 7.10, 7.11, 7.12 and 7.13, provide for the management of the Litigation Trust, the vesting of the Debtors' Assets in the Litigation Trust, the rights and duties of the Oversight Committee including, but not limited to, oversight of administration and implementation of the Plan and the liquidation and distribution of the Debtors' Assets in accordance with the Plan, and the pursuit of the Avoidance Actions and the Estate Causes of Action; (vii) Section 7.10 provides for the implementation of the Litigation Trust in accordance with the Plan and the Litigation Trust Agreement; (viii) Sections 7.20 through 7.30 provide the making of Distributions under the Plan; (ix) Section 7.14 provides for the cancellation of certain instruments and agreements as of the Effective Date; (x) Section 7.31 provides that any matter under the Plan which requires corporate action or involves the corporate structure of the Debtors will have been deemed to have occurred; and (xi) Section 7.32 provides that each of the officers of the Debtors and/or the Litigation Trust Trustee are authorized to take any actions as are necessary and appropriate to effectuate the Plan. Accordingly, the Plan makes adequate means for its implementation and satisfies section 1123(a)(5) of the Bankruptcy Code.

12

### 7. The Plan Satisfies the Requirements of Section 1123(a)(7) of the Bankruptcy Code

LL. The Plan Proponents disclosed at the Hearing that the Committee and the Agent have elected the Litigation Trust Alternative in accordance with Section 4.2 of the Plan. The Plan Proponents also disclosed at the Hearing that AlixPartners shall serve as the Litigation Trust Trustee, and the manner set forth in the Plan for the selection of the Litigation Trust Trustee is consistent with the interests of the Debtors' creditors and with public policy. The Litigation Trust Trustee shall serve as the Disbursing Agent under the Plan.

MM. An oversight committee of three members (the "Oversight Committee"), consisting of Murray H. Hutchison, as the Committee Designee, and Cargill Financial Services Corp. and Citadel Investment Group L.L.C., as the Lender Designees, shall be appointed as of the Effective Date. The Oversight Committee shall oversee the administration and implementation of the Plan, the liquidation and distribution of the Debtors' Assets in accordance with the Plan, the performance of the Plan Administrator and the pursuit and resolution of the Avoidance Actions and Estate Causes of Action. The Litigation Trust Trustee shall pay the Committee Designee, on the one hand, and the Lender Designees, collectively, on the other hand, the Oversight Committee Compensation in the amount of $5,000 per calendar quarter commencing from and after the Effective Date, plus reimbursement of reasonable expenses. The annual compensation of the IT Environmental Liquidating Trustee, Brian Fournier, is $120,000, subject to a maximum 3.5% increase annually, plus reimbursement of reasonable expenses, which compensation and reimbursement shall be paid from the assets of the IT Environmental Liquidating Trust. Accordingly, the Plan satisfies section 1123(a)(7) of the Bankruptcy Code.

MIAMI 461067 v6 (2K)

13

8.   **Pursuant to Section 1123(b)(2)
of the Bankruptcy Code,
The Rejections and Assumptions of
Executory Contracts and Unexpired Leases,
as Set Forth in the Plan, are in the
Best Interests of the Debtors' Estate**

NN.   Article XI of the Plan provides that Exhibit 2 to the Plan sets forth a list of

executory contracts and unexpired leases, together with the amount, if any, required to cure any

defaults, to be assumed under the Plan by the Debtors. Any executory contracts or unexpired

leases listed on Exhibit 2 to the Plan shall be deemed to have been assumed by the Debtors on,

and subject to the occurrence of, the Effective Date. The Plan further provides that the entry of

this Order shall constitute approval of such assumptions (subject to the occurrence of the

Effective Date) pursuant to section 365 of the Bankruptcy Code and findings by the Bankruptcy

Court that the amounts listed on Exhibit 2 are sufficient to cure any defaults that may exist, that

each assumption is in the best interest of the Debtors and their estates and that the requirements

for assumption of such executory contracts or unexpired leases under section 365 of the

Bankruptcy Code have been satisfied. Exhibit 3 to the Plan sets forth a list of executory

contracts and unexpired leases, together with the amount, if any, required to cure any defaults, to

be assumed under the Plan by the Debtors and assigned to the IT Environmental Liquidating

Trust. Any executory contracts or unexpired leases listed on Exhibit 3 to the Plan, as such may

have been amended prior to the Confirmation Hearing, shall be deemed to have been assumed by

the Debtors and assigned to the IT Environmental Liquidating Trust on and subject to the

occurrence of the Effective Date. The IT Environmental Liquidating Trust shall satisfy all of the

Debtors' obligations to cure defaults and compensate for damages with respect to the executory

contracts and unexpired leases listed on Exhibit 3 to the Plan pursuant to section 365(b) of the

Bankruptcy Code, and the Debtors shall be relieved of any liability from and after the Effective

Date with respect to such executory contracts and unexpired leases in accordance with section

365(k) of the Bankruptcy Code.

OO.   Any executory contracts or unexpired leases of any of the Debtors that (a) are not

listed on Exhibits 2 or 3 to the Plan; (b) have not been approved by Final Order of the

Bankruptcy Court prior to the Confirmation Date for assumption and assignment by any of the

Debtors or rejection by any of the Debtors; and (c) are not the subject of pending motions to

assume on the Confirmation Date shall be deemed to have been rejected by the Debtors as of the

Effective Date.

PP.   The Plan shall constitute a motion to reject all such executory contracts and

unexpired leases, and the Debtors shall have no liability thereunder except as is specifically

provided in the Plan. The entry of this Order shall constitute approval of such rejections pursuant

to section 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such

rejected executory contract or unexpired lease is burdensome and that the rejection thereof is in

the best interest of the Debtors, their estates, and all parties in interest in the Chapter 11 Cases.

### 9.   The Plan Satisfies Section 1123(b)(3) of the Bankruptcy Code

QQ.   Section 1123(b)(3) of the Bankruptcy Code requires that settlements

accomplished under a chapter 11 plan be fair and reasonable. In this case, the Plan provides for a

compromise and settlement of certain Causes of Action, including as set forth in the Plan

Settlement in Section 7.4 of the Plan. The Court finds that the compromises and settlements

provided in the Plan are fair and reasonable and in the best interests of the Debtors, their Estates

and creditors. Accordingly, section 1123(b) of the Bankruptcy Code is satisfied.

10.  **The Transfers of Properties Under the Plan
      Are Governed by the Exemptions Provided
      in Section 1146(c) of the Bankruptcy Code**

RR.  Pursuant to Section 7.16 of the Plan, all Causes of Action assertable by any of the

Debtors or their Estates shall be retained by, and vested in the Litigation Trust upon the

occurrence of the Effective Date. Further, pursuant to Sections 7.10(I), 7.11 and 13.6 of the Plan,

title to all of the Assets (other than the IT Environmental Liquidating Trust Assets) shall vest in

the Litigation Trust. Pursuant to Section 7.10(II) of the Plan, title to all of the IT Environmental

Liquidating Trust Assets shall vest in the IT Environmental Liquidating Trust. Such transfers are

expressly contemplated by, and in furtherance of, the Plan.

SS.  In accordance with section 1146(c) of the Bankruptcy Code, the transfer or vesting

of any personal or real (tangible or intangible) property of the Debtors in accordance with the

Plan and this Order (including, without limitation, the transfer of the Causes of Action and

Assets to the Litigation Trust and any other transfers or vesting of assets described in (or

contemplated by) the Plan and/or this Order) is not subject to taxation under any state or local

law imposing a stamp, transfer or similar tax.

## V.  THE PLAN PROPONENTS HAVE SATISFIED SECTION 1129(a)(2) OF THE BANKRUPTCY CODE

TT.  The Plan Proponents have complied with all of the provisions of the Bankruptcy

Code and the Bankruptcy Rules governing notice, disclosure and solicitation in connection with

the Plan, the Disclosure Statement, and the exhibits thereto and all other matters considered by

this Court in connection with these Chapter 11 Cases. The Debtors have timely filed with the

Clerk of the Court their Schedules. Good, sufficient and timely notice of the Hearing and all

other hearings in these Chapter 11 Cases have been given to all holders of Claims and Equity

Interests and all other parties in interest to whom notice was required to have been given.

UU.    The Plan Proponents have properly solicited votes with respect to the Plan in good

faith and in compliance with the applicable provisions of the Bankruptcy Code and the

Bankruptcy Rules, as well as the Approval Order. All of the Ballots were properly solicited and

tabulated in accordance with the Approval Order. Accordingly, the Plan Proponents have

satisfied section 1129(a)(2) of the Bankruptcy Code.

## VI.    THE PLAN SATISFIES THE REQUIREMENTS OF SECTION 1129(a)(3) OF THE BANKRUPTCY CODE

VV.    This Court has examined the totality of the circumstances surrounding the

formulation of the Plan and the Plan Settlement. The Plan and the Plan Settlement are based on

extensive arms' length negotiations between and among the Debtors, the Committee, the Agent

(on behalf of the Prepetition Lenders) and certain other parties in interest. The Plan and the

Disclosure Statement reflect the culmination of such efforts and the substantial input of each

representative group. Additionally, as evidenced by the overwhelming acceptance of the Plan by

the holders of Non-Lender Secured Claims in Class 2, Lender Claims in Class 3, and the

Debtors' unsecured creditors in Classes 4A and 4B of the Plan as reflected in the Logan

Affidavit, the Plan achieves the goals embodied in the Bankruptcy Code. Further, the

exculpations and injunctions provided in the Plan, have been negotiated and agreed to by the

Debtors, the Committee and the Agent (on behalf of the Prepetition Lenders) in good faith and

are consistent with sections 105, 1129 and 1142 of the Bankruptcy Code. Thus, the Plan has

been proposed in "good faith and not by any means forbidden by law" as required by section

1129(a)(3) of the Bankruptcy Code.

## VII. THE PLAN SATISFIES THE REQUIREMENTS OF SECTION 1129(a)(4) OF THE BANKRUPTCY CODE

WW.   All payments to be made to professional persons retained by the Plan Proponents

pursuant to an order of the Court will be, as set forth in Sections 5.1(b) of the Plan, subject to

review and approval by this Court upon final application under sections 330, 331 or 503(b) of the

Bankruptcy Code.   Accordingly, the Plan satisfies section 1129(a)(4) of the Bankruptcy Code.

## VIII. THE PLAN SATISFIES THE REQUIREMENTS OF SECTION 1129(a)(5) OF THE BANKRUPTCY CODE

XX.   The Plan Proponents have disclosed that AlixPartners will serve, on the Effective

Date of the Plan, as Litigation Trust Trustee and carry out the respective duties and obligations of

the Plan Administrator and Chief Litigation Officer under the Plan.   In accordance with the Plan,

the Litigation Trust Trustee shall act as the Disbursing Agent with respect to Distributions under

the Plan.   Accordingly, the Plan satisfies section 1129(a)(5) of the Bankruptcy Code.

## IX. SECTION 1129(a)(6) OF THE BANKRUPTCY CODE IS NOT APPLICABLE TO THE PLAN

YY.   The Plan does not provide for any changes in rates that require regulatory

approval of any governmental agency.   Section 1129(a)(6) of the Bankruptcy Code is accordingly

not applicable.

## X. THE PLAN SATISFIES THE REQUIREMENTS OF SECTION 1129(a)(7) OF THE BANKRUPTCY CODE

ZZ.   Based on the Liquidation Analysis prepared by AlixPartners, the Soose Testimony

and the Monger Testimony at the Hearing, each holder of an impaired Claim in Classes 2, 3, 4A

and 4B of the Plan that has not accepted the Plan will receive or retain under the Plan on account

of such Claim property of a value, as of the Effective Date, that is not less than the amount that

such holder would receive or retain if the Debtors were liquidated under chapter 7 of the

Bankruptcy Code. The holders of claims in Classes 4C (Securities Litigation Claims), 4D (Subordinated Claims), and 5 (Equity Interests), who shall not receive or retain any property under the Plan, and are, therefore, deemed to have rejected the Plan, would receive no distribution if the Debtors were liquidated under chapter 7 of the Bankruptcy Code. Thus, the Plan satisfies the "best interest" test under section 1129(a)(7) of the Bankruptcy Code.

## XI.     **SECTION 1129(a)(8) OF THE BANKRUPTCY CODE**

AAA. Although the Plan does not comply with section 1129(a)(8) of the Bankruptcy Code because Classes 4C, 4D and 5 are deemed to have rejected the Plan, the Plan can be confirmed pursuant to the "cramdown" provisions of section 1129(b) of the Bankruptcy Code.

## XII.    **THE PLAN SATISFIES THE REQUIREMENTS OF SECTION 1129(a)(9) OF THE BANKRUPTCY CODE**

BBB. Section 5.1(d) of the Plan provides that, on the applicable Distribution Date, each holder of an Allowed Administrative Claim shall receive (i) the amount of such holder's Allowed Claim in one Cash payment, or (ii) such other treatment as may be agreed upon in writing by the Litigation Trust Trustee and such holder; provided, that an Administrative Claim representing a liability incurred in the ordinary course of business of the Debtors may be paid at the Litigation Trust Trustee's election in the ordinary course of business. Section 4.1(a) of the Plan provides that each holder of an Allowed Priority Claim shall either be paid in full in Cash on the Effective Date or all of the legal, equitable and contractual rights of such holder in respect of such Allowed Priority Claim shall be fully reinstated and retained and the holder of such Allowed Priority Claim shall be paid in full in accordance with such reinstated rights. Section 5.2 of the Plan provides for the payment in full of all Allowed Tax Claims as required by section 1129(a)(9)(C) of the Bankruptcy Code.

CCC.   Accordingly, the Plan satisfies the requirements of section 1129(a)(9) of the

Bankruptcy Code.

## XIII.   THE PLAN SATISFIES THE REQUIREMENTS OF SECTION 1129(a)(10) OF THE BANKRUPTCY CODE

DDD.   The Plan satisfies section 1129(a)(10) of the Bankruptcy Code because each of

Classes 3, 4A and 4B which are impaired classes, have voted to accept the Plan by the requisite

majority, determined without including any acceptance of the Plan by insiders.

## XIV.   THE PLAN SATISFIES THE REQUIREMENTS OF SECTION 1129(a)(11) OF THE BANKRUPTCY CODE

EEE.   The Plan Proponents and their respective professional persons have analyzed the

ability of the Debtors to meet their obligations under the Plan.  Based on the Liquidation

Analysis prepared by AlixPartners, the Soose Testimony and the Monger Testimony at the

Hearing, there is a reasonable likelihood that the Debtors will be able to make all payments

required pursuant to the Plan.  Therefore, the Plan satisfies the feasibility requirement of section

1129(a)(11) of the Bankruptcy Code.

## XV.   THE PLAN SATISFIES THE REQUIREMENTS OF SECTION 1129(a)(12) OF THE BANKRUPTCY CODE

FFF.   Section 13.1 of the Plan provides that the Debtors shall pay on the Effective Date

(or as soon as practicable thereafter) all Statutory Fees accrued through and including the

Effective Date, and all such Statutory Fees accrued after the Effective Date shall be paid by the

Litigation Trust in the ordinary course of business.  Accordingly, the Plan satisfies section

1129(a)(12) of the Bankruptcy Code.

MIAMI 461067 v6 (2K)                                              20

## XVI. **THE PLAN SATISFIES THE REQUIREMENTS OF SECTION 1129(a)(13) OF THE BANKRUPTCY CODE**

GGG. The Debtors do not provide any "retiree benefits." Accordingly, the Plan satisfies section 1129(a)(13) of the Bankruptcy Code.

## XVII. **SECTION 1129(b) OF THE BANKRUPTCY CODE IS SATISFIED**

HHH. Class 2C (Conestoga-Rovers) and Class 2L (Richard Myszka) rejected the Plan, and Classes 4C (Securities Litigation Claims), 4D (Subordinated Claims) and 5 (Equity Interests) are deemed to have rejected the Plan. The Court finds that the Plan does not "discriminate unfairly" and that the treatment accorded such Claims under the Plan is "fair and equitable" as to each impaired Class that did not accept the Plan. The Equity Interests in Class 5 comprise all Equity Interests in IT Group. There are no classes of similarly situated Equity Interests that are receiving a Distribution under the Plan. No class of Claims is receiving more than 100% of the Allowed amount of their Claims. Moreover, because no class junior to Class 5 exists, no holder of a Claim or Equity Interest that is junior to such non-accepting class will receive or retain any property under the Plan. Therefore, the Plan satisfies the "absolute priority rule" of section 1129(b) of the Bankruptcy Code.

III. Based on the foregoing, the Plan satisfies the "cram down" requirements of section 1129(b) of the Bankruptcy Code as to Classes 2C, 2L, 4C, 4D and 5.

## II. **CONCLUSIONS OF LAW**:

1. The Plan is hereby confirmed.

2. The record of the Hearing is hereby closed.

3. The Effective Date of the Plan shall occur on the date selected by the Plan Proponents (with the consent of the Agent) which is no later than thirty (30) days after all of the

conditions set forth in Section 9.2 of the Plan shall have been satisfied or, if applicable, shall have been waived in accordance with Article IX of the Plan.

4.      The Confirmation Date shall be the record date for purposes of determining the holders of Allowed Claims that are entitled to Distributions that are required to be made under the Plan.

5.      Upon the occurrence of the Effective Date, the Plan shall be binding upon and inure to the benefit of the Debtors and their respective successors and assigns, the holders of Claims and Equity Interests and their respective successors and assigns (whether or not they voted to accept the Plan, whether or not they are impaired under the Plan, and whether or not any such holder has filed, or is deemed to have filed a proof of Claim or proof of Equity Interest), and any other Person giving, acquiring, or receiving property under the Plan. The rights afforded in the Plan and the treatment of all Claims and Equity Interests therein shall be in exchange for and in complete satisfaction of all Claims and Equity Interests of any nature whatsoever, known or unknown, including any interest accrued on or expenses incurred in connection with such Claims from and after the Petition Date, against the Debtors, their Affiliates or their respective estates, Assets, properties or interests in property. Except as otherwise provided in the Plan, (i) on the Effective Date, all such Claims against, and Equity Interests in, the Debtors shall be deemed satisfied in full, by the consideration, if any, provided for in the Plan, and (ii) all Persons and entities shall be precluded from asserting against the Debtors, the Litigation Trust, the Litigation Trust Trustee, the IT Environmental Liquidating Trust, the IT Environmental Liquidating Trustee, or their respective successors, assets or properties any such Claims or Equity Interests or any other or further Claims or Equity Interests arising on or before the Effective Date.

22

6.       The Litigation Trust shall not be responsible for any obligations of the Debtors except those obligations expressly set forth in the Plan, the Plan Documents or this Order. Except as otherwise expressly provided in the Plan, all Persons or entities who have held, hold, or may hold Claims or Equity Interests shall be precluded and forever barred from asserting against the Debtors, the Litigation Trust, the Litigation Trust Trustee, the IT Environmental Liquidating Trust, the IT Environmental Liquidating Trustee or their respective successors or assigns, or their assets, properties, or interests in property any such Claims or Equity Interests or any other or further Claims or Equity Interests arising on or before the Effective Date.

7.       This Order shall be binding upon and govern the acts of all Persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Assets.

8.       All liens, Claims, interests, and encumbrances of record shall, upon the Effective Date, be removed and stricken as against the Assets, and all the entities described in the immediately preceding paragraph of this Order are authorized and specifically directed to (a) strike all recorded liens, Claims, interests, or encumbrances against the Assets from their records, official and otherwise, and (b) in accordance with section 1146(c) of the Bankruptcy Code, accept for filing or recording all instruments made or delivered and all deeds or other documents relating to the conveyance of any of the Assets without the payment of any recording tax, stamp tax, transfer tax, or any similar tax (other than income taxes) or any transfer or

MIAMI 461067 v6 (2K)                                                         23

recording fee or similar costs incurred or assessed by any federal, state, local, or foreign taxing authority (including interest and penalties, if any) and without the presentation of any affidavits, instruments, or returns otherwise required for recording, other than this Order, and the Court retains jurisdiction to enforce the foregoing direction, by contempt or otherwise.

9. In accordance with section 1141(b) of the Bankruptcy Code and Sections 7.10, 7.11 and 13.6 of the Plan, the Assets (other than the IT Environmental Liquidating Trust Assets) shall vest in the Litigation Trust on the Effective Date free and clear of all Claims, Equity Interests, liens, security interests, encumbrances and other interests.

10. In accordance with section 1142 of the Bankruptcy Code, upon entry of this Order (and subject to the occurrence of the Effective Date), the Debtors, acting by and through their officers, employees and agents, shall be authorized, without any requirement of further action by the stockholders or directors of the Debtors, to take any and all actions necessary or appropriate to implement the Plan.

11. The provisions in Section 7.20 through 7.32 and Article VIII of the Plan governing Distributions, reserves, and the procedures for resolving and treating Contested Claims under the Plan are hereby approved and found to be fair and reasonable.

12. Except as otherwise expressly provided in the Plan, all Causes of Action assertable by any of the Debtors or their Estates, successors or assigns, including but not limited to (i) the Causes of Action listed on Exhibit 1 to the Plan, (ii) Avoidance Actions and Estate Causes of Action and (iii) those Causes of Action hereinafter arising or discovered, regardless of when the facts giving rise to such Causes of Action arose or existed, shall be retained by, and vested in, the Litigation Trust. As of the Effective Date, the Litigation Trust Trustee in his capacity as Chief Litigation Officer and the Plan Administrator, respectively, shall be appointed

to prosecute the Avoidance Actions and the Estate Causes of Action, all as contemplated by the Plan.

13.    Effective as of and subject to the occurrence of the Effective Date, pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, entry of this Order shall constitute approval of the assumption or rejection, as provided in Article XI of the Plan and as set forth in Paragraphs NN, OO and PP hereof, of all executory contracts and unexpired leases of the Debtors not previously assumed or rejected, except for executory contracts and unexpired leases that are the subject of a motion to reject, assume or assign pending before the Court on the Confirmation Date.

14.    Claims created by the rejection of executory contracts or unexpired leases or the expiration or termination of any executory contract or unexpired lease prior to the Confirmation Date must be filed with this Court and served on the Debtors and the Litigation Trust Trustee, (a) in the case of an executory contract or unexpired lease rejected by the Debtors prior to the Confirmation Date, in accordance with the later of the Bar Date Order or thirty (30) days after the date of the order of the Bankruptcy Court authorizing and approving such rejection, or (b) in the case of an executory contract or unexpired lease that (i) was terminated or expired by its terms prior to the Confirmation Date, or (ii) is deemed rejected pursuant to Section 11.2 of the Plan, no later than thirty (30) days after the Confirmation Date, or (c) in the case of an executory contract or unexpired lease that is rejected by the Debtors after the Confirmation Date, within thirty (30) days after the date of the order of the Bankruptcy Court authorizing and approving such rejection. Any Claims for which a proof of claim is not filed and served within such time will be forever barred from assertion and shall not be enforceable against the Debtors, Reorganized IT Group, the Litigation Trust, or their respective estates, assets, properties, or interests in property. Unless

25

otherwise ordered by this Court, all such Claims that are timely filed as provided herein shall be treated as General Unsecured Claims under the Plan subject to objection as provided in the Plan.

15. In accordance with section 105 of the Bankruptcy Code, the provisions of the Plan governing release, injunction, exculpation and indemnification obligations are hereby approved in all respects.

16. None of the Plan Proponents, the Agent, the Prepetition Lenders, the Disbursing Agent or any of their respective members, officers, directors, employees, attorneys, advisors, professionals, consultants or agents shall have or incur any liability to any Person for any act or omission in connection with, related to, or arising out of, the Chapter 11 Cases, including, without limitation, the commencement of the Chapter 11 Cases, the negotiation of the Plan, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for willful misconduct or gross negligence as determined by Final Order of the Bankruptcy Court, and in all respects shall be entitled to rely upon the advice of counsel and all information provided by other exculpated persons herein without any duty to investigate the veracity or accuracy of such information with respect to their duties and responsibilities under, or in connection with, the Plan. Notwithstanding the foregoing and Section 13.5 of the Plan, such exculpation provisions shall not apply to any action before the Bankruptcy Court by Shaw against Committee counsel pursuant to Bankruptcy Rule 9011.

17. Except as otherwise expressly provided in the Plan, all Persons or entities who have held, hold, or may hold Claims or Equity Interests are permanently enjoined, from and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind on any such Claim or Equity Interest against any of the Debtors, their

26

Estates, Reorganized IT Group, the IT Environmental Liquidating Trust, the IT Environmental Liquidating Trustee, the Litigation Trust, the Litigation Trust Trustee, or the Assets, or against the property or interests in property of any of the Debtors, their Estates, Reorganized IT Group, the IT Environmental Liquidating Trust or the Litigation Trust, (b) the enforcement, attachment, collection or recovery by any manner or means of any Claims and/or Equity Interests, or any judgment, award, decree or order with respect to any Claims and/or Equity Interests, against any of the Debtors, their Estates, Reorganized IT Group, the IT Environmental Liquidating Trust, the IT Environmental Liquidating Trustee, the Litigation Trust, the Litigation Trust Trustee, or the Assets, or against the property or interests in property of any of the Debtors, their Estates, Reorganized IT Group, the IT Environmental Liquidating Trust or the Litigation Trust, (c) creating, perfecting, or enforcing any encumbrance of any kind against any of the Debtors, their Estates, Reorganized IT Group, the IT Environmental Liquidating Trust, the IT Environmental Liquidating Trustee, the Litigation Trust, the Litigation Trust Trustee, or the Assets, or against the property or interests in property of any of the Debtors, their Estates, Reorganized IT Group, the IT Environmental Liquidating Trust or the Litigation Trust, and (d) asserting any right of set off or subrogation of any kind against any obligation due from any Debtor or against the property or interests in property of any Debtor, with respect to any such Claims or Equity Interests; provided however, that the foregoing shall not affect the rights of a party that were obtained pursuant to a Final Order of the Bankruptcy Court granting limited relief from the automatic stay under section 362(d) of the Bankruptcy Code. Nothing in the preceding sentence or Section 13.19 of the Plan shall enjoin the exercise of any police or regulatory power by a United States environmental governmental unit, a California state environmental governmental unit or a New

Jersey state environmental governmental unit with respect to any environmental Claim that arises after the Effective Date.

18.     Nothing in the Plan or Confirmation Order shall impair the valid setoff rights, if any, of a holder of an Allowed Non-Lender Secured Claim. Nothing in the Plan or the Confirmation Order shall extinguish or enjoin any valid rights of setoff, and the rights of the Debtors and parties asserting setoff rights are preserved.

19.     Notwithstanding any language to the contrary contained in the Disclosure Statement, Plan, and/or this Order, no provision thereof shall release any non-debtor, including any current or former officer and/or director of the Debtors, from any liability to the SEC in connection with any civil action brought by such governmental unit against such Person(s).

20.     Notwithstanding paragraph 17 of this Order and Section 13.19 of the Plan, the Claims of PPG shall be determined in the action styled Envirocraft Corporation v. PPG Industries, Inc. et al., Case No. 03-CV-455-JJF, pending before the United States District Court for the District of Delaware in accordance with the Court's prior order in these Chapter 11 Cases lifting the automatic stay of section 362 of the Bankruptcy Code with respect to such Claims. When such Claims are finally liquidated, they shall be treated under the Plan.

21.     The Debtors shall either (a) have paid, prior to the Confirmation Date, (b) pay on the Effective Date, or (c) segregate a sufficient amount upon entry of this Order to pay when determined and due, all 2002 federal income taxes, if any, as shown on IT Group's consolidated 2002 federal income tax returns.

22.     Allowed Tax Claims, if any, of the Texas Comptroller shall be paid upon the later of the first Distribution Date or entry of an order of the Bankruptcy Court allowing such Tax Claims.

23.     Notwithstanding anything to the contrary contained herein or in the Plan, the

Debtors' claims against Conestoga-Rovers shall not be sold or otherwise transferred free and

clear of Conestoga-Rover's Claims against the Debtors.

24.     Notwithstanding anything to the contrary contained in the Plan and in accordance

with section 510(b) of the Bankruptcy Code, holders of Allowed Securities Litigation Claims in

respect of Equity Interests shall neither receive nor retain any property under the Plan on account

of such Claims unless all other Allowed Claims (including Allowed Securities Litigation Claims

in respect of debt securities of the Debtors) have been paid in full.

25.     The Litigation Trust Trustee shall treat the Contested Unsecured Claims Reserve

and not the holder of a Unsecured Litigation Claim as a grantor or beneficiary of the Litigation

Trust until such date as such holder's Litigation Unsecured Claim becomes an Allowed Claim.

26.     Pursuant to section 1146(c) of the Bankruptcy Code and the Plan, the issuance,

transfer, or exchange of notes or equity securities under the Plan, the creation of any mortgage,

deed of trust, or other security interest, the making or assignment of any lease or sublease, or the

making or delivery of any deed or other instrument of transfer under, in furtherance of, or in

connection with the Plan, including, without express or implied limitation, asset sales that have

occurred during these Chapter 11 Cases, shall not be subject to any stamp, real estate transfer,

mortgage recording, or other similar tax. All filing and recording officers are hereby directed to

accept for filing or recording all instruments of transfer to be filed and/or recorded, without the

payment of any such taxes.

27.     All entities holding Claims against or Equity Interests in the Debtors that are

treated under the Plan are hereby directed to execute, deliver, file or record any document, and to

take any action necessary to implement, consummate and otherwise effect the Plan in accordance

with its terms, and all such entities shall be bound by the terms and provisions of all documents, including without limitation the Plan Documents, executed and delivered by them in connection with the Plan.

28. In accordance with section 1142 of the Bankruptcy Code, the Litigation Trust Trustee, the Disbursing Agent and any other entity designated pursuant to the Plan are hereby authorized and empowered to issue, execute, deliver, file and record any document, and to take any other action necessary or appropriate to implement, consummate and otherwise effectuate the Plan in accordance with its terms, and all such entities shall be bound by the terms and provisions of all documents, including without limitation, the Plan Documents issued, executed and delivered by them as necessary or appropriate to implement or effectuate the Plan.

29. The Plan Proponents (with the consent of the Agent) are hereby authorized to amend or modify the Plan in accordance with section 1127 of the Bankruptcy Code and Section 13.15 of the Plan.

30. Any person or entity seeking an allowance of final compensation or reimbursement of expenses for professional services rendered to the Debtors or the Committee or in relation to these Chapter 11 Cases pursuant to sections 327, 328, 330, 331, 503(b) and 1103 of the Bankruptcy Code shall file and serve an application for allowance of final compensation for services rendered and reimbursement of related expenses incurred (each, an "Application") not later than sixty (60) days after the Effective Date (or such later date, if any, as may be established by further order of the Court). All Applications shall cover all services rendered through the Effective Date.

31. Each Application shall comply with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules, and shall set forth, among other

30

things, in reasonable detail: (i) the name and address of the applicant; (ii) the nature of the professional or other services rendered and related expenses for which allowance is requested; (iii) the amount of compensation and reimbursement of expenses requested; (iv) whether any payments have been received on account and, if so, the amount or amounts thereof; (v) the amount of any success fee or premium requested and the basis therefor; and (vi) the amounts of compensation and reimbursement of expenses previously allowed by the Court, if any.

32.     From and after the Effective Date, the Litigation Trust and the Disbursing Agent may retain and pay professionals in the ordinary course of business without the need for filing retention applications and fee applications. The Court retains jurisdiction to adjudicate any dispute concerning the payment of any such fees or expenses.

33.     All professional fees and expenses incurred by the Litigation Trust and the Disbursing Agent from and after the Effective Date in connection with the consummation and implementation of the Plan shall be paid by the Litigation Trust and Disbursing Agent in the ordinary course of business without further order of the Bankruptcy Court. The Court shall retain jurisdiction over all such parties in the event of any dispute over the amount of any such fees and expenses.

34.     All fees payable pursuant to section 1930 of title 28, United States Code, as determined by the Court, shall be paid on the Effective Date or as soon as practicable thereafter. After the Effective Date and until these Chapter 11 Cases are closed, the Disbursing Agent shall (i) submit to the Office of the United States Trustee quarterly reports as may be required, including with respect to fees payable pursuant to section 1930 of title 28, United States Code, and (ii) pay any and all such fees as they become due.

35.     All Objections to confirmation of the Plan either have been withdrawn prior to the entry of this Order, have been adequately addressed by the provisions hereof or have been overruled. All withdrawn objections are hereby deemed withdrawn with prejudice.

36.     Within fifteen (15) days after the entry date of this Order, or within such further time as this Court may allow, the Plan Proponents are hereby directed to mail to all known holders of Claims and Equity Interests, other parties who have requested notice in these cases and all professionals retained pursuant to an order of this Court, a notice of the entry of this Order, which notice shall set forth any deadlines established by this Order or the Plan.

37.     Based upon the record of the Hearing, substantive consolidation of the Debtors to the extent provided in Section 7.1 of the Plan is hereby approved.

38.     The Plan Settlement is hereby approved and the parties are authorized to take all actions that are necessary or appropriate to implement and give effect to the Plan Settlement, subject to the occurrence of the Effective Date.

39.     In the event of any inconsistency between the Plan, or any agreement, instrument or document implementing the Plan, and this Order, the provisions of this Order shall govern.

40.     The provisions of this Order are integrated with each other and are non-severable and mutually dependent.

41.     The failure to specifically include any particular provision of the Plan in this Order shall not in any way diminish or impair the efficacy or enforceability of such provision, it being understood that it is the intent of this Court that the Plan be confirmed and approved in its entirety.

42.     Each finding of fact set forth herein, to the extent it is or may be deemed to be a conclusion of law, shall also constitute a conclusion of law. Each conclusion of law set forth

herein, to the extent it is or may be deemed to be a finding of fact, shall also constitute a finding

of fact.

Dated: April ____5____, 2004
        Wilmington, Delaware

_____
Honorable Mary F. Walrath
Chief United States Bankruptcy Judge

# EXHIBIT D

*XAVIER BECERRA*
*Attorney General*

*State of California*
*DEPARTMENT OF JUSTICE*

1515 CLAY STREET, 20TH FLOOR
P.O. BOX 70550
OAKLAND, CA  94612-0550

Public:  (510) 879-1300
Telephone:  (510) 622-2195
Facsimile:  (510) 622-2270
E-Mail:  Andrew.Wiener@doj.ca.gov

December 28, 2020

Peter Weiner
55 2nd Street
Twenty-Fourth Floor
San Francisco, CA 94105
By Email: PeterWeiner@paulhastings.com

RE:    IT Environmental Liquidating Trust

Dear Mr. Weiner:

I write to you on behalf of the California Department of Toxic Substances Control ("DTSC"), concerning the replacement of Sunil Kishnani as Trustee of the IT Environmental Liquidating Trust (Trust).  Section 3.4 of the Trust Agreement provides that the Trust shall be subject to the jurisdiction of the United States District Court for the Northern District of California.  DTSC understands, however, that Mr. Kishnani's sudden passing necessitates seeking approval of his replacement by the Delaware Bankruptcy Court. Under the circumstances, and without waiving any rights under the Trust Agreement or its Eleventh Amendment immunity, DTSC has no objection to the Trust filing a motion to replace the Trustee in the Delaware Bankruptcy Court.

Furthermore, DTSC has reviewed the qualifications of Rick Swanson. DTSC recommends Mr. Swanson for the position of interim trustee to minimize any gap in coverage while DTSC considers a permanent replacement for the position.

Sincerely,

/s/ *Andrew Wiener*

ANDREW WIENER
Deputy Attorney General

For    XAVIER BECERRA
Attorney General

AW: